Jennifer Lynch (SBN 240701)
*jlynch@eff.org*
Mark Rumold (SBN 279060)
*mark@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:   (415) 436-9333
Facsimile:    (415) 436-9993

David L. Sobel *(pro hac vice)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W., Suite 410
Washington, DC  20036
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
Electronic Frontier Foundation

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | CASE NO. 3:10-cv-04892-RS <br><br> **NOTICE OF CROSS MOTION AND CROSS MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS MOTION FOR SUMMARY JUDGMENT** <br><br> **AND** <br><br> **OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** <br><br> Date:       May 10, 2012 <br> Time:       1:30 p.m. <br> Place:      Ctrm. 3, 17th Floor <br> Judge:      Hon. Richard Seeborg |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS................................................................................... 1

    A.   THE COMMUNICATIONS ASSISTANCE FOR LAW ENFORCEMENT ACT (CALEA) AND
DOJ'S EFFORTS TO EXPAND THE LAW ............................................................... 1

    B.   EFF'S FOIA REQUESTS FOR RECORDS RELATED TO THE FBI'S "GOING DARK"
PROGRAM AND DEFENDANT'S PROPOSALS TO EXPAND CALEA .......................... 3

III.  ARGUMENT ...................................................................................................... 4

    A.   THE FREEDOM OF INFORMATION ACT AND THE STANDARD OF REVIEW ............. 4

    B.   EFF IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE GOVERNMENT HAS
IMPROPERLY WITHHELD AGENCY RECORDS ....................................................... 5

        1.   Defendant Has Improperly Withheld Records as "Outside the Scope" and "Not
Responsive"................................................................................................... 6

        2.   FBI Has Failed to Meet the Procedural Requirements Necessary to Sustain Its
Burden Under the FOIA ................................................................................ 9

        3.   DEA and FBI Have Improperly Withheld Records Under Exemption 1 ................. 11

        4.   FBI Has Improperly Withheld Records Under Exemption 3 .................................... 14

        5.   Defendant Has Improperly Withheld Records Under Exemption 4 ......................... 16

        6.   Defendant Has Improperly Withheld Records Under Exemption 5 ......................... 18

            (a)   Defendant Has Improperly Withheld Records That Are not Inter or Intra-
Agency Communications ............................................................................... 18

            (b)   Defendant Has Improperly Withheld Records Under the Deliberative
Process Privilege ........................................................................................ 20

                (i)    FBI's Vaughn Submission Fails to Satisfy the Heightened
Specificity Required to Withhold Records Under the Deliberative
Process Privilege................................................................................ 20

                (ii)   All Components Have Improperly Withheld Records Reflecting
Final Agency Positions or Opinions ................................................... 21

                (iii)  Defendant Has Improperly Withheld Purely Factual Information .... 24

            (c)   The Criminal Division Has Improperly Withheld Records Under the Work
Product Doctrine ........................................................................................ 25

i

7.   Defendant Has Improperly Withheld Records Under Exemption 7(A)....................26

8.   FBI Improperly Withheld Records Under Exemption 7(D) ................................28

9.   Defendant Improperly Withheld Records Under Exemption 7(E) ...........................30

   (a)   FBI's Boilerplate *Vaughn* Submission Fails to Show That Releasing
         Records Would Allow Criminals to Circumvent Detection, Apprehension
         or Prosecution ............................................... 31

   (b)   Defendant Has Improperly Withheld Law Enforcement Techniques That
         Are Generally Known or Routine .................................. 32

10.  Defendant Has Failed to Segregate and Release All Non-Exempt Information........34

IV.   CONCLUSION............................................................. 35

# TABLE OF AUTHORITIES

## CASES

*ACLU of Wash. v. DOJ,*
No. 09-0642, 2011 U.S. Dist. LEXIS 26047 (W.D. Wash. Mar. 10, 2011) ................13, 31

*ACLU v. ODNI,*
No. 10-4419, 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011) ....................13, 31

*Albuquerque Publ'g Co. v. DOJ,*
726 F. Supp. 851 (D.D.C. 1989) .........................................................................................32

*Animal Legal Def. Fund, Inc. v. Dep't of Air Force,*
44 F. Supp. 2d 295 (D.D.C. 1999) ......................................................................................20

*Arthur Andersen & Co. v. IRS,*
679 F.2d 254 (D.C. Cir. 1982) ............................................................................................23

*Asian Law Caucus v. DHS,*
2008 U.S. Dist. LEXIS 98344 (N.D. Cal. Nov. 24, 2008)..................................................30

*Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State,*
818 F. Supp. 1291 (N.D. Cal. 1992) ...................................................................................24

*Bevis v. Dep't of State,*
801 F.2d 1386 (D.C. Cir. 1986) .....................................................................................27, 28

*Binion v. DOJ,*
695 F.2d 1189 (9th Cir. 1983)............................................................................................10

*Birch v. USPS,*
803 F.2d 1206 (D.C. Cir. 1986) ...........................................................................................5

*Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.,*
601 F.3d 143 (2d Cir. 2010)..................................................................................................5

*Campbell v. Dep't of Health & Human Servs.,*
682 F.2d 256 (D.C. Cir. 1982) ............................................................................................27

*Campbell v. DOJ,*
164 F.3d 20 (D.C. Cir. 1998) ..................................................................................12, 13, 14

*Carson v. DOJ,*
631 F.2d 1008 (D.C. Cir. 1980) ..........................................................................................27

*Carter v. Dep't of Commerce,*
307 F.3d 1084 (9th Cir. 2002)............................................................................................18

iii

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................4

*Cent. for Intn'l Envtl Law v. Office of U.S. Trade Representative*,
   Case No. 01-498, 2012 U.S. Dist. LEXIS 26038 (D.D.C. Feb. 29, 2012)...........................12

*Chrysler Corp. v. Brown*,
   441 U.S. 281 (1979) ......................................................................................................16

*Church of Scientology Int'l v. DOJ*,
   30 F.3d 224 (1st Cir. 1994) ...........................................................................................26

*Church of Scientology v. Dep't of Army*,
   611 F.2d 738 (9th Cir. 1979)................................................................................5, 34, 35

*Coastal States Gas Corp. v. Dep't of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ................................................................................20, 22

*Coldiron v. DOJ*,
   310 F. Supp. 2d 44 (D.D.C. 2004) ................................................................................14

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999) ......................................................................................15

*Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*,
   237 F. Supp. 2d 17 (D.D.C. 2002) ................................................................................19

*Curran v. DOJ*,
   813 F.2d 473 (1st Cir. 1987) ........................................................................................28

*Davin v. DOJ*,
   60 F.3d 1043 (3rd Cir. 1995) ........................................................................................30

*Defenders of Wildlife v. Dep't of Agric.*,
   311 F. Supp. 2d 44 (D.D.C. 2004) ................................................................................23

*Dep't of Air Force v. Rose*,
   425 U.S. 352 (1976) ....................................................................................................4, 9

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001) ....................................................................................................18, 19

*DOJ v. Landano*,
   508 U.S. 165 (1993) ......................................................................................................29

*DOJ v. Reporters Comm. for Freedom of the Press*,
   489 U.S. 749 (1989) ....................................................................................................4, 5

*DOJ v. Tax Analysts*,
   492 U.S. 136 (1989) ........................................................................................................4

iv

Case No. 10-cv-04892-RS    NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

*Dow Jones Co., Inc. v. FERC*,
    219 F.R.D. 167 (C.D. Cal. 2003) ..................................................................................17

*Dunaway v. Webster*,
    519 F. Supp. 1059 (N.D. Cal. 1981) ..........................................................................6, 32

*EFF v. DOJ*,
    No. 10-641, 2011 WL 5966379 (D.D.C. Nov. 30, 2011) ..............................................21

*Elec. Privacy Info. Ctr. v. DOJ*,
    511 F. Supp. 2d 56 (D.D.C. 2007) ................................................................................22

*EPA v. Mink*,
    410 U.S. 73 (1973) ........................................................................................................24

*Feshbach v. SEC*,
    5 F. Supp. 2d 774 (N.D. Cal. 1997) ............................................................................4, 5

*Frazee v. U.S. Forest Serv.*,
    97 F.3d 367 (9th Cir. 1996)........................................................................................16, 17

*GC Micro Corp. v. Def. Logistics Agency*,
    33 F.3d 1109 (9th Cir.1994)......................................................................................16, 17

*Gerstein v. DOJ*,
    No. C-03-04893, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005) .......................32

*Goland v. CIA*,
    607 F.2d 339 (D.C. Cir. 1978) ........................................................................................5

*Gordon v. FBI*,
    388 F. Supp. 2d 1028 (N.D. Cal. 2005) .........................................................................30

*Grand Central Partnership Inc. v. Cuomo*,
    166 F.3d 473 (2d Cir. 1999)............................................................................................17

*Hamilton v. Weise*,
    No. 95-1161, 1997 U.S. Dist. LEXIS 18900 (M.D. Fla. Oct. 1, 1997) ..............................32

*Hennessey v. United States Agency for Int'l Dev.*,
    No. 97-1113, 1997 U.S. App. LEXIS 22975, No. 97-1113 (4th Cir. Sept. 2, 1997)
    *rev'd in part on other grounds*, 276 F.3d 634 (D.C. Cir. 2002) .........................................26

*In re Calif. Pub. Utils. Comm'n*,
    892 F.2d 778 (9th Cir.1989).........................................................................................25

*In re DOJ*,
    999 F.2d 1302 (8th Cir. 1993)......................................................................................28

v

Case No. 10-cv-04892-RS    Not. of Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.;
Opp. to Def's Mot. Summ. J.

*Int'l Counsel Bureau v. DOD*,
    723 F. Supp. 2d 54 (D.D.C. 2010) ...................................................................12

*Islamic Shura Council of S. Cal. v. FBI*,
    2011 U.S. Dist. LEXIS 134123 (C.D. Cal., Nov. 17, 2011) ...................................7

*Islamic Shura Council of S. Cal. v. FBI*,
    635 F.3d 1160 (9th Cir. Cal. 2011) ....................................................................7

*Islamic Shura Council of S. Cal. v. FBI*,
    779 F. Supp. 2d 1114 (C.D. Cal. 2011).................................................................7

*John Doe Agency v. John Doe Corp.*,
    493 U.S. 146 (1989) ...........................................................................................9

*Jordan v. DOJ*,
    591 F.2d 753 (D.C. Cir. 1978) ...........................................................................20

*Judicial Watch, Inc. v. USPS*,
    297 F. Supp. 2d 252 (D.D.C. 2004) .....................................................................21

*Kamman v. IRS*,
    56 F.3d 46 (9th Cir. 1995)...................................................................................5

*King v. Dep't of Justice*,
    830 F.2d 210 (D.C. Cir. 1987) ..........................................................10, 11, 31

*LaCedra v. Executive Office for U.S. Attorneys*,
    317 F.3d 345 (D.C. Cir.2003) .............................................................................6

*Lam Lek Chong v. DEA*,
    929 F.2d 729 (D.C. Cir. 1991) ...........................................................................14

*Larson v. Dep't of State*,
    565 F. 3d 857 (D.C. Cir. 2009) ..........................................................................12

*Lawyers' Comm. for Civ. Rights of S.F. Bay Area v. Dep't of Treasury*,
    No. 07-2590, 2008 U.S. Dist. LEXIS 87624 (N.D. Cal. Sept. 30, 2008) ..........28

*Londrigan v. FBI*,
    670 F.2d 1164 (D.C. Cir. 1981) .........................................................................17

*Maine v. Dep't of Interior*,
    298 F. 3d 60 (1st Cir. 2002) ...............................................................................25

*Manna v. DOJ*,
    815 F. Supp. 798 (D.N.J. 1993) .........................................................................14

*Maricopa Audubon Soc'y v. U.S. Forest Serv.*,
    108 F.3d 1089 (9th Cir. 1997)........................................................................20, 21

*Mead Data Cent., Inc. v. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) ...................................................................5, 10, 11, 35

*Morley v. CIA,*
    508 F.3d 1108 (D.C. Cir. 2007) ...........................................................................9

*N.Y. Times Co. v. DOD,*
    499 F. Supp. 2d 501 (S.D.N.Y. 2007)....................................................................22

*Nat'l Parks and Conservation Ass'n v. Morton,*
    498 F.2d 765 (D.C. Cir. 1974) ...........................................................................16

*Nat'l Sec. Archive v. FBI,*
    759 F. Supp. 872 (D.D.C. 1991) ...........................................................................32

*Nat'l Wildlife Fed'n v. U.S. Forest Service,*
    861 F.2d 1114 (9th Cir. 1988)........................................................................4, 20

