# Exhibit 4

# Exhibit 4



U.S. Department of Homeland Security
500 12th Street, SW, Stop 5009
Washington, DC 20536-5009

U.S. Immigration
and Customs
Enforcement

September 29, 2011

MS. JENNIFER LYNCH
ELECTRONIC FRONTIER FOUNDATION
454 SHOTWELL STREET
SAN FRANCISCO, CA 94110

RE: ICE FOIA Case Number 2011FOIA13220

Dear Ms. Lynch:

This is the final response to your Freedom of Information Act (FOIA) request to Federal Bureau of Investigations (FBI), dated September 28, 2010. You are seeking all agency records created on or after January 1, 2001 (including, but not limited to, electronic records) discussing, concerning, or reflecting the following:

1. any problems, obstacles or limitations that hamper the FBI's current ability to conduct surveillance on communications systems or networks including, but not limited to, encrypted services like Blackberry (RIM), social networking sites like Facebook, peer-to-peer messaging services or Voice over Internet Protocol (VoIP) services like Skype, etc.;

2. any communications or discussions with the operators of communications systems or networks (including, but not limited to, those providing encrypted communications, social networking, and peer-to-peer messaging services), or with equipment manufacturers and vendors, concerning technical difficulties the FBI has encountered in conducting authorized electronic surveillance;

3. any communications or discussions concerning technical difficulties the FBI has encountered to obtaining assistance from non-US-based operators of communications systems or network, or with equipment manufacturers and vendors in the conduct of authorized electronic surveillance;

4. any communications or discussions with the operators of communications systems or networks, or with equipment manufacturers and vendors, concerning development and needs related to electronic communications surveillance enabling technology;

5. any communications or discussions with foreign government representatives or trade groups about trade restrictions or import or export controls related to electronic communications surveillance-enabling technology;

6. any briefings, discussions, or exchanges between FBI officials and member of the Senate or house Representative concerning implementing a requirement for electronic communications surveillance-enabling technology, including, but not limited to, proposed amendments to the Communications Assistance to law Enforcement Act (CALEA).

A search of the FBI for records responsive to your request produced twelve (12) pages of documents that originated from U.S. Immigration and Customs Enforcement (ICE). The FBI referred these documents to ICE for review and processing under the FOIA.

www.ice.gov

Your request was processed under the FOIA 5 U.S.C. § 552. After a review of the records referred by the FBI, I have determined that portions of the documents will be withheld pursuant to Title 5 U.S.C. § 552Title (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA as described below.

**ICE has applied Exemptions 6 and 7(C) to protect from disclosure e-mail addresses as well as the last four digits of the direct phone numbers of DHS employees and third parties contained within the documents.**

**FOIA Exemption 6** exempts from disclosure personnel or medical files and similar files the release of which would cause a clearly unwarranted invasion of personal privacy. This requires a balancing of the public's right to disclosure against the individual's right privacy. The types of documents and/or information that we have withheld may consist of birth certificates, naturalization certificates, driver license, social security numbers, home addresses, dates of birth, or various other documents and/or information belonging to a third party that are considered personal. The privacy interests of the individuals in the records you have requested outweigh any minimal public interest in disclosure of the information. Any private interest you may have in that information does not factor into the aforementioned balancing test.

**Exemption 7(C)** protects records or information compiled for law enforcement purposes that could reasonably be expected to constitute an unwarranted invasion of personal privacy. This exemption takes particular note of the strong interests of individuals, whether they are suspects, witnesses, or investigators, in not being unwarrantably associated with alleged criminal activity. That interest extends to persons who are not only the subjects of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based upon the traditional recognition of strong privacy interest in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. As such, I have determined that the privacy interest in the identities of individuals in the records you have requested clearly outweigh any minimal public interest in disclosure of the information. Please note that any private interest you may have in that information does not factor into this determination. The types of documents and/or information that we have withheld could consist of names, addresses, identification numbers, telephone numbers, fax numbers, or various other documents that are considered personal.

**ICE has applied Exemption 7(E) to protect from disclosure law enforcement systems checks, techniques and/or procedures used during an investigation.**

**Exemption 7(E)** protects records compiled for law enforcement purposes, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law. I determined that disclosure of law enforcement systems checks, manuals, checkpoint locations, surveillance techniques could reasonably be expected to risk circumvention of the law. Additionally, the techniques and procedures at issue are not well known to the public.