*Nation Magazine v. U.S. Customs Serv.,*
    71 F.3d 885 (D.C. Cir. 1995) .................................................................................6

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978).................................................................................................4

*NLRB v. Sears, Roebuck & Co.,*
    421 U.S. 132 (1975) ...............................................................................................20

*NRDC v. DOD,*
    388 F. Supp. 2d 1086 (C.D. Cal. 2005)......................................................21, 22, 35

*NRDC v. DOD,*
    442 F. Supp. 2d 857 (C.D. Cal. 2006)..................................................................25

*Petkas v. Staats,*
    501 F.2d 887 (D.C. Cir.1974) ...........................................................................17

*Petroleum Info. Corp. v. Dep't of Interior,*
    976 F.2d 1429 (D.C. Cir. 1992) ...........................................................................21

*Public Citizen, Inc. v. Dep't. of State,*
    100 F. Supp. 2d 10 (D.D.C. 2000) ........................................................................26

*Quarles v. Dep't of Navy,*
    893 F.2d 390 (D.C. Cir. 1990) ........................................................................24, 25

*Rosenfeld v. DOJ,*
    57 F.3d 803 (9th Cir. 1995).......................................................................29, 31, 32

*Roth v. DOJ*,
    642 F.3d 1161 (D.C. Cir. 2011) ................................................................................29

*Smith v. BATF*,
    977 F. Supp. 496 (D.D.C. 1997) ...............................................................................30

*Stolt-Nielsen Transp. Grp LTD. v. United States*,
    534 F.3d 728 (D.C. Cir. 2008) ..................................................................................27

*Strang v. Collyer*,
    710 F. Supp. 9 (D.D.C. 1989),
    *aff'd*, 899 F.2d 1268 (D.C. Cir. 1990)......................................................................20

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ................................................................................27

*Tax Analysts v. IRS*,
    117 F.3d 607 (D.C. Cir. 1997) ..................................................................................22

*United States v. Rozet*,
    183 F.R.D. 662 (N.D. Cal. 1998) ..............................................................................20

*United States v. Torf (In re Grand Jury Subpoena)*,
    357 F.3d 900 (9th Cir. 2003).....................................................................................25

*Vaughn v. Rosen*,
    484 F.2d 820 (D.C. Cir. 1973) ....................................................................................7

*Warshak v. U.S.*,
    532 F.3d 521 (6th Cir. 2008).....................................................................................32

*Wash. Post Co. v. DOJ*,
    863 F.2d 96 (D.C. Cir. 1988) ....................................................................................17

*Wiener v. FBI*,
    943 F.2d 972 (9th Cir. 1991)..............................................................................*passim*

*Wilderness Soc. v. U.S. Dep't of Interior*,
    344 F. Supp. 2d 1 (D.D.C. 2004) ...............................................................................6

## STATUTES

5 U.S.C. § 552 .......................................................................................................*passim*

18 U.S.C. §§ 2510, *et seq.* ...........................................................................................14

18 U.S.C. § 2516 ...........................................................................................................30

18 U.S.C. § 2518 ...........................................................................................................30

viii

Case No. 10-cv-04892-RS    Nᴏᴛ. ᴏf Cʀᴏss Mᴏᴛ. Sᴜᴍᴍ. J.; Mᴇᴍ. ɪɴ Sᴜᴘᴘ. ᴏf Cʀᴏss Mᴏᴛ. Sᴜᴍᴍ. J.;
Oᴘᴘ. ᴛᴏ Dᴇf's Mᴏᴛ. Sᴜᴍᴍ. J.

18 U.S.C. § 2519 ................................................................................................................... 15

18 U.S.C. § 2703 ................................................................................................................... 30

18 U.S.C. § 2709 ................................................................................................................... 30

18 U.S.C. § 3123 ............................................................................................................. 14, 15

18 U.S.C. § 3124 ................................................................................................................... 30

18 U.S.C. § 3511 ................................................................................................................... 30

47 U.S.C. §§ 1001, *et seq.* ...........................................................................................*passim*

50 U.S.C. § 1802 ................................................................................................................... 30

50 U.S.C. § 1805 ................................................................................................................... 30

**RULES**

Fed. R. Civ. P. 26 .................................................................................................................25

Fed. R. Civ. P. 56 ...................................................................................................................4

ix

Case No. 10-cv-04892-RS            NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
                                           OPP. TO DEF'S MOT. SUMM. J.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 10, 2012 at 1:30 P.M., or as soon thereafter as the matter may be heard in Courtroom 3 on the 17th Floor at 450 Golden Gate Avenue in San Francisco, California, plaintiff Electronic Frontier Foundation (EFF) will, and hereby does, cross move for summary judgment.

Pursuant to Federal Rule of Civil Procedure 56, EFF seeks a court order requiring the Department of Justice (DOJ) and its components the Criminal Division (CRIM), Federal Bureau of Investigation (FBI) and Drug Enforcement Agency (DEA) to release records under the Freedom of Information Act (FOIA). EFF respectfully asks that this Court issue an order requiring the government to release all records improperly withheld from the public. This Cross Motion is based on this notice of Cross Motion, the memorandum of points and authorities in support of this Cross Motion, the Second Declaration of Jennifer Lynch and attached exhibits in support of this Cross Motion, and all papers and records on file with the Clerk or which may be submitted prior to or at the time of the hearing, and any further evidence which may be offered.

DATED:  March 29, 2011                    Respectfully submitted,


                                           /s/ Jennifer Lynch
                                          Jennifer Lynch
                                          Mark Rumold
                                          ELECTRONIC FRONTIER FOUNDATION
                                          454 Shotwell Street
                                          San Francisco, CA  94110
                                          Telephone:  (415) 436-9333
                                          Facsimile:  (415) 436-9993

                                          David L. Sobel (pro hac vice)
                                          ELECTRONIC FRONTIER FOUNDATION
                                          1818 N Street, N.W., Suite 410
                                          Washington, DC  20036
                                          Telephone: (202) 797-9009 x104
                                          Facsimile: (202) 707-9066

                                          Attorneys for Plaintiff
                                          ELECTRONIC FRONTIER FOUNDATION

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

This action under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, seeks the disclosure of records held by Defendant Department of Justice (DOJ) and its components, Criminal Division (CRIM), Federal Bureau of Investigation (FBI) and Drug Enforcement Agency (DEA) concerning the agency's efforts to push for changes to federal surveillance law to ensure that all services that enable communications be technically capable of complying with a wiretap order. Defendant has moved for summary judgment, asking the Court to sustain its decision to withhold a substantial portion of the requested material in part or whole. Because the agency has failed to meet its burden—both procedurally and substantively—the Court should deny the government's motion for summary judgment and grant EFF's Cross Motion. EFF respectfully requests entry of an order compelling Defendant immediately to disclose all improperly withheld records.

## II.     STATEMENT OF FACTS

### A.     The Communications Assistance for Law Enforcement Act (CALEA) and DOJ's Efforts to Expand the Law

In 1994, Congress passed the Communications Assistance for Law Enforcement Act (CALEA), 47 U.S.C. §§1001, *et seq.*, to aid law enforcement in its efforts to conduct surveillance of digital telephone networks. CALEA forced telecommunications companies to re-design their equipment, facilities, and services to make such surveillance easier. CALEA requires a telecommunications carrier that receives a court order or other lawful authorization to be able to: (1) quickly isolate all wire and electronic communications to and from a targeted person; (2) quickly isolate call-identifying information (numbers called and calls received) of a targeted person; (3) provide intercepted communications and call-identifying information to law enforcement; and (4) carry out intercepts unobtrusively, so targets are not made aware of the electronic surveillance, and in a manner that does not compromise the privacy and security of other people using the carrier. 47 U.S.C. § 1002. Although CALEA was expanded in 2005 to apply to broadband and certain Voice over IP (VoIP) providers,[1] it expressly excludes the regulation of

---

[1] *See* FCC, FCC 05-153, First Report and Order and Further Notice of Proposed Rulemaking (2005).

1

"information services" providers and does not require any carrier to decrypt encrypted communications. 47 U.S.C. §§ 1001(8)(C)(i), 1002(b)(2)-(3).

Over the last several years, the DOJ, FBI and several other agencies have been pushing Congress and the Federal Communications Commission (FCC) to expand CALEA to apply to all services that enable communications, including peer-to-peer messaging, social networking sites, and others. Most recently, as reported in a series of articles published in the *New York Times*[2] between September and November 2010 and picked up immediately by other media,[3] officials from FBI, DOJ, the National Security Agency, and other agencies met with White House officials to develop legislation to expand CALEA.[4] According to the *Times*, this legislation would

> require all services that enable communications—including encrypted e-mail transmitters like BlackBerry, social networking Web sites like Facebook and software that allows direct "peer to peer" messaging like Skype—to be technically capable of complying if served with a wiretap order. The mandate would include being able to intercept and unscramble encrypted messages.[5]

Security researchers, privacy scholars and activists have been increasingly concerned that the expansion the agencies were proposing would, in effect, mandate technological "back doors" for the Internet. These "back doors" would result in new, easily-exploited security flaws and would make all communications more vulnerable to attack.[6] They would also make communications more

---

[2] Charlie Savage, *U.S. Tries to Make it Easier to Wiretap the Internet*, N.Y. Times at A1 (Sept. 27, 2010), *available at* www.nytimes.com/2010/09/27/us/27wiretap.html; Charlie Savage, *Officials Push to Bolster Law on Wiretapping*, N.Y. Times at A1 (Oct. 18, 2010) *available at* www.nytimes.com/2010/10/19/us/19wiretap.html; Charlie Savage, *F.B.I. Seeks Wider Wiretap Law for Web*, N.Y. Times at B5 (Nov. 16, 2010) *available at* www.nytimes.com/2010/11/17/technology/17wiretap.html.

[3] *See, e.g.,* Ellen Nakashima, "Administration Seeks Ways to Monitor Internet Communications," *Wash. Post* (Sept. 27, 2010) http://www.washingtonpost.com/wp-dyn/content/article/2010/09/27/AR2010092703244.html; "Proposal Could Expand Government's Web Wiretapping Efforts," *PBS News Hour* (Sept. 27, 2010) http://www.pbs.org/newshour/bb/government_programs/july-dec10/wiretap_09-27.html.

[4] *See* Savage, *U.S. Tries to Make it Easier to Wiretap the Internet*, N.Y. Times; Savage, *Officials Push to Bolster Law on Wiretapping*, N.Y. Times.

[5] *Id.*

[6] *See, e.g.*, Steven Bellovin (computer security expert), "The Worm and the Wiretap," *SMBlog* (Oct. 16, 2010) https://www.cs.columbia.edu/~smb/blog//2010-10/2010-10-16.html; Susan Landau (cybersecurity researcher and former Distinguished Engineer at Sun Microsystems), "Moving Rapidly Backwards on Security," *Huffington Post* (Oct. 13, 2010) http://www.huffingtonpost.com/susan-landau/moving-rapidly-backwards-_b_760667.html.

2

Case No. 10-cv-04892-RS          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

vulnerable to surveillance by repressive governments around the world. These fears are not merely hypothetical. For 10 months in 2004 and 2005, back doors built into Vodafone's systems in Greece allowed someone to bug more than 100 high-ranking government officials and dignitaries, including the Prime Minister and the Mayor of Athens.[7] And between 1996-2006, six thousand people were the targets of unauthorized wiretaps in Italy.[8]

### B. EFF's FOIA Requests For Records Related to the FBI's "Going Dark" Program and Defendant's Proposals to Expand CALEA

Although CRIM, FBI and DEA have argued they need a new and expanded version of CALEA to prevent the "Going Dark" problem—the agencies' stated inability to conduct surveillance on new communications technologies—they have provided few examples and no statistical information to the public on criminal or national security investigations thwarted by the inability to wiretap.[9] EFF filed its FOIA requests to obtain precisely this information. This lawsuit is based on two separate but related FOIA requests. The earlier request, submitted three years ago on May 21, 2009, seeks documents on the FBI's "Going Dark Program." The second request, filed on September 28, 2010, seeks materials related to the proposed expansion of CALEA, including evidence of any limitations of current surveillance technologies and records of communications between DOJ agencies and technology companies, trade organizations and Congress about potential legislation.[10]

After over a year of negotiations and multiple rounds of productions, the components have

---

[7] *See* John Markoff, "Engineers as Counterspies: How the Greek Cellphone System Was Bugged," *NY Times Bits Blog* (July 10, 2007) http://bits.blogs.nytimes.com/2007/07/10/engineers-as-counterspys-how-the-greek-cellphone-system-was-bugged/.