You have the right to appeal our withholding determination. Should you wish to do so, you must send your appeal and a copy of this letter, within 60 days of the date of this letter to: U.S. Immigration Customs Enforcement, Office of Principal Legal Advisor, U.S. Department of Homeland Security, Freedom of Information Office, 500 12th Street, SW, Stop 5009, Washington, D.C. 20536-5009, following the procedures outlined in the DHS regulations at 6 C.F.R. § 5.9. Your

envelope and letter should be marked "FOIA Appeal." Copies of the FOIA and DHS regulations are available at www.dhs.gov/foia.

Provisions of the FOIA and Privacy Act allow us to recover part of the cost of complying with your request. In this instance, because the cost is below the $14 minimum, there is no charge.[1]

If you need to contact our office about this matter, please refer to FOIA case number 2011FOIA13220. This office can be reached at (202) 732-0600 or (866) 633-1182.

Sincerely,

Catrina M. Pavlik-Keenan
FOIA Officer

Enclosure(s):  12 pages

---

[1] 6 CFR § 5.11(d)(4).

www.ice.gov

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 05-13-2011 BY         (b)(6), (b)(7)c

# Electronic Surveillance Capability Assessment Results

# 1.0 Overview

In support of the Federal Bureau of Investigation's (FBI) "Going Dark" initiative, the Law Enforcement Executive Forum requested the Law Enforcement Support and Information Management (LESIM) Technical Operations Unit (TechOps) collect information about cases where investigations have been negatively impacted by communications carriers' delay in implementation, interruption, partial compliance, or non compliance with a lawful electronic surveillance order. Also, information was collected about cases where electronic surveillance was not considered due to lack of technical capability. This was accomplished by sending an Electronic Surveillance Survey and a Records Request Survey to all Special Agent in Charge (SAC) offices.

# 2.0 Report from SAC Offices

The following offices have reported that investigations have been negatively impacted by one or more of the above criteria or those listed in the surveys. Where applicable, the redacted surveys are attached. Other results are listed below.

### 2.1 SAC Atlanta

See attached survey.

### 2.2 SAC Buffalo

See attached survey.

### 2.3 SAC Honolulu

The Airport Office reported delays as long as three to four months in receiving results for all subpoena requests served on T-Mobile and Cricket Communications.

Resident Agent in Charge (RAC) Guam reported that wired/wireless communication companies on Guam are not Communications Assistance for Law Enforcement Act of 1994 (CALEA) compliant. Agents have heard that there has been a cooperative effort by the Federal Bureau if Investigation (FBI), Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Drug Enforcement Agency (DEA), U.S. Marshals and the U.S. Attorneys Office to force a dialogue with the companies on Guam (GTA, IT&E, Docomo & iConnect) to address this issue. Agents believe that ICE needs to engage this group and recommend that Marianas Cable Vision (MCV) be added to the list of companies that needs to be CALEA compliant. MCV now offers Voice over IP phone service.

### 2.4 SAC Miami

See attached survey.

### 2.5 SAC New York

See attached survey.

ICE 2011FOIA13220000002
(b)(6), (b)(7)e

### 2.6 SAC Phoenix

Assistant Special Agent in Charge (ASAC) Yuma reported that a significant number of their targets use Mexican Nextel phones. (b)(7)e

(b)(7)e

### 2.7 SAC San Antonio

ASAC McAllen reported that they were only able to receive call data and content from one of two targets on a Title III intercept. The target phones were both Sprint-Nextel iDEN handsets and the problem was experienced with the Push-to Talk (PTT) delivery. Both targets were being served by the same Motorola Dispatch Audio Processor (DAP) and the call data and content was being delivered by the same iDEN Surveillance Gateway (ISG). (b)(7)e

(b)(7)e

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 05-13-2011 BY    (b)(6), (b)(7)e

SAC Atlanta

# CALEA
## ELSUR Noncompliance Incident Report
Return via FAX: (703) 495 (b)(6), (b)(7)c

54  (b)(6), (b)(7)c     Agency: DHS ICE     Phone: 912-652- (b)(6), (b)(7)c
Contact Name