[8] *See* Susan Landau, "Going Dark: Lawful Electronic Surveillance in the Face of New Technologies," Testimony before the House Judiciary Committee, 3 (Feb. 17, 2011) *available at* http://privacyink.org/pdf/Landau02172011.pdf (also discussing FBI wiretap system called "Carnivore" that was vulnerable to insider attacks).

[9] *See, e.g.,* Robert S. Mueller, Director, Federal Bureau of Investigation, *Speech to Preparedness Group Conference,* Washington, D.C. (Oct. 6, 2010) *available at*: http://www.fbi.gov/news/speeches/countering-the-terrorism-threat (noting FBI's difficulties intercepting communications in a drug cartel case and a child exploitation case but also noting the FBI was not prevented from obtaining the information it sought in either cases by using other investigative techniques).

[10] Defendant quotes EFF's FOIA requests in its Motion at pp. 2-3.

3

Case No. 10-cv-04892-RS    Not. of Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.; Opp. to Def's Mot. Summ. J.

completed processing and produced records in response to EFF's requests, withholding a

significant amount of material in whole or part as stated in their declarations. (*See* Decl. of Kristin

Ellis, CRIM (Ellis Decl.); Decl. of Katherine Myrick, DEA (Myrick Decl.); Second Decl. of David

M. Hardy, FBI, (Hardy Decl.); Third Decl. of David M. Hardy (Third Hardy Decl.).)

## III.    ARGUMENT

### A.    The Freedom of Information Act and the Standard of Review

The FOIA is intended to safeguard the American public's right to know "what their

Government is up to." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773

(1989) (quotations omitted).  The central purpose of the statute is "to ensure an informed citizenry,

vital to the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242

(1978). FOIA requests must be construed liberally, and "disclosure, not secrecy, is the dominant

objective of the Act." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976). The Supreme Court

has stated that "[o]fficial information that sheds light on an agency's performance of its statutory

duties falls squarely within [FOIA's] statutory purpose." *Reporters Comm*, 489 U.S. at 773.

The FOIA requires an agency to disclose records at the request of the public unless the

records fall within one of nine narrow exemptions. *See* 5 U.S.C. § 552(b). The exemptions "have

been consistently given a narrow compass," and agency records that "do not fall within one of the

exemptions are improperly withheld[.]" *DOJ v. Tax Analysts*, 492 U.S. 136, 151 (1989) (internal

quotation marks omitted); *see also NLRB*, 437 U.S. at 221; *Nat'l Wildlife Fed'n v. U.S. Forest

Service*, 861 F.2d 1114, 1116 (9th Cir. 1988).

FOIA disputes involving the propriety of agency withholdings are commonly resolved on

summary judgment. *See, e.g.*, *Nat'l Wildlife Fed'n*, 861 F.2d at 1115. Summary judgment is proper

when the moving party shows that "there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Feshbach v. SEC*, 5 F.

Supp. 2d 774, 779 (N.D. Cal. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A

moving party who bears the burden of proof on an issue at trial "must affirmatively demonstrate

that no reasonable trier of fact could find other than for the moving party." *Feshbach*, 5 F. Supp. 2d

4

at 779. "In contrast, a moving party who will not have the burden of proof on an issue at trial can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id*.

A court reviews the government's withholding of agency records *de novo*, and the government bears the burden of proving that a particular document falls within one of the nine narrow exemptions. 5 U.S.C. § 552(a)(4)(B); *Reporters Comm.*, 489 U.S. at 755. An agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted). When claiming an exemption, the agency must provide a "'relatively detailed justification' for assertion of an exemption and must demonstrate to a reviewing court that records are clearly exempt." *Birch v. USPS*, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (citing *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977). An agency may submit affidavits to satisfy its burden, but "the government may not rely upon conclusory and generalized allegations of exemptions." *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 742 (9th Cir. 1979) (internal quotation marks omitted). All doubts as to whether a FOIA exemption applies are resolved in favor of disclosure. *Bloomberg, L.P. v. Bd. of Governors of the Fed. Reserve Sys.*, 601 F.3d 143, 147 (2d Cir. 2010).

## B. EFF is Entitled to Summary Judgment Because the Government Has Improperly Withheld Agency Records

As described in detail below, Defendant has failed to satisfy its burden of proving that it has released all non-exempt material in response to EFF's FOIA requests.[11] As a result, the Court

---

[11] The components have each referred a significant amount of material within the DOJ and to outside agencies. While most of this material is accounted for, several gaps in Defendant's production remain. For example, FBI states it referred several documents to DOJ on May 31, 2011 that were never produced to Plaintiff and do not seem to be accounted for in Defendant's *Vaughn* submissions. These records include responsive presentations, congressional testimony and reports at EFF/Lynch 314-27, 363-66, and 727-743. Similarly, CRIM states it referred 351 pages of responsive records to DOJ's Office of Information Policy (OIP). (Ellis Decl. ¶68.) EFF has not received any of these records. Defendant has failed to meet its burden to show these records have been properly withheld, so the records must be released.

5

Case No. 10-cv-04892-RS          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

should deny the government's motion for summary judgment and grant EFF's Cross Motion, requiring the components to release all material they have improperly withheld under the FOIA.[12]

### 1.  Defendant Has Improperly Withheld Records as "Outside the Scope" and "Not Responsive"

All components have claimed that certain records and portions of records are "outside the scope" of or "not responsive" to EFF's FOIA request. The components appear to be improperly narrowing the scope of EFF's FOIA request to withhold records that are clearly responsive, in violation of the FOIA.

Under FOIA, agencies are required "to construe a FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); *LaCedra v. Executive Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir.2003); *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 20 (D.D.C. 2004). This means agencies are "obliged to release any information, subject to the specified exemptions, which relates to the subject of the request or which *in any sense sheds light on, amplifies, or enlarges upon* that material which is found in the same documents." *Dunaway v. Webster*, 519 F. Supp. 1059, 1083 (N.D. Cal. 1981) (emphasis added). Defendant has acknowledged the "breadth" of EFF's FOIA request, (Def. Mot. at 8), which sought information on, among other things,

> any problems, obstacles or limitations that hamper [each component's] current ability to conduct surveillance on communications systems or networks including, but not limited to, encrypted services like Blackberry (RIM), social networking sites like Facebook, peer-to-peer messaging services or Voice over Internet Protocol (VoIP) services like Skype, etc.

(Def. Mot. at 2 (citing EFF's FOIA request)). Yet each component withheld material as outside the scope or not responsive that, judging by its context, appears to be directly responsive.

For example, FBI withheld in full as outside the scope seven pages of a thirteen-page 2010 presentation titled "Preservation of Lawful Intercepts: Challenges and Potential Solutions." (*See*

---

[12] In an effort to limit the scope of the litigation to the greatest extent possible, EFF does not continue to challenge the adequacy of Defendant's search or Defendant's claims under Exemptions 2, 6, 7(C) or 7(F). EFF also does not challenge DEA's claims under Exemption 3, FBI's claims under the attorney-client privilege, and CRIM and DEA's withholdings under Exemption 7(D). EFF has withdrawn other challenges to specific records or types of information as noted within the body of this brief.

6

Case No. 10-cv-04892-RS          NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.; OPP. TO DEF'S MOT. SUMM. J.

Dkt. 41-5 at pp. 53-55 (Bates pages EFF/Lynch 72-77.)[13] Similarly, the Bureau has used outside-the-scope redactions on several slides of another presentation to withhold information on "examples" of problems the Bureau is facing under CALEA. (*See, e.g., id.* at 65-68 (Bates pp. EFF/Lynch 94-97); 70-73 (EFF/Lynch 99-102); 79-81 (EFF/Lynch 108-110); 150-51 (EFF/Lynch 1462-63)). FBI also withheld two pages as outside the scope from an "Intelligence Note" whose subject is "Going Dark; Evolution in Mobile Technology & Potential Collection Issues." (*See, e.g., id.* at 111-113, (EFF/Lynch 142-145.) The titles and subjects of these documents make clear the material is responsive to EFF's FOIA request for information on "any problems, obstacles or limitations that hamper the FBI's current ability to conduct surveillance on communications systems. . . ." The Bureau cannot use these specious redactions to avoid its burden under FOIA and *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), to prove that each and every redaction properly falls within one of the nine narrow FOIA exemptions.

In a recent case out of the Central District of California, the court severely chastised the FBI for similar "outside the scope" claims. *See Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114 (C.D. Cal. 2011). In *Islamic Shura Council*, the FBI represented to the court and to the plaintiffs in pleadings, declarations, and briefs that "a significant amount of information" it had located was outside the scope of the plaintiffs' FOIA request. *Id.* at 1117. Yet the court found after an *in camera* review of the records that "[t]he Government's representations were then, and remain today, blatantly false." *Id.* On appeal, the Ninth Circuit agreed that the government had misled the district court and held the government "cannot . . . represent to the district court that it has produced all responsive documents when in fact it has not." *Islamic Shura Council of S. Cal. v. FBI*, 635 F.3d 1160, 1166 (9th Cir. Cal. 2011). Ultimately, the court granted Rule 11 sanctions against the FBI for submitting false information. *Islamic Shura Council of S. Cal. v. FBI*, 2011 U.S. Dist. LEXIS 134123 (C.D. Cal., Nov. 17, 2011).

The DEA and Criminal Division also appear to be withholding responsive material as "not

---

[13] *See also id.* at 58, 61, 63, 75 (listing pages withheld as outside the scope from similar presentations, including one delivered in April 2010 to the National District Attorneys Association); *id.* at Bates EFF/Lynch 812-819 (noting pages 9-14 of a 14-page presentation titled "Closing the National Security ELSUR Gap" were withheld as outside the scope).

7

Case No. 10-cv-04892-RS        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

responsive," though their redactions are more cryptic. For example, DEA states that it has withheld as not responsive 27 pages of material from a category of briefing presentations and slides (*see* DEA *Vaughn* Index, Doc. No. 40-1 at 50, n.3). Yet it is impossible to tell which pages the DEA withheld in full based on specific FOIA exemption claims and which it withheld in full as not responsive. The pages withheld in full (whether as not responsive or under certain exemption claims) are from several presentations titled "Diminishing Electronic Surveillance Capabilities in the Communications Age," that are otherwise responsive to Plaintiff's FOIA request. (*See, e.g.*, Second Declaration of Jennifer Lynch in Support of Plaintiff's Cross Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Second Lynch Decl.") ¶ 5, Ex. 1, attaching DEA Bates pp. 5C-1-12 (DEA withheld pp. 2, 8-11), 5C-13 (DEA has withheld pp. 14-27), 5C-131-155 (DEA has withheld pp. 132, 135-36, and 148-54), 5C-37-54 (DEA has withheld pp. 38, 42, 44, 46-48 and 53 from a presentation titled "Law Enforcement's Need to Preserve Lawful Intercept Capabilities").)

Similarly, in a document CRIM describes as "released to plaintiff in full," (CRIM *Vaughn* Index, Dkt. 39-2 at 4, n. 2), the agency withheld as "not responsive" two paragraphs of handwritten notes from a March 18, 2010 meeting with "Main Justice" on "Going Dark." (*See* Second Lynch Decl. ¶ 6, Ex. 2 (attaching Bates p. CRM-000011).) CRIM also withheld as "not responsive" several paragraphs and one full page from a five-page email chain entitled "24/7 Trace of Threat Email" that describes "e-mail anonymizing services." (Dkt. 39-2 at 8 (CRIM *Vaughn* entry for Bates pp. CRM-000055-59); *see also* Second Lynch Decl. ¶ 6, Ex. 2 (attaching Bates p. CRM-000055-59).)

CRIM may also be withholding other information as not responsive. For several documents the agency appears to be claiming an exemption for only a portion of the document, even though it withheld the entire document in full. For example, the *Vaughn* entry for pages CRM-000013-14 notes that CRIM withheld under Exemptions 5 and 7(E) "approximately 12 lines of text from two pages" that discussed a proposal "to address particular limitations on the Government's ability to conduct lawfully intercept certain communications [*sic*]." However, it is not clear whether the two pages only contain 12 lines of text or whether they contain more text but the agency only chose to

8

claim exemptions for those 12 lines, finding (without noting specifically) the other text not responsive. (*See* CRIM *Vaughn* Index, Dkt. 39-2 at 4.)[14]

After acknowledging the breadth of Plaintiff's FOIA request, Defendant cannot now either improperly narrow the scope of the request or falsely claim information is not responsive to the request. This misleads Plaintiff and this Court and is counter to the basic principles of FOIA promoting openness, transparency and disclosure. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989) (finding that the basic policy embodied in FOIA is that agency documents are subject to disclosure unless they fall into one of the nine exemptions enumerated in the statute); *Rose*, 425 U.S. at 361 ("Disclosure, not secrecy, is the dominant objective of the Act."). Defendant has not met its burden of establishing the records it withheld are either outside the scope or not responsive. As such, the material must be released.[15]

### 2. FBI Has Failed to Meet the Procedural Requirements Necessary to Sustain Its Burden Under the FOIA[16]

When an agency seeks to withhold information, it must "specifically identify[] the reasons why a particular exemption is relevant and *correlat[e] those claims with the particular part of a withheld document* to which they apply." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (emphasis added) (citations and internal quotation marks omitted). Based upon FBI's failure to meet this minimum standard alone, the Court should deny the government's motion.