1. Did you use ELSUR in your investigation?   ☒ YES (go to question #3)   ☐ NO (go to question #2)
2. What was the reason for not using ELSUR? (after completing question 2, go to question #12)
   ☐ Cost $_____
   ☐ No Assistance Capability
   ☐ Unable to identify target
   ☐ Unable to provide access to LE
   ☐ Provider not required to provide access to LE
   ☐ Carrier does not serve target (e.g. reseller)
   ☐ Other _____
3. Date of Order: ___/___/___ (mm/dd/yyyy)    Case ID: _____ (optional)
4. Type of Electronic Surveillance (ELSUR) Order: ☒ Pen Registry / Trap & Trace   ☐ Title III
   ☐ 2703(d) Order   ☐ Other _____
5. Telephone/Communication Company Name: Southern Linc
6. Service Type:
   ☒ Wireline/Wireless
   ☐ VoIP
   ☐ SMS/MMS Service
   ☐ Other: _____
   ☐ Air-to-Ground
   ☐ Instant Messaging Provider
   ☐ Cellular Broadband
   ☐ Satellite
   ☐ Fiber To The Home (FTTH)
   ☐ Internet Service/Portal Provider
   ☐ Cable - DSL - ISP
   ☐ WiMAX
   ☐ eMail - Social Networking
7. Type of Investigation:
   ☐ Drug
   ☐ Organized Crime
   ☐ Violent Crime
   ☐ Computer Crime
   ☐ Fugitive
   ☐ White-collar
   ☐ Homicide
   ☐ Public Corruption
   ☒ Other: Immigration
   ☐ Kidnapping
   ☐ Terrorism
8. If the telephone/communication service provider was only able to provide partial compliance with the ELSUR order, what ELSUR evidence was missing?
   ☐ Content   ☐ Identifying Information   ☒ Location Information
9. If the telephone/communication service provider caused a delay in the implementation of ELSUR, how long was the delay?
   ☒ No delay   ☐ 1 to 3 days   ☐ 4 to 6 days   ☐ More than a week   ☐ More than 2 weeks
   ☐ More than 3 weeks   ☐ More than a month   ☐ More than 2 months   ☐ Other _____
10. If the telephone/communication service provider caused an interruption during the use of ELSUR, how long was the interruption?
    ☐ No interruptions   ☒ Less than 3 hours   ☐ More than 3 hours   ☐ 1 day   ☐ 2 to 3 days
    ☐ 4 to 6 days   ☐ More than a week   ☐ More than 2 weeks   ☐ More than 3 weeks   ☐ More than a month
    ☐ Other _____
11. What reason(s) did the telephone/communication service provider give for (select all that apply): ☒ partial compliance, ☐ delay in implementation, ☐ interruption in obtaining ELSUR evidence?
    ☐ Cost $_____
    ☐ Ineffective assistance capability
    ☐ Unable to identify target
    ☐ Provisioning
    ☐ Capability request unreasonable for provider
    ☒ Other: did not like wording of order
12. What was the impact on the investigation?
    ☐ No impact
    ☐ Case hindered
    ☐ Case inactive
    ☒ Other: target not located
    ☐ Case closed

ACADA\ELSUR_a.s.042909

→ would not give "real time" ping location of phone, would only give 1 hour old history

ICE 2011FOIA13220000004

(b)(6), (b)(7)c

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 05-13-2011 BY (b)(6), (b)(7)c

Return via FAX: (703) 495 - 6079

## Provider Noncompliance With Retrieval of Communication Records

(b)(6), (b)(7)c **S/A**     404-425 (b)(6), (b)(7)c
Contact Name            Contact Number

DHS ICE OT      (b)(6), (b)(7)c @dhs.gov
Contact Agency            Contact's Email

Case ID: (b)(7)e     Information Provided in a Timely Manner? ○ Yes ⊗ No

Provider Name: Metro PCS

Provider Type:
○ DSL - Internet Access Provider    ○ Satellite - Internet Access Provider
○ Dial-Up - Internet Access Provider    ○ Satellite - Telephony
○ E-Mail - Internet Provider    ○ VoIP - Internet Telephony Service
○ FiOS - Internet Access Provider    ○ WiMAX
○ Internet Service/Portal Provider    ⊗ Other _Cellular_

Type of Information Requested:
○ IP Assignment Log    ⊗ Subscriber Record    ○ IP Connection Log
⊗ Telephone Call Record    ○ Stored Text Message    ○ Other _____

Earliest Date Investigated: 04 / 01 / 2009    Record Could Have Been Requested: __ / __ / __

Actual Date of Investigation: __ / __ / __    Record Was Requested: Several dates