In *Vaughn v. Rosen*, the D.C. Circuit established the procedural requirements that "an agency seeking to avoid disclosure" must satisfy to carry its burden. 484 F.2d at 828. *Vaughn* requires that "when an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and

---

[14] *See also* CRIM *Vaughn* entry for CRIM-000030 (withholding "1/2 page of information" from a 1-page draft document withheld in full); CRM-000032-33, 36, 37-38, 39, 40, 41, 42-43 (same or similar). *Compare* Dkt. 39-2 at 8, n.3 (noting specifically that the first page of an email chain "does not contain any information about the 'going dark' issue.")

[15] The examples Plaintiff discusses in this section are by no means the only instances where the components have withheld material as "outside the scope" or "not responsive," and Plaintiff challenges each of these claims.

[16] EFF does not challenge the sufficiency of CRIM or DEA's *Vaughn* indices and accompanying affidavits, except to the extent described in Section 1 above.

9

correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent.*, 566 F.2d at 251 (citing *Vaughn*); *see also Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (applying the *Vaughn* requirements). The purpose of an agency's *Vaughn* Index and accompanying affidavits is to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener*, 943 F.2d at 977 (citing *King v. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)). According to *King*, "[s]pecificity is the defining requirement" of an agency's *Vaughn* Index, and affidavits cannot sustain summary judgment if they are "conclusory, merely reciting statutory standards, or if they are too vague or sweeping." 830 F.2d at 219 (footnote omitted). As the court concluded in *King*, "[c]ategorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *Id*. at 224 (footnote omitted). Whether the government's *Vaughn* submissions are adequate "is a question of law reviewed *de novo*." *Weiner*, 943 F.2d at 978 (citing *Binion v. DOJ*, 695 F.2d 1189, 1193 (9th Cir. 1983)).

The FBI's *Vaughn* submission[17] offers a particularly egregious example of the type of conclusory index and affidavit that courts have long rejected. While the Bureau identified a total of 2,662 responsive pages, its *Vaughn* index totals only 14 pages and 16 entries. Each entry in the Index purports to cover anywhere from 16[18] to 438[19] pages of responsive records, with the majority of the entries covering more than 100 pages. According to the FBI, the entries correlate to documents from the individual FBI divisions that responded to each FOIA request (*see, e.g.,* FBI *Vaughn* Index, Dkt. 41-8 at 1), yet this means each *Vaughn* entry covers several, very different types of records—from emails to talking points memos to presentations to discussion papers to proposed legislation—and covers just as many individual exemption claims.[20] The FBI claims these entries are "detailed description[s] of FBI responsive records" (*id*.), but a paragraph

---

[17] Plaintiff refers to each agency's affidavits and indices together as its "*Vaughn* submission."

[18] FBI *Vaughn* Index Entry 2C, Dkt. 41-9 at p. 3.

[19] FBI *Vaughn* Index Entry 2H, Dkt. 41-9 at p. 7.

[20] As a point of comparison, DEA used categories based on the function or topic of the document itself. Therefore the categories in its *Vaughn* submission are broken out into, for example "Case Examples" (4), "Draft Legislative Input and Proposals" (3C), and "Briefing Presentations and Slides" (5C). (Myrick Decl. ¶ 8.)

10

description that covers 438 pages of records and eight individual exemption claims cannot be considered "detailed"—nor can it meet the requirements of *Vaughn v. Rosen* or the other cases cited above.

Neither the Hardy Declaration nor the FBI's notations on individual records mitigate these problems. Mr. Hardy's declaration provides only general descriptions of the material for which each exemption is claimed and conclusory explanations for why the FBI believes a group of documents should be withheld. Mr. Hardy fails to point to specific Bates page numbers of records for each exemption claim, making it impossible for Plaintiff and this Court to determine whether the material on each record is appropriately withheld.  These failings persist throughout the FBI's release. For records released in part, the Bureau regularly fails to annotate each page in such a way that would allow the reader to determine which exemption claims correlate to specific redactions within the document. For example, the Bureau has heavily redacted part of an email chain on Bates page EFF/Lynch 200. FBI redacted multiple paragraphs from the email under Exemptions 1, 2, 5, 6, 7C, 7D and 7E, but, as FBI has redacted the subject line and to/from information from the email, it is unclear what the email covers and which exemption claim applies to what information withheld. (*See also* EFF/Lynch 213 (multiple paragraphs redacted under Exemptions 2, 3, 5, and 7E).)[21] The FBI's *Vaughn* submission fails to meet even the minimum standards laid out in *Vaughn v. Rosen*, *Mead Data Center*, *Wiener v. FBI*, or *King v. DOJ*, cited above. For this reason, if for no other, the Court should deny the government's Motion.

### 3.   DEA and FBI Have Improperly Withheld Records Under Exemption 1

FBI and DEA have invoked Exemption 1 to withhold information from a little over one hundred pages of records. (*See* Def. Mot. for Summ. J. ("Def. Mot.") at 10-13 (citing declarations).)[22] Because the components' *Vaughn* submissions are categorical, lack specificity, and fail to tie the general harm claimed with the actual record or document at issue, their Exemption 1 claims must fail.

---

[21] *See also,* Bates pages EFF/Lynch 180, 184, 190, 191, 192-195, 200, 215-216, 228, among many other pages.

[22] Technically only FBI withheld records under Exemption 1 as, according to Defendant, DEA invoked Exemption 1 "to protect the Bureau's own information." (Def. Mot. at 11.)

11

Exemption 1 allows agencies to withhold records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. 552(b)(1). Pursuant to Executive order 13,526, the government may withhold properly classified information such as foreign government information, intelligence activities, intelligence sources or methods, and cryptology. E.O. 13,526 § 1.4, as long as an original classification authority classified the information after determining its disclosure "reasonably could be expected to result in damage to national security . . ." *Id*. § 1.1(a).

FOIA allows requesters to challenge the government's withholdings under Exemption 1 and "requires the district court to review the propriety of the classification." *Wiener*, 943 F.2d at 980; *see also Cent. for Intn'l Envtl Law v. Office of U.S. Trade Representative*, Case No. 01-498, 2012 U.S. Dist. LEXIS 26038 at *21-22 (D.D.C. Feb. 29, 2012) (holding USTR failed to meet its burden under Exemption 1 and enjoining further withholding of classified document). Although an "agency's classification decisions are accorded substantial weight," *id.*, the government still has the burden to sustain its claims under Exemption 1 by providing declarations that are "sufficient to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Int'l Counsel Bureau v. DOD*, 723 F. Supp. 2d 54, 63 (D.D.C. 2010) (citing *Campbell v. DOJ*, 164 F.3d 20, 30 (D.C. Cir. 1998) and noting "deference is not equivalent to acquiescence"). *Vaughn* submissions that offer nothing more than a "categorical description of redacted material coupled with [a] categorical indication of anticipated consequences" fall "short of establishing that release could reasonably be expected to harm national security." *Id.* at 64.

In the instant case, FBI's *Vaughn* submission and the Third Hardy Declaration in support of the DEA's Exemption 1 claim are precisely the "sort of 'overly vague 'and 'sweeping' declaration[s] that 'will not, standing alone, carry the government's burden.'" *Id.* (citing *Larson v. Dep't of State*, 565 F. 3d 857, 864 (D.C. Cir. 2009)). The submissions "fail[] to state specific harms that may result from the release of a particular document," *Wiener*, 943 F. 2d at 981, and therefore fail to meet the agency's burden on summary judgment. *See id.* (holding a similar boilerplate

12

*Vaughn* submission failed to support the FBI's Exemption 1 claims); *see also*, *Campbell*, 164 F. 3d at 31, 37 (D.C. Cir. 1998) (FBI declaration did not "draw any connection between the documents at issue and the general standards that govern the national security exemption.").

Two recent district court opinions have harshly criticized FBI *Vaughn* declarations that use the same or very similar language as the Hardy declarations the FBI submitted in the instant case. *See ACLU v. ODNI,* No. 10-4419, 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011); *ACLU of Wash. v. DOJ*, No. 09-0642, 2011 U.S. Dist. LEXIS 26047 (W.D. Wash. Mar. 10, 2011). The *ACLU v. ODNI* court held "[w]ith respect to the balance of [FBI's] Exemption 1 withholdings . . . the Hardy Declaration makes little effort to describe the documents at issue or explain why they reflect intelligence 'methods,' 'activities,' or 'capabilities.'" 2011 U.S. Dist. LEXIS 132503 at *33. The court concluded the declaration "fail[ed] to fulfill the 'functional purpose' of the *Vaughn* affidavit" and therefore the FBI failed to carry its burden on most of its Exemption 1 claims. *Id.* at *33-34. In *ACLU of Wash. v. DOJ*, the court similarly criticized the FBI for "in effect, parrot[ing] the language of the Executive Order (in the disjunctive) and declar[ing] that the redacted information falls within one or more of the categories covered by the order." 2011 U.S. Dist. LEXIS 26047 at *10. The court held "[t]his categorical approach is 'clearly inadequate.'" *Id.* (citing *Wiener*, 943 F.2d at 978-79).[23]

The Second and Third Hardy Declarations submitted in this case are textually almost identical in several areas to the Hardy declarations filed in both *ACLU v. ODNI* and *ACLU of Wash. v. DOJ*. They are also internally repetitive and use boilerplate text extensively to describe information that likely varies widely from document to document;[24] they thus fail to adequately tie the harms claimed to the release of a specific document. *See Wiener*, 943 F. 2d at 981. The FBI's *Vaughn* Index fails to illuminate the situation. For example, FBI claimed Exemption 1 for category

---

[23] Of note, both cases criticized the FBI's *Vaughn* submission for lack of specificity under Exemption 7 as well. *See* Secs. 7-9, *infra*.

[24] *Compare* Second Hardy Decl. ¶¶ 113-115 with ¶¶ 129-131, 137-139, 153-155, 172-174, 187-189, 204-206, 223-225, and 249-251. *Also compare* ¶ 116 with ¶¶ 140, 175, and 226. The Third Hardy Decl. uses the same language as the Second Decl. *Compare* Second Hardy Decl. ¶¶ 24-31 with Third Hardy Decl. ¶¶ 5-11.

1E documents (296 pages of records from the Bureau's Operational Technology Division) (*see* Second Hardy Decl. ¶21; FBI *Vaughn* Index, Dkt. 41-8 at 4). Yet this category includes "internal e-mail chains w/attachments[,] . . . deliberative talking points and discussion papers[,] . . . accomplishment reports[,] . . . status reports[,] . . . and contractual paperwork with an external contractor." (FBI *Vaughn* Index at 4.) Mr. Hardy fails to distinguish between the various types of documents or to specify where exactly in the 296 pages of Category 1E records the Exemption 1 claims fall. Nor is it clear, given Mr. Hardy's use of the disjunctive throughout his declaration,[25] what the information in each document covers and what the true harm of disclosing it would be. Further, Mr. Hardy's description of the material withheld in Category 1E is exactly the same as his description of material withheld in other categories of documents. He thus fails to draw any connection between the records at issue and the "general standards that govern the national security exemption." *Campbell*, 164 F. 3d at 31.

As the court noted in *Codiron v. DOJ*, 310 F. Supp. 2d 44 (D.D.C. 2004), "[i]t might be just as vacuous—and just as much an abdication of the court's *de novo* review duty—to allow the FBI to prevail time and time again on the same, 50-word boilerplate language instead of just two words ('national security'), regardless of the content of the withheld information." 310 F. Supp. 2d at 53. The Court should not abdicate its duty here, but must engage in true *de novo* review and order FBI and DEA to disclose records improperly withheld under Exemption 1.