Compulsory Process Used for Request:
○ 18 USC 2703 180+ day old communications
○ 18 USC 2702 Immediate Danger of Death or Serious Physical Injury Disclosure Court Order
⊗ 18 USC 2703(d) Court Order    ○ Federal All Writs Order    ○ Federal Grand Jury Subpoena
○ 18 USC 2079 National Security Letters    ○ Federal Executive Order    ○ Federal Search Warrants
○ Administrative Records Subpoena    ○ Federal Grand Jury Subpoena    ○ N/A
○ Other _____

Provider Explanation For Information Unavailability:
○ Data returned less than one month    ⊗ Provider Fee Requested to Process Raw Data
⊗ Data returned one to three months    ○ Other _____
○ Data returned three to six months

Was there Partial Compliance with the Order?    Impact of Unavailable Information on Investigation:
○ Yes    ⊗ No      ○ Case Close    ⊗ Case Hindered    ○ Case Inactive
           ○ Other _____

Providers Response Date: Several dates    Format of Records Provided: ⊗ Electronic ○ Paper ○ Other

Description of Impact of Noncompliance on Investigation (enclosed separate sheet if necessary):
Delay of case & case direction.

ICE 2011FOIA13220000005
(b)(6), (b)(7)c

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 05-13-2011 BY (b)(6), (b)(7)c

**CALEA**
Return via FAX: (703) 486 - 6079
ELSUR Noncompliance Incident Report

(b)(6), (b)(7)c
Contact Name

Agency: ICE

Phone: 716-818-(b)(6), (b)(7)c

1. Did you use ELSUR in your investigation? ☑ YES (go to question #3)  ☐ NO (go to question #2)
2. What was the reason for not using ELSUR? (after completing question 2, go to question #12)
   - ☐ Cost $____
   - ☐ No Assistance Capability
   - ☐ Unable to identify target
   - ☐ Unable to provide access to LE
   - ☐ Provider not required to provide access to LE
   - ☐ Carrier does not serve target (e.g. reseller)
   - ☐ Other ____
3. Date of Order: 01 / 29 / 2009   Case ID: (b)(7)e (optional)
4. Type of Electronic Surveillance (ELSUR) Order: ☑ Pen Registry / Trap & Trace   ☑ Title III
   ☐ 2703(d) Order   ☐ Other ____
5. Telephone/Communication Company Name: Cricket Communications
6. Service Type:
   - ☑ Wireline/Wireless
   - ☐ VoIP
   - ☐ SMS/MMS Service
   - ☐ Other ____
   - ☐ Air-to-Ground
   - ☐ Instant Messaging Provider
   - ☐ Cellular Broadband
   - ☐ Satellite
   - ☐ Fiber To The Home (FTTH)
   - ☐ Internet Service/Portal Provider
   - ☐ Cable - DSL - ISP
   - ☐ WiMAX
   - ☐ eMail - Social Networking
7. Type of Investigation:
   - ☑ Drug
   - ☐ Organized Crime
   - ☐ Violent Crime
   - ☐ Computer Crime
   - ☐ Fugitive
   - ☐ White-collar
   - ☐ Homicide
   - ☐ Public Corruption
   - ☐ Other ____
   - ☐ Kidnapping
   - ☐ Terrorism
8. If the telephone/communication service provider was only able to provide partial compliance with the ELSUR order, what ELSUR evidence was missing?
   - ☑ Content   ☑ Identifying Information   ☑ Location Information
9. If the telephone/communication service provider caused a delay in the implementation of ELSUR, how long was the delay?
   - ☐ No delay   ☑ 1 to 3 days   ☐ 4 to 6 days   ☐ More than a week   ☐ More than 2 weeks
   - ☐ More than 3 weeks   ☐ More than a month   ☐ More than 2 months   ☐ Other ____
10. If the telephone/communication service provider caused an interruption during the use of ELSUR, how long was the interruption?
    - ☐ No interruption   ☐ Less than 8 hours   ☐ More than 8 hours   ☐ 1 day   ☐ 2 to 3 days
    - ☐ 4 to 6 days   ☐ More than a week   ☐ More than 2 weeks   ☐ More than 3 weeks   ☑ More than a month
    - ☐ Other ____
11. What reason(s) did the telephone/communication service provider give for (select all that apply): ☑ partial compliance, ☑ delay in implementation, ☑ interruption in obtaining ELSUR evidence?
    - ☐ Cost $____
    - ☐ Ineffective assistance capability
    - ☐ Unable to identify target
    - ☑ Provisioning
    - ☐ Capability request unreasonable for provider
    - ☑ Other: System technical issues
12. What was the impact on the investigation?
    - ☐ No impact   ☐ Case inactive   ☐ Case closed
    - ☑ Case hindered   ☐ Other ____