### 4.   FBI Has Improperly Withheld Records Under Exemption 3

FBI has withheld information under Exemption 3 and several surveillance statutes, including 18 U.S.C. §§ 2510, *et seq.*, and § 3123(d). While the FBI is correct that several cases recognize these surveillance statutes as valid bases to withhold records under (b)(3), *see, e.g.*, *Lam Lek Chong v. DEA*, 929 F.2d 729, 733 (D.C. Cir. 1991); *Manna v. DOJ*, 815 F. Supp. 798, 812 (D.N.J. 1993), the Bureau appears to be claiming Exemption 3 to withhold more information than

---

[25] *See, e.g.*, Hardy Decl. ¶ 114 ("The classification redactions have been asserted to protect from disclosure information that would reveal the actual intelligence activities utilized by the FBI against specific targets of foreign counterintelligence investigations *or* operations; *or* disclosure of intelligence gathering capabilities of the activities directed at specific targets. The intelligence activities detailed in the withheld information are effective means for the FBI to gather, store, *or* disseminate intelligence information").

14

Case No. 10-cv-04892-RS          Not. of Cross Mot. Summ. J.; Mem. in Supp. of Cross Mot. Summ. J.;
Opp. to Def's Mot. Summ. J.

the case law and underlying statutes allow.

According to case law, and the DOJ's own guidance on applying Exemption 3 to wiretap and pen register information, Exemption 3 claims supported by the surveillance statutes are limited to protecting the information that may be kept secret under the underlying statute and thus offer "protection for *information obtained by law enforcement agencies pursuant to the statute governing court-ordered wiretaps*" and pen registers. *DOJ Guide to the Freedom of Information Act (2009 edition)*, "Exemption 3," 217, 232, *available at* http://www.justice.gov/oip/foia_guide09/exemption3.pdf (emphasis added). Exemption 3 does not allow an agency to withhold all information tangentially related to a pen register or wiretap, and indeed, the statutes themselves require the government to report regularly on the number and type of wiretaps and pen registers conducted annually. *See* 18 U.S.C. § 2519 (requiring judges to report specific and detailed information on interceptions they authorized or denied within the past year); 18 U.S.C. § 3126 (requiring the Attorney General to provide Congress with detailed information on the previous year's pen register and trap/trace orders). Similarly, if the material obtained under either surveillance statute is no longer under seal or has been revealed to the public, it cannot continue to be withheld under Exemption 3. *See, e.g.*, *Cottone v. Reno*, 193 F.3d 550, 554-56 (D.C. Cir. 1999) (noting that Exemption 3 protection was waived after several tapes of wiretapped conversations obtained pursuant to Title III were played in open court); *see also* 18 U.S.C. § 3123(d) (noting that an order authorizing or approving the installation and use of a pen register or a trap and trace device is sealed only "until otherwise ordered by the court").

Given the broad scope and categorical nature of the Bureau's *Vaughn* submission, it is impossible for Plaintiff to determine exactly what information the FBI is seeking to withhold under Exemption 3. Each of the paragraphs in the Hardy Declaration addressing material withheld under the Pen Register Statute or Title III is exactly the same as the next (*compare* Hardy Decl. ¶ 142 with ¶¶ 191 and 229; *compare* ¶ 143 with ¶¶ 157, 177, and 227), and neither the Hardy Declaration nor the limited information provided in the FBI's *Vaughn* Index nor the individual records themselves make clear that the Bureau is narrowly construing its exemption claims under these surveillance statutes and Exemption 3. In light of this, the Court should order the information

15

released.

### 5.        Defendant Has Improperly Withheld Records Under Exemption 4

Both DEA and FBI have improperly withheld information under Exemption 4. Exemption 4 permits agencies to withhold the "trade secrets and commercial or financial information" of private parties, obtained by the government, when that information is "privileged or confidential." 5 U.S.C. § 552(b)(4). Much of the case law concerning the "confidential" requirement of Exemption 4 has been developed in so-called "reverse" FOIA litigation; that is, in litigation where a private party—usually a corporation—has submitted information to the government and sues in federal court to prevent the disclosure of that information in response to a FOIA request. *See, e.g.*, *Frazee v. U.S. Forest Serv.*, 97 F.3d 367 (9th Cir. 1996). The government may also affirmatively invoke Exemption 4 to withhold "confidential" information from a requester; in these cases, and in contrast to reverse FOIA suits, the government represents by proxy the interests of the company in protecting the allegedly "confidential" information at issue. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 292 (1979).

Courts have determined information is "confidential" if disclosure would be likely "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Nat'l Parks and Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C. Cir. 1974); *see also GC Micro Corp. v. Def. Logistics Agency,* 33 F.3d 1109, 1112 (9th Cir.1994) (establishing *Nat'l Parks* test in 9th Circuit). At their core, both *National Parks* criteria focus on the probable response to disclosure by the *company. See Nat'l Parks*, 498 F.2d at 769 (describing the two-fold justification for Exemption 4: "(1) encouraging cooperation by those who are not obliged to provide information to the government and (2) protecting the rights of those who must"). Here, Defendant's withholdings fail for two reasons. First, Defendant's justifications for its withholdings are not based on personal knowledge and therefore cannot satisfy its burden at summary judgment. Second, the justifications provide nothing more than conclusory restatements of speculative expected harm. As such, Defendant's withholdings under Exemption 4 are improper.

First, here, neither DEA nor FBI's declarants have personal knowledge of the companies'

16

competitive positions or their plans to provide, or refuse to provide, information to the government in the future. Thus, due to the declarants' lack of personal knowledge, both components' declarations fail to provide anything more than speculative bases to justify the claimed withholdings. *See Londrigan v. FBI*, 670 F.2d 1164, 1174-75 (D.C. Cir. 1981) (affidavit not based on personal knowledge should have been disregarded); *Grand Central Partnership Inc. v. Cuomo*, 166 F.3d 473, 480 (2d Cir. 1999) (same). Because Defendant's affidavits lack an adequate foundation to support the opinions expressed, Defendant has failed to satisfy its burden under Exemption 4. *See GC Micro*, 33 F.3d at 1113 (denying Exemption 4 withholding, even where "[a]s part of its motion for summary judgment, the [government] submitted declarations by officers of each of the three corporations involved").

Second, Defendant's conclusory statements fail to "show how release of the particular material would have the adverse consequence that [Exemption 4] seeks to guard against." *Wash. Post Co. v. DOJ,* 863 F.2d 96, 101 (D.C. Cir. 1988). Where, as here, the government withholds information as "confidential," it must provide a specific basis on which to assert its claims, including "'evidence revealing (1) actual competition and (2) a likelihood of substantial competitive injury' in order to prove that the information falls under Exemption 4." *Frazee*, 97 F.3d at 371 (*citing GC Micro,* 33 F.3d at 1113). In this case, Defendant has submitted nothing more than non-specific, conclusory, and speculative justifications for withholding the information under Exemption 4. (*See* Def. Mot. at 15.) Both FBI and DEA's supporting declarations simply parrot the language of Exemption 4 cases without providing a specific factual basis for the declarants' assessments of the "confidential" nature of the withheld information. (*See* Myrick Decl. ¶ 21(b)(2); Hardy Decl. ¶ 118.) Indeed, DEA's declaration does not even identify the companies whose information Defendant seeks to protect,[26] let alone identify the specific types of information at

---

[26] Defendant suggests that withholding under Exemption 4 is also justified by virtue of a non-disclosure agreement with one (or more) of the companies at issue. (Def. Mot. at 15 n.5.) However, agreements for confidentiality, standing alone, are insufficient to satisfy the requirements needed for nondisclosure under Exemption 4. *GC Micro,* 33 F.3d at 1113; *see also Petkas v. Staats,* 501 F.2d 887, 889 (D.C. Cir.1974). Indeed, "[i]f the Court were to accept defendant's argument, any agency could, theoretically, simply hand out promises of confidentiality to individuals who gave information in order to avoid judicial review as to whether a record can be withheld." *Dow Jones Co., Inc. v. FERC*, 219 F.R.D. 167, 179 (C.D. Cal. 2003).

17

Case No. 10-cv-04892-RS         NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

issue and the way disclosure would harm the companies' competitive positions. (*See* Myrick Decl. ¶ 21(b)(2).) While FBI's *Vaughn* submission at least identifies the company as the RAND Corporation, its supporting declaration provides no basis for its assertion that disclosure will harm the FBI's ability to obtain information from the company in the future. (*See* Hardy Decl. ¶ 118.)

Here, where Defendant has not even attempted to justify its withholdings with the degree of specificity and personal knowledge necessary to carry its burden, it cannot sustain its withholdings under Exemption 4. These records must be released.

### 6.   Defendant Has Improperly Withheld Records Under Exemption 5

FBI, DEA and CRIM have withheld over 2,000 pages of material under Exemption 5, claiming these records are protected by the deliberative process privilege and the work-product doctrine. (*See* Def. Mot. at 17-22; Ellis Decl. ¶ 41; Myrick Decl. ¶ 9(b)(noting DEA has claimed Exemption 5 on 461 pp.); Hardy Decl. ¶ 45 (noting (b)(5) withholdings on 1,809 pp.) Exemption 5 provides a narrow exception for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). The Supreme Court has interpreted Exemption 5 to protect records that fall "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001); *see also Carter v. Dep't of Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002).  For each claim, the government has failed to show the records withheld fit into one of the narrow privileges available under Exemption 5; therefore, Defendant has not met its burden and the records must be disclosed.

### (a)   Defendant Has Improperly Withheld Records That Are not Inter or Intra-Agency Communications

Exemption 5, by its own terms, applies only to records that are "inter-agency or intra-agency." 5 U.S.C. § 552(b)(5). As the Supreme Court has noted, "[s]tatutory definitions underscore the apparent plainness of the text:" "'agency' means 'each authority of the Government of the

---

18

Case No. 10-cv-04892-RS      NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

1   United States,' and 'includes any executive department, military department, Government

2   corporation, Government controlled corporation, or other establishment in the executive branch of

3   the Government . . .or any independent regulatory agency." *Klamath Water Users Protective Ass'n*,

4   531 U.S. at 9 (citing 5 U.S.C. §§ 551(1), 552(f)) (internal citations omitted). "In general, this

5   definition establishes that communications between agencies and outside parties are not protected

6   under Exemption 5." *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 237 F. Supp. 2d 17,

7   25 (D.D.C. 2002). Thus, when a document is shared outside an agency—even in draft form—the

8   document may not be withheld under Exemption 5.

9       DEA and FBI have withheld materials under Exemption 5 that were likely shared outside

10  the executive branch and, thus, have waived their protection under Exemption 5. For example,

11  DEA withheld 26 pages from DEA 6-5-31 under Exemption 5. These records describe

12  "[c]ommunications relating to, and between, DEA and six (6) carrier, service provider, and/or

13  consultant/vendor companies regarding specific technical intercept difficulties encountered during

14  intercept operations." (DEA *Vaughn* at 14.) DEA similarly withheld 8 pages that document

15  "meetings between designated DEA personnel and representative personnel of communication

16  carries, service providers, or communications industry consultants." (*Id.* (describing DEA 6-32-

17  40).) FBI withheld a 14-page transcript of the FBI Director's testimony before the Senate

18  Intelligence Committee at EFF/Lynch 347-60; an internal congressional contact briefing summary

19  at EFF/Lynch 308, which summarizes a 2006 meeting with a Senate Judiciary staff member where

20  CALEA was discussed; and has withheld approximately 80 pages from a meeting of the Law

21  Enforcement Executive Forum, which appears to include non-agency personnel.[27] (*See* EFF/Lynch

22  1241-1323.) To the extent these and other records describe meetings and information conveyed to

23  third parties outside the executive branch, Exemption 5 is unavailable to withhold the information.

24

25

26

---

27  [27] A Google search for "Law Enforcement Executive Forum" leads to a website for the Illinois Law
    Enforcement Training and Standards Board Executive Institute, s*ee*

28  http://www.iletsbei.com/forum/, which may or may not be the same organization.

**(b)     Defendant Has Improperly Withheld Records Under the Deliberative Process Privilege**

Defendant has claimed Exemption 5's deliberative process privilege to withhold hundreds of pages of responsive records in their entirety and many more pages in part. Because FBI's *Vaughn* submission lacks contextual specificity, and because many of the components' records are final opinions or contain purely factual information, these records must be released.

The deliberative process privilege protects records that reflect the "opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (internal citations omitted). An agency record may be withheld pursuant to this narrow privilege only if it is "both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which policies are formulated.'" *Nat'l Wildlife Fed'n*, 861 F.2d at 1117 (quoting *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978)); *see also Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir. 1997).

To support a deliberative process claim, an agency must "establish[] the character of the decision, the deliberative process involved, and the role played by the documents in the course of that process." *United States v. Rozet*, 183 F.R.D. 662, 666 (N.D. Cal. 1998) (citing *Strang v. Collyer*, 710 F. Supp. 9, 11 (D.D.C. 1989), *aff'd*, 899 F.2d 1268 (D.C. Cir. 1990) (internal quotation marks omitted)). An agency must also "*identify a specific decision* to which the document is predecisional." *Maricopa Audubon Soc'y*, 108 F.3d at 1094 (emphasis added). As detailed below, Defendant has failed to meet its burden to withhold documents under the deliberative process privilege.