ACADIA/ELSUR_9.5.042009        1

ICE 2011FOIA13220000006
(b)(6), (b)(7)c



## ELSUR Noncompliance Incident Report Comments Page

On almost a daily basis, we experienced technical issues with our target line serviced by Cricket Communications. These problems included daily occurrences of intercepted communications that were missing either data or content. We had numerous instances of calls received where direction and/or digits were not provided by the service provider. Also, for approximately four months the office attempted to obtain a useable cellsite mapping template for target location data. Several Cricket employees were notified of the problem multiple times over a four month time period. No satisfactory resolution was ever provided by Cricket. In fact, most emails and phone calls regarding this issue were not returned.

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 05-13-2011 BY (b)(6), (b)(7)c

**Return via FAX: (703) 495-8079**

## Provider Noncompliance With Retrieval of Communication Records

**Case ID:** ICE70L (b)(7)e

**Provider Name:** Comcast

**Contact Name:** (b)(6), (b)(7)c  772.441.____

**Contact's Email:** dhs.gov

**Information Provided in a Timely Manner?** ○ Yes  ● No

**Provider Types:**
- ○ DSL - Internet Access Provider
- ○ Dial-Up - Internet Access Provider
- ○ E-Mail - Internet Provider
- ○ FIOS - Internet Access Provider
- ○ Internet Service/Portal Provider
- ○ Satellite - Internet Access Provider
- ○ Satellite - Telephony
- ○ VoIP - Internet Telephony Service
- ○ WI-MAX
- ● Other: Cable ISP

**Type of Information Requested:**
- ○ Telephone Call Record
- ○ IP Assignment Log
- ○ Stored Text Message
- ● Subscriber Record
- ● IP Connection Log

**Earliest Date Investigation:** 01/22/2009 (mm/dd/yyyy)
**Record Could Have Been Requested:** 01/23/2009 (mm/dd/yyyy)

**Actual Date of Investigation:** 01/22/2009 (mm/dd/yyyy)
**Record Was Requested:** 01/26/2009 (mm/dd/yyyy)

**Compulsory Process Used for Request:**
- ○ 18 USC 2072 Immediate Danger of Death or Serious Physical Injury Disclosure Court Order
- ○ 18 USC 2073(d) Court Order
- ○ 18 USC 2079 National Security Letters
- ○ Administrative Records Subpoena
- ● Other: Customs Summons
- ○ 18 USC 2073 180+ day old communication
- ○ Federal All Writs Order
- ○ Federal Executive Order
- ○ Federal Grand Jury Subpoena
- ○ Federal Grand Jury Subpoena
- ○ Federal Search Warrant
- ○ N/A

**Provider Explanation For Information Unavailability:**
- ○ Data returned less than one month
- ○ Data returned one to three months
- ○ Data returned three to six months
- ○ Provider Fee Requested to Bypass Ret Date
- ● Other: No Data Available

**Was there Partial Compliance with the Order?** ○ Yes  ● No  See Attached

**Impact of Unavailable Information on Investigation:**
- ○ Case Closed
- ● Case Hindered
- ○ Case Inactive
- ○ Other

**Provider's Response Date:** 02/06/2009 (mm/dd/yyyy)

**Forms of Records Provided:**
- ○ Electronic
- ● Paper
- ○ Other

**Description of Impact of Noncompliance on Investigation (enclosed separate sheet if necessary):** See Attached

ICE 2011FOIA13220000008

(b)(6), (b)(7)c

ALL FBI INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 05-13-2011 BY         (b)(6), (b)(7)c

Electronic Surveillance Capability Assessment Response
SSA (b)(6), (b)(7)c RAC/Ft. Pierce
18 August 2009

On 26 January 2009, I faxed a Customs Summons to Comcast requesting: "Any and all records regarding the name, service and/or billing address; connection records or records of session times and durations; length of service (including start date) and types of service utilized; telephone or instrument number (including MAC Address) or other subscriber number or identity including any temporarily assigned network address; means and source of payment for such service (including any credit card or bank account information) for the account utilizing IP address (b)(7)e on 22 January 2009 at 3:18 pm Eastern Standard Time."