**(i)     *FBI's Vaughn Submission Fails to Satisfy the Heightened Specificity Required to Withhold Records Under the Deliberative Process Privilege***

In cases involving the deliberative process privilege, the need for specificity in agencies' *Vaughn* submissions is particularly acute. *Animal Legal Def. Fund, Inc. v. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)). The "first step" in determining whether a document is properly

20

withheld as deliberative under Exemption 5 "is to examine the context in which the materials are used." *Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (internal citations and quotations omitted); *see also NRDC v. DOD*, 388 F. Supp. 2d 1086, 1097 (C.D. Cal. 2005) (citing *Judicial Watch, Inc. v. USPS*, 297 F. Supp. 2d 252, 260 (D.D.C. 2004)). "Without a sufficiently specific affidavit or *Vaughn* Index, a court cannot decide, one way or the other, a deliberative process privilege claim." *Judicial Watch*, 297 F. Supp. 2d at 260 (citations omitted).

FBI's *Vaughn* submission fails to provide the heightened level of contextual specificity necessary to withhold hundreds of pages of responsive records under the deliberative process privilege. To satisfy its burden, FBI must identify "the particular deliberative process involved," the "role that the withheld document played in that deliberative process," and information concerning the "identities, positions, and job duties of the authors and recipients of the withheld documents" for every document withheld. *EFF v. DOJ*, No. 10-641, 2011 WL 5966379, *12, *15 (D.D.C. Nov. 30, 2011). FBI has failed to do this for nearly every record for which it claimed Exemption 5. (*See generally,* FBI *Vaughn* submission.) For this reason it is impossible for Plaintiff to either determine FBI has withheld records properly under Exemption 5 or to fully brief arguments in response. FBI cannot withhold information from over 1,800 pages of records, (*see* Hardy Decl. ¶ 45), without providing both this Court and EFF with sufficiently specific *Vaughn* entries to allow an adequate assessment of its withholdings.

(ii)    ***All Components Have Improperly Withheld Records Reflecting Final Agency Positions or Opinions***[28]

For an agency record to be withheld under the deliberative process privilege, the agency must identify "a specific decision to which the document is predecisional." *Maricopa Audubon Soc'y*, 108 F.3d at 1094. Even if a document is predecisional at the time it is prepared, the document can "lose that status if it is adopted, formally or informally, as the agency position on an

---

[28] EFF withdraws its challenges to "draft" documents, or deliberative materials contributing to "draft" documents, withheld under Exemption 5 for which DEA has identified a "final" version. These records include 1A 74-77; 1B 1-3, 4-5, 8-11; 2A 1-12; 2B 1-4; 2D 13-27, 28-31, 32-98; 3A 1-10, 13-14, 17-18, 19-23; 3B 9-143, 148, 151, 155, 157-164, 166-173, 177-181, 195-197, 211-214; 3C 1-8; 4 53-83; 7 8-11; 8 1-35.

21

Case No. 10-cv-04892-RS        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

issue." *NRDC v. DOD*, 388 F.Supp. 2d at 1098 (citing *Coastal States*, 617 F.2d at 866. Here, because Defendant has failed to identify a specific decision to which many of the records at issue preceded and contributed, the records should be treated as the final agency positions and, thus, may not be withheld under the deliberative process privilege.

For example, DEA's withholding of a two-page "internal DEA bulletin" describing a particular intercept issue and used to "advise and inform agents" likely represents the position of DEA. (DEA *Vaughn* at 15-16 (describing DEA 7-1-7).) FBI withheld a similar three-page document "from an internal 'portal' that presents definitions on topic's such as 'Going Dark,' and the 'Degradation of Domestic Electronic Surveillance Capability.'" (EFF/Lynch 329-331.) These documents, which likely are guidance to agents in the field, are improperly withheld under the deliberative process privilege. *See Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997).

DEA and FBI have withheld other records that likely reflect final agency positions, including "talking points" memos[29]—memos prepared for senior agency officials in preparation for meetings, hearings, or negotiations—and briefing materials.[30] *See Elec. Privacy Info. Ctr. v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007) ("[T]he likelihood" that withheld materials "have been relied upon or adopted as official positions after their preparation . . . is particularly high in the case of 'talking points,' . . . and . . . 'briefing materials.'"); *see also N.Y. Times Co. v. DOD*, 499 F. Supp. 2d 501, 514-15 (S.D.N.Y. 2007) (holding "talking points and the formulation of responses to possible questions" prepared "to aid in briefing officials and preparing them to answer questions" not properly withheld under Exemption 5). As Defendant acknowledges, these talking points and briefing materials "are routinely used within [the agency] . . . as preparatory tools for executives, management, and designated agency representatives" to represent the interests of the agency in various fora. (Myrick Decl. ¶ 9(c); Hardy Decl. ¶ 46) However, because senior officials are

---

[29] S*ee, e.g.,* DEA *Vaughn* at 1, 4, 5, 6, 13; FBI EFF/Lynch 989-992, 999-1006, 1007-09, 1166-69 (attaching a 2006 talking points memo that likely was adopted by the agency), 1170-75, 1280-1322 (talking points prepared for Law Enforcement Executive Forum, a group that may or may not include non-agency members); FBI EFF/Cardozo 961-965, 969-970, 973-979.

[30] *See, e.g.,* DEA *Vaughn* at 11-13, 16, 17; FBI EFF/Lynch at 302-304 (3-page internal briefing prepared March 12, 2007, by the FBI's Directors Research Group)*,* 305-306 (2-page undated internal briefing concerning CALEA limitations).

responsible for articulating the components' final decisions and policy, these talking points and briefing materials likely reflect the agency's policy or position on various matters, regardless of whether the specific content was actually disclosed. For example, DEA withheld several "Question and Answers (Q and As)" relating to "electronic intercept issues/challenges presented by emerging technologies" that were used to prepare senior agency officials for hearings before Congress. (*See, e.g.,* DEA *Vaughn* Index at 16; Myrick Decl. ¶ 23.) And FBI withheld a similar "Q/A" prepared for a hearing before the Senate Judiciary Committee. (FBI EFF/Lynch 1231-32.) Because the Q and As were used to prepare officials for public testimony, the answers likely represent the positions that senior DEA and FBI officials were prepared to articulate during the hearing. That, ultimately, every draft "question" was not answered at the hearing is of no import: instead, it is the fact that senior officials were prepared to rely on these positions that is the relevant inquiry.[31]

Finally, FBI has withheld as "drafts" multiple versions of the same set of talking points, discussion papers, and presentations,[32] stating in an email to counsel that there are no final versions of these documents. (*See* Second Lynch Decl. ¶ 7, Ex. 3.) An agency's designation of a document as a "draft," alone, does not render it exempt under the deliberative process privilege. While a "draft" version of a document may, in certain circumstances, be legitimately withheld under the deliberative process privilege, "designation of a document as a 'draft' does not automatically trigger proper withholding[.]" *Defenders of Wildlife v. Dep't of Agric.*, 311 F. Supp. 2d 44, 58 (D.D. C. 2004); *see also Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982)

---

[31] Other examples of "talking points" or "briefing materials" withheld under Exemption 5 include DEA 2D 1-12 ("DEA Administrator Talking Points for Congressional Testimony" regarding electronic intercept issues" for use in testimony before congress"), DEA *Vaughn* at 5; DEA 3A 11-12 ("Title III Intercept Talking Points Paper" prepared for "DOJ Working Group"), DEA *Vaughn* at 6; DEA 3A 15-16 ("Pen Register and Trap and Trace Talking Points Paper" prepared for "DOJ Working Group").

[32] *See, e.g.*, Going Dark presentation/discussion paper titled "Law Enforcement's Need to Preserve Lawful Intercept Capabilities," at, *e.g.*, EFF/Lynch 367-79, 380-92, 393-405, 406-417, 768-84, 785-802; Going Dark Presentation titled "Preservation of Lawful Intercepts: Challenges and Potential Solutions" at, *e.g.*, 419-428, 449-458, 459-468, 469-77, 479-87, 488-99, 558-66, 604-614, 744-54; draft discussion paper titled "Going Dark: Problems and Proposals," at, *e.g.*, 429-448, 431-446, various documents titled "Closing the National Security ELSUR Gap," at *e.g.*, 594-602, 803-811, 812-819.

23

("*Coastal States* forecloses the Agency's argument that any document identified as a 'draft' is *per se* exempt.")). In the absence of either a more sufficiently descriptive *Vaughn* submission or a final agency decision or record to which these "drafts" contributed, FBI has improperly withheld these records under the deliberative process privilege.

### (iii)   *Defendant Has Improperly Withheld Purely Factual Information*

"[M]emoranda consisting only of compiled factual material or purely factual material contained in deliberative memoranda and severable from its context" may not be withheld under the deliberative process privilege. *EPA v. Mink*, 410 U.S. 73, 88-89 (1973); *see also Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1297 (N.D. Cal. 1992) (same). While the rationale behind the deliberative process privilege encourages candor in deliberative discussions, the requirement that facts must be disclosed is intended to enhance the integrity of agency deliberations. *See Quarles v. Dep't of Navy*, 893 F.2d 390, 392 (D.C. Cir. 1990) (noting that "the prospect of disclosure is less likely to make an advisor omit or fudge raw facts").

In applying Exemption 5 to over 2,000 pages of records withheld either in their entirety or in part, it is a near-certainty that Defendant has withheld some purely factual material. Some records, in particular, suggest this. For example, DEA withheld a "Case Example Discussion Paper" that describes "cases and individualized assessments/analysis of the technological impact for each documented intercept difficulty." (DEA *Vaughn* Index at 9 (describing DEA 4 48-52).) Nothing in DEA's description suggests that these case studies are "deliberative" in any way; thus, the factual portions of these case summaries cannot be withheld under Exemption 5. DEA also withheld an "Issue and Proposal Matrix" in full under the deliberative process privilege. (DEA *Vaughn* at 3.) The matrix, which is in "a spreadsheet format," identifies "specific intercept impediments juxtaposed against specific existing statutory and regulatory frameworks." (Myrick Decl. ¶ 11(c).) Again, to the extent that the matrix presents factual descriptions of "specific intercept impediments" and their relation to "existing statutory and regulatory frameworks," those

24

Case No. 10-cv-04892-RS        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

portions of the matrix may not be withheld under the deliberative process privilege.[33]

The purposes underlying the deliberative process privilege are not served by permitting agencies to shield factual information from disclosure to the public. *See Quarles*, 893 F.2d at 392; *see also NRDC v. DOD*, 442 F. Supp. 2d 857, 877 (C.D. Cal. 2006) (ordering defendant to disclose factual material withheld under Exemption 5).

### (c)     The Criminal Division Has Improperly Withheld Records Under the Work Product Doctrine

CRIM has withheld information from several emails based on the work product doctrine. The doctrine applies to documents with "two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907 (9th Cir. 2003) (quoting *In re Calif. Pub. Utils. Comm'n*, 892 F.2d 778, 780-81 (9th Cir.1989)); *see also* Fed. R. Civ. P. 26(b)(3).  In the FOIA context, to promote the statute's objective of disclosure over secrecy, the work product doctrine only applies to records that are created "because" of pending or potential litigation. *See Maine v. Dep't of Interior*, 298 F. 3d 60, 68 (1st Cir. 2002). Documents that are "prepared in the agency's ordinary course of business" and "not sufficiently related to litigation may not be accorded protection." *Public Citizen, Inc. v. Dep't.*

---

[33] CRIM and FBI have also withheld records that likely contain factual material. *See, e.g.*, CRM-000003 (concerning government's ability to intercept particular types of electronic communications on a particular carrier's system); CRM-000013-14 (describing problems the government had conducting wiretaps); CRM-000015-19, CRM-000060-61 (compilation of various investigations); CRM-0000050-52 (e-mails exchanged between a CRM-CCIPS attorney, an AUSA, and an ATF employee, discussing techniques and procedures for addressing an encryption issue encountered on a seized portable USB flash drive); FBI EFF/Lynch 292 (draft presentation titled "ECPA Reform" that lists reforms that members of private industry and privacy community are proposing concerning ECPA); EFF/Lynch 302-304 (3-page internal briefing that reviews FCC orders and discusses possible proposals to amend CALEA); EFF/Lynch 994-998, 1010-11, 1028-29, 1030-32, 1033-36 (discussion papers outlining technical issues and impediments investigators were facing during investigations); FBI EFF/Lynch 1203-05 (discussion paper that summarizes results of a survey of surveillance problems other law enforcement agencies were having); EFF/Cardozo 973-979 (presentation outlining "history of CALEA and its limitations, and new legislative proposed to update CALEA"). Records DEA withheld under Exemption 5 in its Category 5C documents, too, likely contain factual material that has been improperly withheld. (*See* Myrick Decl. ¶ 20(a)-(b) (describing records that reflect "challenges to DEA surveillance operations posed by emerging technologies").)