On 6 February 2009, Comcast faxed back a response (an apparent form letter, dated 28 January 2009) advising their log files were, "either incomplete or contained an error" resulting in Comcast's inability to identify the subscriber. On 6 February at 3:16 PM, I left a message requesting a call back using the number provided on the response letter. I did not receive a call back.

On 10 February 2009, I contacted (b)(6), (b)(7)c, Legal Coordinator, Comcast Legal Response Center, 856-324-(b)(6), (b)(7)c. I asked if the data was incomplete or if there was an error. (b)(6), (b)(7)c reviewed the response and advised she could not tell. She stated that in order to determine if there was incomplete data or an error, I would need to speak with the technician who performed the lookup. I request contact with the unidentified technician who never called me. (b)(6), (b)(7)c stated that there was likely a problem linking the IP address to the modem's MAC address. She further stated that when this occurs, the IP address and associated modem is disabled, causing the subscriber to contact Comcast to resume service with a new IP adress, meaning that the same problem should not occur in the future. She suggested sending another summons with different dates.

On 11 February 2009, I faxed a Customs Summons to Comcast requesting: "Any and all records regarding the name, service and/or billing address; connection records or records of session times and durations; length of service (including start date) and types of service utilized; telephone or instrument number (including MAC Address) or other subscriber number or identity including any temporarily assigned network address; means and source of payment for such service (including any credit card or bank account information) for the account(s) utilizing IP address (b)(7)e on the following dates and times: 26 November 2008 at 7:24 am MST, 2 December 2008 at 6:40 am MST, 3 December 2008 at 6:53 MST, 22 December 2008 at 12:48 pm MST, 30 December 2008 at 6:11 am MST, 3 January 2009 at 12:06 pm MST, 6 January 2009 at 5:42 am MST, 13 January 2009 from 10:24 am MST to 2:40 pm MST, 20 January 2009 at 5:49 am MST, 22 January 2009 from 3:00 pm EST to 5:30 pm EST."

On 17 February 2009, Comcast faxed back a response (dated 13 February 2009) advising their log files were, "either incomplete or contained an error" resulting in Comcast's inability to identify the subscriber. I again contacted (b)(6), (b)(7)c who advised that I would need a date after the original summons issued to Comcast as the subscriber would have been required to call in to register the modem.

ICE 2011FOIA13220000009

(b)(6), (b)(7)c

Electronic Surveillance Capability Assessment Response
SSA (b)(6), (b)(7) RAC/Ft. Pierce
18 August 2009

I advised (b)(6), (b)(7) that the subject was online at that moment from the same IP address and that I would send an updated summons.

On 19 February 2009, a Customs Summons was faxed to Comcast requesting: "Any and all records regarding the name, service and/or billing address; connection records or records of session times and durations; length of service (including start date) and types of service utilized; telephone or instrument number (including MAC address) or other subscriber number or identity including any temporarily assigned network address (including current IP address); means and source of payment for such service (including any credit card or bank account information) for the account(s) utilizing IP address (b)(7)e from 10 February 2009 at 3:51 pm EST to present."

On 25 February 2009, Comcast faxed back a response (dated 20 February 2009) including the subject's subscriber information, but no IP history or logs. I contacted (b)(6), (b)(7) requesting the IP logs (b)(6), (b)(7) referred the matter to her supervisor who advised that the language in the summons did not include the term "IP history". I directed her attention to the language, "connection records or records of session times and durations" The supervisor (name unknown) advised that in Comcast's opinion, "connection records or records of session times and durations" did not include IP history. I asked if I needed to send them yet another summons for the IP history. The supervisor advised that in this single instance, she would comply with the summons in hand.

On 27 February 2009, I received the IP history log from Comcast. The log indicated that the subject was issued the same IP address, (b)(7)e from 28 August 2008 to 26 February 2009. The IP log contradicted information provided by the Comcast Legal Response Center regarding Comcast's ability to identify the subscriber. It does not appear that the subscriber was ever disconnected and forced to contact Comcast. On its face, there does not seem to be a reason for Comcast's failure to return the information requested in the original summons.