25

Case No. 10-cv-04892-RS     NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

*of State*, 100 F. Supp. 2d 10, 30 (D.D.C. 2000) (citing *Hennessey v. United States Agency for Int'l Dev.*, No. 97-1113, 1997 U.S. App. LEXIS 22975, at *17, No. 97-1113 (4th Cir. Sept. 2, 1997)) *rev'd in part on other grounds*, 276 F.3d 634 (D.C. Cir. 2002). "[A]t a minimum, an agency seeking to withhold a document . . . must identify the litigation for which the document was created (either by name or through factual description) and explain why the work-product privilege applies to all portions of the document." *Church of Scientology Int'l v. DOJ*, 30 F.3d 224, 237 (1st Cir. 1994).

Here, CRIM has failed to meet these requirements; it has failed to specifically identify the litigation for which the documents were prepared and has failed to show they were prepared "because" of pending or potential litigation and not merely in the "agency's ordinary course of business." For example, the email at Bates page CRM-000003 appears to discuss in general terms the government's problems related to surveillance of electronic communications, and the *Vaughn* entry notes only that the email discussion was "related to/part of"—not "because" of—a criminal case. (CRIM *Vaughn* Index at 2.) Similarly, the *Vaughn* entry for emails on pages CRM-000042-43 states that they include an outline of resources that a division of CRIM needs to "continue investigating and prosecuting child exploitation crimes." (*Id.* at 6.) Nothing in this entry indicates a specific litigation for which this outline or the "additional details" discussed were produced. (*Id.*) Instead it merely appears these emails were discussing the general problems the agency was having—across all its child exploitation cases—in conducting surveillance on new technologies. The emails on pages CRM-000050-54 similarly seek general resources related to problems with encryption issues and "inability to intercept certain types of communications" and fail to identify a particular case or litigation for which the records were produced. Because CRIM has failed to show these records are protected by the work product doctrine, they must be released.

**7.     Defendant Has Improperly Withheld Records Under Exemption 7(A)**

Each of the DOJ components has withheld records under 7(A), arguing these records include information that "either summarizes, discusses, or relates to . . . criminal cases which remain in an open or active status[,]" and that the release of this information "could adversely impact on-going and prospective enforcement proceedings." (Def. Mot. at 25.) The government has

26

failed to show that releasing these records with identifying information such as names and dates redacted would still cause harm. As such they must be released.

To claim Exemption 7(A), an agency must show "the material withheld relates to a 'concrete prospective law enforcement proceeding.'" *Bevis v. Dep't of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986) (citing *Carson v. DOJ*, 631 F.2d 1008, 1018 (D.C. Cir. 1980)). "[I]t is not sufficient for an agency merely to state that disclosure would reveal the focus of an investigation; it must rather demonstrate *how* disclosure would reveal that focus." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1114 (D.C. Cir. 2007) (citing *Campbell v. Dep't of Health & Human Servs.*, 682 F.2d 256, 265 (D.C. Cir. 1982) and several other cases where courts required "significant" and "specific information about the impact of the disclosures").

Even if an agency's *Vaughn* Index has established "at least a colorable basis for the assertion of Exemption 7(A)" the agency still must show it has released all reasonably segregable portions of the records. *Stolt-Nielsen Transp. Grp LTD. v. United States*, 534 F.3d 728, 733-34 (D.C. Cir. 2008). Conclusory affidavits attesting that an agency employee has "'reviewed each page line-by-line to assure himself that he was withholding from disclosure only information exempt pursuant to the Act' . . . [are] not sufficient support for a court to conclude that the self-serving conclusion is the correct one." *Id.* at 734 (holding DOJ failed to show that records could not be released with dates and names redacted, if necessary). *Id.*

Similarly here the government has failed to show why it could not simply redact identifying information from these records. None of the components has provided anything more than blanket assertions as to the potential harm that would occur should these records be released, despite the fact that they have relied on 7(A) to withhold over 300 pages. (*See, e.g.,* Ellis Decl. ¶ 65, noting in general terms that "premature release of information . . . *could* adversely impact on-going and prospective enforcement proceedings" (emphasis added); Myrick Decl. ¶ 9(e)). Without more, the government has failed to meet its obligations under the FOIA.

The FBI's *Vaughn* submission is particularly problematic. Where an agency takes a categorical approach to exemption claims, as FBI has done here, it must complete a "three-fold task" to support its Exemption 7(A) claims. *Bevis*, 801 F.2d at 1389. It must "(1) define functional

27

categories of documents; (2) conduct a document-by-document review to assign documents to proper categories; and (3) explain to the court how release of *each category* would interfere with enforcement proceedings." *Lawyers' Comm. for Civ. Rights of S.F. Bay Area v. Dep't of Treasury*, No. 07-2590, 2008 U.S. Dist. LEXIS 87624, *28 (N.D. Cal. Sept. 30, 2008) (citing *Bevis*, 801 F.2d at 1389-90, and denying agency's motion for summary judgment after agency "failed entirely to define functional categories of documents"). The categorization "should be clear enough to permit a court to ascertain 'how each . . . category of documents, if disclosed, would interfere with the investigation.'" *In re DOJ*, 999 F.2d 1302, 1310 (8th Cir. 1993) (citing cases). The categories the Bureau has chosen—divisions within the FBI and generic types of documents such as "internal emails," "discussion papers," and a "summary of a presentation" (*see* FBI *Vaughn* entries for 2A, 2D, 2E, 2H, and 2J) fail to meet this test. In *Bevis*, the court held that similar records withheld by the FBI, such as "'teletypes,' or 'airtels,' or 'letters,'" were "irrelevant classifications" and "provide[d] no basis for a judicial assessment of the FBI's assertions that release of the documents so categorized would interfere with enforcement proceedings." *Bevis*, 801 F.2d at 1390; *see also Curran v. DOJ*, 813 F.2d 473, 475 (1st Cir. 1987). The FBI has failed to show it is entitled to a blanket exemption under 7(A) for the 190 pages of records for which it has claimed the 7(A) exemption. As such, these records, along with CRIM and DEA's, must be released.

### 8.    FBI Improperly Withheld Records Under Exemption 7(D)

FBI has failed to show that information it withheld under Exemption 7(D) was conveyed to it under an implied grant of confidentiality.[34] As such this information must be disclosed.

Exemption 7(D) allows the government to withhold information compiled for law enforcement purposes if (1) it "could reasonably be expected to disclose the identity of a confidential source," or (2) it is information provided by a confidential source and was "compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation." 5 U.S.C. § 552(b)(7)(D). The question under (7)(D) "is not whether the requested *document* is of the type that the agency usually

---

[34] EFF does not challenge the records FBI withheld that were provided to it under an express assurance of confidentiality. (*See* Def. Mot. at 31; Hardy Decl. ¶125.)

treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain confidential." *DOJ v. Landano*, 508 U.S. 165, 172 (1993); *see also Rosenfeld v. DOJ*, 57 F.3d 803, 814 (9th Cir. 1995) (noting *Landano*'s requirement that a court may "infer that the informant received an implied assurance of confidentiality" *only* if certain factors make "it reasonable to infer that the informant expected such an assurance"). Further, an agency cannot show confidentiality merely by claiming "that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011) (citing *Landano*, 508 U.S. at 171, 181).

The Supreme Court in *Landano* set out several factors to determine if a source "spoke with an understanding that the communication would remain confidential." 508 U.S. at 172. These include: (1) "the character of the crime at issue;"  (2) "the source's relation to the crime;" (3) whether the source received payment; and (4) whether the source has an "ongoing relationship" with the law enforcement agency and typically communicates with the agency "only at locations and under conditions which assure the contact will not be noticed." *Id.* at 179; *see also Roth*, 642 F.3d at 1186.

The FBI has invoked Exemption 7(D) to withhold information from and about certain companies that provided information to the Bureau. (*See* Hardy Decl. ¶ 76 (noting 7(D) used to "withhold information provided to the FBI by commercial/private companies").) The Bureau vaguely asserts that disclosing this information "*could* harm the commercial interests of these enterprises by *potentially* deterring the public from employing their services." (Def. Mot. at 31 (citing Hardy Decl. at ¶ 77).) This is insufficient under the factors laid out in *Landano*. 508 U.S. at 179. It is also insufficient, given the context in which the companies' names might arise in the records in this case. In both *Landano* and *Roth*, the court found factual situations involving violent crimes would lead most people to believe the information they provide to the FBI was provided under some form of confidentiality. *See Landano*, 508 U.S. at 179 (finding implied confidentiality where informant was witness to a gang murder); *Roth*, 642 F.3d at 1186 (finding implied confidentiality, given the "brutal nature of the quadruple homicide [discussed in the case] and the source's relationship with at least some of the victims"). The same cannot be said here. FBI has not argued that sources

29

redacted from these records provided information to the FBI related to a violent crime or that they had a relationship to the possible criminal activity that could place them in harm's way. Here, the FBI is merely attempting to withhold names of communications service providers and other companies who, as FBI recognizes (Hardy Decl. ¶ 78), are required by law to disclose information about their subscribers when presented with a lawful request.[35] The FBI has provided insufficient facts to support its claim that communications service providers (or any other similar "sources" in these records) provide information to the FBI under an implied grant of confidentiality. As such, this information must be released.

### 9. Defendant Improperly Withheld Records Under Exemption 7(E)[36]

As Defendant notes, the components have claimed Exemption 7(E) on almost every page of records in this case, whether released in part or withheld in full. (*See* Def. Mot. at 32-33.) Exemption 7(E) allows an agency to withhold documents "compiled for law enforcement purposes" that "would disclose techniques and procedures for law enforcement investigations or prosecutions" only if the agency demonstrates a reasonable risk that criminals will use the information to circumvent detection, apprehension or prosecution. 5 U.S.C. § 552(b)(7)(E); *Gordon v. FBI*, 388 F. Supp. 2d 1028, 1035-36 (N.D. Cal. 2005).[37]

---

[35] Mr. Hardy's assertion that "if the FBI disclosed the identities of confidential sources . . . that revelation would have a chilling effect on the activities and cooperation of other current or potential future FBI confidential sources" (Hardy Decl. ¶ 77) can hold no water in this context where CALEA (47 U.S.C. §§ 1001, *et seq*.) and the various surveillance statutes mandate that communications providers and other companies respond when provided with a lawful request. *See, e.g.,* 18 U.S.C. §§ 2516, 2518, 2703, 2709, 3124, 3511; 50 U.S.C. §§ 1802, 1805.

[36] EFF does not challenge DEA's withholding of G-DEP Code numbers withheld under Exemption 7E (*see* Myrick Decl. ¶9(h).)

[37] Contrary to Defendant's claims, (Def. Mot. at 32), courts in this District have held the government must show a reasonable risk of circumvention for both law enforcement "guidelines" *and* "techniques or procedures." *See, e.g. Feshbach*, 5 F. Supp. 2d at 786 n. 11 (relying on *Davin v. DOJ*, 60 F.3d 1043, 1064 (3rd Cir. 1995) and specifically discrediting the government's argument that it need not show risk of circumvention for techniques and procedures); s*ee also Gordon*, 388 F. Supp. 2d at 1035; *Asian Law Caucus v. DHS*, 2008 U.S. Dist. LEXIS 98344, *8 (N.D. Cal. Nov. 24, 2008) (noting "[t]he Ninth Circuit has not squarely addressed this issue"). Even if this were not the law in the Ninth Circuit, this "does not excuse the agency from providing the Court with information sufficient for it to decide whether the material is properly withheld under Exemption 7(E)." *Smith v. BATF*, 977 F. Supp. 496, 501 (D.D.C. 1997).

30

Case No. 10-cv-04892-RS        NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

Ninth Circuit case law holds that Exemption 7(E) "only exempts investigative techniques not generally known to the public." *Rosenfeld*, 57 F.3d at 815. Defendant has failed to show that disclosing records withheld under Exemption 7(E) would lead to circumvention or that the records describe techniques not generally known to the public. As such, these records must be released.