ICE 2011FOIA13220000010

(b)(6), (b)(7)c

ALL INFORMATION CONTAINED
HEREIN IS UNCLASSIFIED
DATE 05-13-2011 BY               (b)(6), (b)(7)c



**Return via FAX: (703) - 852 - 2559**
**ELSUR Noncompliance Incident Report**

| (b)(6), (b)(7)c | ICE SAC/NEW YORK | 646-230 (b)(6), (b)(7)c |
|---|---|---|
| Contact Name | Agency | Phone (123-456-7890) |

1. Did you use ELSUR in your investigation?  ☒ YES (go to question #3)   ☐ NO (go to question #2)

2. What was the reason for not using ELSUR? (after completing question 2, go to question #12)
   - ☐ Cost $_____
   - ☐ No Assistance Capability
   - ☐ Unable to identify target
   - ☐ Unable to provide access to LE
   - ☐ Provider not required to provide access to LE
   - ☐ Carrier does not serve target (e.g. reseller)
   - ☐ Other_____

3. Date of Order: 05/20/2009 (mm/dd/yyyy)   Case #: (b)(7)e   _____ (optional)

4. Type of Electronic Surveillance (ELSUR) Order:  ☒ Pen Registry/Trap & Trace   ☒ Title III
   - ☐ 2703(d) Order   ☐ Other_____

5. Telephone/Communication Company Name: T-Mobile

6. Service Type:
   - ☒ Wireline/Wireless
   - ☐ VoIP
   - ☐ SMS/MMS Service
   - ☐ Other_____
   - ☐ Air-to-Ground
   - ☐ Instant Messaging Provider
   - ☐ Cellular Broadband
   - ☐ Satellite
   - ☐ Fiber To The Home (FTTH)
   - ☐ Internet Service/Portal Provider
   - ☐ Cable - DSL - ISP
   - ☐ WiMAX
   - ☐ eMail - Social Networking

7. Type of Investigation:
   - ☒ Drug
   - ☐ Organized Crime
   - ☐ Violent Crime
   - ☐ Computer Crime
   - ☐ Fugitive
   - ☐ White-collar
   - ☐ Homicide
   - ☐ Public Corruption
   - ☒ Other: Money Laundering
   - ☐ Kidnapping
   - ☐ Terrorism

8. If the telephone/communication service provider was only able to provide partial compliance with the ELSUR order, what ELSUR evidence was missing?
   - ☒ Content   ☒ Identifying Information   ☒ Location Information

9. If the telephone/communication service provider caused a delay in the implementation of ELSUR, how long was the delay?
   - ☐ No delay   ☒ 1 to 3 days   ☐ 4 to 6 days   ☐ More than a week   ☐ More than 2 weeks
   - ☐ More than 3 weeks   ☐ More than a month   ☐ More than 2 months   ☐ Other_____

10. If the telephone/communication service provider caused an interruption during the use of ELSUR, how long was the interruption?
    - ☐ No interruptions   ☐ Less than 6 hours   ☐ More than 6 hours   ☐ 1 day   ☒ 2 to 3 days
    - ☐ 4 to 6 days   ☐ More than a week   ☐ More than 2 weeks   ☐ More than 3 weeks   ☐ More than a month
    - ☐ Other_____

11. What reason(s) did the telephone/communication service provider give for (select all that apply): ☐ partial compliance, ☒ delay in implementation, ☒ interruption in obtaining ELSUR evidence?
    - ☐ Cost $_____
    - ☐ Ineffective assistance capability
    - ☐ Unable to identify target
    - ☐ Provisioning
    - ☐ Capability request unreasonable for provider
    - ☒ Other: T-mobile stated that they never received renewal Court Order.

12. What was the impact on the investigation?
    - ☐ No impact   ☐ Case Inactive   ☐ Case closed
    - ☐ Case Hindered   ☒ Other: Unknown at this time.

ACAD/ELSUR_SAIC009                                1

ICE 2011FOIA13220000011



## ELSUR Noncompliance Incident Report Comments Page

Tmobile was faxed renewal order for a t-3 and pen register on 8/20/2009.

On 8/23/2009 the case agent called T-mobile to activate precision locate on the same target.

Agent was told that they didn't get the renewal order that I previously faxed on 8/20/2009.

I called T-Mobile at (b)(6), (b)(7)c immediately put the case back up after I re-faxed the court order.

I ask (b)(6), (b)(7)c and his supervisor (b)(6), (b)(7)c why couldn't their company fax or email an acknowledgement when they receive an order. They replied that they only do it the first time on a new order and not for renewals. They further said they would bring it up with their supervisors. This isn't the first time that T-Mobile has lost an order that was faxed to them, though in the past it was for pen register orders.

ACADM/ELSUR_S.S.042909     2