**(a)    FBI's Boilerplate *Vaughn* Submission Fails to Show That Releasing Records Would Allow Criminals to Circumvent Detection, Apprehension or Prosecution**

For each of the categories of records FBI withheld under Exemption 7(E), the Bureau has asserted only broad, speculative, and unsupported claims that disclosure would risk circumvention of the law or that they should otherwise be withheld. (See Def. Mot. at 33.) Despite the fact that FBI has claimed Exemption 7(E) on 1,650 pages of responsive records, the section of Defendant's brief addressing these claims is only one short paragraph. (*Id.*) The Hardy Declaration fails to provide any additional information, as each of its paragraphs addressing material withheld under Exemption 7(E) is exactly the same as the next. (Compare Hardy Decl. ¶¶ 83-84 with ¶¶ 90, 97, 104, 111, 126, 135, 151, 164, 170, etc.)

Courts have repeatedly rejected similar declarations from the FBI that offer only "boilerplate" explanations "drawn from a 'master' response filed by the FBI for many FOIA requests." *See Wiener*, 943 F.2d at 978-79 (citing similar declaration filed by FBI in *King*, 830 F.2d at 224 and found by that court to be "clearly inadequate"). The paragraphs in the Hardy Declaration offer "little more than a generic assertion that disclosure" could lead to circumvention and are "insufficient to carry the FBI's burden with respect to Exemption 7(E) withholdings." *ACLU v. ODNI*, 2011 U.S. Dist. LEXIS 132503 at *34-35 (rejecting FBI's withholding under 7(E) of "internal emails, training slides, legal opinions and interpretations of techniques, Standard Operating Procedures, electronic communications concerning investigations, case write-ups and miscellaneous reports" because the Hardy Decl. offered "little more than a generic assertion that disclosure could enable targets . . . to avoid detection or develop countermeasures to circumvent law enforcement." (internal quotations and citations omitted)); *see also ACLU of Wash. v. DOJ*, 2011 U.S. Dist. LEXIS 53523 at *5-6, 29 (citing *Wiener*, 943 F.2d at 977). Such records must be released unless the government presents substantial evidence that criminals are actually likely to

31

use the information to thwart law enforcement efforts. *See Gerstein v. DOJ*, No. C-03-04893, 2005

U.S. Dist. LEXIS 41276, *41 (N.D. Cal. Sept. 30, 2005) (rejecting agency's claim that providing

information on where and with what frequency a technique is used would "allow criminals to direct

[their] efforts to a disclosed weakness and avoid a disclosed strength in the national law

enforcement system" *id*. at *39, 43 (internal quotations omitted)).

Because the FBI's claims that disclosure would risk circumvention of the law are vague,

speculative and unsupported by specific facts tied directly to the material in the records themselves,

the Bureau has failed to meet its burden to support its Exemption 7(E) claims.

### (b)   Defendant Has Improperly Withheld Law Enforcement Techniques That Are Generally Known or Routine

Defendant has failed to show that the numerous records it withheld under Exemption 7(E)

do not describe law enforcement techniques or procedures that are routine or well-known to the

public. *See Rosenfeld*, 57 F.3d at 815. As such these records must be released.

Defendant cannot withhold information about techniques or procedures that "would leap to

the mind of the most simpleminded investigator." *Id.* (citing *Nat'l Sec. Archive v. FBI,* 759 F.

Supp. 872, 885 (D.D.C. 1991)); *Albuquerque Publ'g Co. v. DOJ*, 726 F. Supp. 851, 857 (D.D.C.

1989). In *Albuquerque Publishing*, the court directed agencies to release records "pertaining to

techniques that are commonly described or depicted in movies, popular novels, stories or

magazines, or on television," including "eavesdropping, wiretapping, and surreptitious tape

recording and photographing." 726 F. Supp. at 858; *see also Hamilton v. Weise*, No. 95-1161, 1997

U.S. Dist. LEXIS 18900, at *30-32 (M.D. Fla. Oct. 1, 1997) (generally known techniques include

those discussed in judicial opinions); *Rosenfeld*, 57 F.3d at 815 (details about a pretextual phone

call were not protected because the technique would "leap to the mind of the most simpleminded

investigator"). *See also Warshak v. U.S.*, 532 F.3d 521, 524-25 (6th Cir. 2008) (describing law

enforcement technique for gaining access to suspects' email); *Dunaway*, 519 F. Supp. at 1082-83

(describing law enforcement technique for gaining access to suspects' physical mail as "commonly

known").

FBI and DEA have failed to even argue that the law enforcement techniques they have

withheld are not routine and the surveillance problems they are having are not well-known to the public.[38] And while CRIM has made this argument, (Ellis Decl. ¶ 38) it has provided no support for this claim.

It is not an unknown fact that the government has had trouble conducting surveillance on certain technologies, or that certain technologies allow people to encrypt their communications or speak anonymously. This has been a very important and well-known benefit of certain technologies such as Tor and Off-the-Record (OTR) chat during various recent foreign conflicts and domestic protests and has provided much needed protection for human rights advocates, activists, and journalists around the world. *See*, e.g., Austin Considine "For Activists, Tips on Safe Use of Social Media," *N.Y. Times* (April 1, 2011) https://www.nytimes.com/2011/04/03/fashion/03noticed.html.[39] In fact, many civil liberties and other organizations, including EFF, have produced guides and tools to help people avoid surveillance of their communications. *See*, *e.g.*, EFF, Surveillance Self-Defense Project, https://ssd.eff.org/ (detailing specific technical ways to avoid government spying).[40]

It is also well-known that the government has had problems conducting surveillance on specific communications technologies and in getting records from specific providers. *See*, *e.g.*,

---

[38] *See, e.g.*, Def. Mot. at 31-33; Hardy Decl. ¶ 83; Myrick Decl. ¶ 9(g).

[39] *See also IT News Africa*, "5 Tools to Fight Internet Censorship," (March 21, 2012) http://www.itnewsafrica.com/2012/03/5-tools-to-fight-internet-censorship/ (describing anonymization tools such as Tor and "OTR" chat and noting their importance "in helping journalists get the message out"); Virginia Heffernan, "Granting Anonymity," *N.Y. Times*, (Dec. 17, 2010) https://www.nytimes.com/2010/12/19/magazine/19FOB-Medium-t.html (noting "Peaceniks and human rights groups use Tor, as do journalists, private citizens and the military"); *Wikipedia*, "Tor (anonymity network)" http://en.wikipedia.org/wiki/Tor_(anonymity_network) (describing how Tor works and noting its anonymity function has been endorsed by civil liberties groups as a way for whistleblowers and human rights workers to communicate with journalists).

[40] *See also* The Guardian Project, https://guardianproject.info/ (an organization that partners with human rights groups and has developed technology to protect various forms of "communications and personal data from unjust intrusion and monitoring"); Martus, https://www.martus.org/ (a secure information management tool used by human rights organizations around the world to encrypt information and shield the identity of victims or witnesses who provide testimony on human rights abuses); http://www.whispersys.com/ (various tools to protect data on Android phones); EFF, "HTTPS Everywhere," https://www.eff.org/https-everywhere (describing a tool EFF developed that "encrypts your communications with many major websites, making your browsing more secure").

---

33

Declan McCullagh, "Skype: We Can't Comply with Police Wiretap Requests," *CNET* (June 9, 2008) http://news.cnet.com/8301-13578_3-9963028-38.html.[41] In fact, Immigrations and Customs Enforcement released 12 pages of records on referral from the FBI in this case that detail specific problems it had with several specific providers (whose names were not redacted). (*See* Second Lynch Decl. ¶ 8, Ex. 4.) And many sources offer specific and detailed information on how to either avoid or conduct surveillance on various technologies such as gaming devices, websites and instant messaging. *See, e.g.*, Nate Anderson*, "*CSI: Xbox—How Cops Perform Xbox Live Stakeouts and Console Searches," *ArsTechnica* (Jan. 2012), *http://arstechnica.com/tech-policy/news/2012/01/searches-and-xbox-live-stakeouts-how-cops-investigate-consoles.ars*.[42]

By reviewing the unredacted text within the documents Defendant released and the *Vaughn* submissions, it is clear that at least some, if not all of the techniques and technologies withheld are widely known. For example, several agency records refer to email, VoIP (Voice over IP), Peer-to-Peer networks, Skype and Blackberry services, and HTTPS. (*See, e.g.*, Second Lynch Decl. ¶ 5, Ex. 1 (DEA 5C-1-12, 5C-225-227, 229, 235-240, 9-4); *Vaughn* entry for CRM-000001-02; FBI EFF/Lynch 69, 94, 100, 223-224, 228, 276, 1040; EFF/Cardozo 403, 426, 463, 1080.) Because the public—including criminals—already knows about the techniques discussed in these records, disclosing this information will not create a circumvention risk. As such it, it must be released.

### 10.    Defendant Has Failed to Segregate and Release All Non-Exempt Information

The FOIA explicitly requires that "[a]ny reasonably segregable potion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b); *see also Church of Scientology*, 611 F.2d at 744 ("[I]t is error for a district court to simply approve the withholding of an entire document without entering a finding on

---

[41] *See also* Savage, *U.S. Tries to Make it Easier to Wiretap the Internet*, N.Y. Times (discussing problems intercepting encrypted communications and communications on peer-to-peer networks); Charlie Savage, *Officials Push to Bolster Law on Wiretapping*, N.Y. Times.

[42] *See also* http://consoleforensics.com/ (discussing forensics for several gaming technologies); Declan McCullagh, "How safe is instant messaging? A security and privacy survey," *CNET* (June 9, 2008) http://news.cnet.com/8301-13578_3-9962106-38.html (discussing encryption and ease of surveillance of instant messages on various companies' systems). *Wikipedia*, "Anonymous P2P" https://en.wikipedia.org/wiki/Anonymous_P2P.

34

Case No. 10-cv-04892-RS    NOT. OF CROSS MOT. SUMM. J.; MEM. IN SUPP. OF CROSS MOT. SUMM. J.;
OPP. TO DEF'S MOT. SUMM. J.

1  segregability, or the lack thereof."). The duty to segregate extends to material withheld under all of

2  the FOIA's nine exemptions. *Id.*

3        "In the Ninth Circuit, the district court must review the agency's 'segregability' decisions

4  on a document-by-document basis." *NRDC v. DOD*, 388 F. Supp. 2d at 1096 (citing *Wiener*, 943

5  F.2d at 988).  To satisfy its burden, the agency must "describe what proportion of the information

6  in a document is non-exempt and how that material is dispersed throughout the document." *Mead*

7  *Data Cent.*, 566 F.2d at 261; *see also NRDC v. DOD*, 388 F. Supp. 2d at 1105 (finding an agency

8  declaration inadequate on segregability grounds when it stated merely that "none of the withheld

9  documents contain reasonably segregable information that is not exempt").

10        Defendant states that it has "provided all 'reasonably segregable' responsive information

11  that is not protected by an exemption." (Def. Mot. at 34.) Despite this assurance, over 3,000 pages

12  of records at issue in this case have either been withheld in their entirety or have large blocks of

13  redacted text, thus concealing entire sentences, paragraphs, and pages, from public disclosure.

14  Given the broad brush with which Defendant has painted exempt material, as discussed within the

15  sections addressing each exemption claim above, it is a near certainty that Defendant has withheld

16  more information than is otherwise justifiable. The examples discussed above only underscore the

17  need for this Court's searching review of the Defendant's compliance with FOIA's obligation to

18  provide "[a]ny reasonably segregable potion" of the records at issue in this case. *See* 5 U.S.C.

19  § 552(b). Thus, despite Defendant's assertions that it has complied with FOIA's segregability

20  requirement, Defendant has not satisfied its burden and is not entitled to summary judgment.

21  **IV.**    **CONCLUSION**

22        For the foregoing reasons, the government's motion for summary judgment should be

23  denied, and EFF's Cross Motion for summary judgment should be granted.

24  DATED:  March 29, 2012            Respectfully submitted,

25

26                                        */s/ Jennifer Lynch*
                                      Jennifer Lynch

27                                          Mark Rumold
                                        ELECTRONIC FRONTIER FOUNDATION

28                                          454 Shotwell Street
                                        San Francisco, CA  94110

Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

David L. Sobel *(pro hac vice)*
ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W., Suite 410
Washington, DC  20036
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2011, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on December 20, 2011, in San Francisco, California.

*/s/ Jennifer Lynch*
Jennifer Lynch

37

Case No. 10-cv-04892-RS          Nᴏᴛ. ᴏғ Cʀᴏss Mᴏᴛ. Sᴜᴍᴍ. J.; Mᴇᴍ. ɪɴ Sᴜᴘᴘ. ᴏғ Cʀᴏss Mᴏᴛ. Sᴜᴍᴍ. J.;
Oᴘᴘ. ᴛᴏ Dᴇғ's Mᴏᴛ. Sᴜᴍᴍ. J.