UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE, ET AL<br><br>Defendants. | Case No. 10-CV-10-04892-RS |

### DECLARATION OF JOHN E. CUNNINGHAM III

I, John E. Cunningham III, declare the following to be a true and correct statement of facts:

1. I am a Trial Attorney in the U.S. Department of Justice (DOJ or Department), Criminal Division (CRM), and am currently assigned to the Office of Enforcement Operations, Freedom of Information Act/Privacy Act (FOIA/PA) Unit, where I have worked since November 2011. I have been employed as a Trial Attorney with the DOJ since October 1998. From October 1998 to November 2011, I was employed by the Fraud Section of CRM. In November, 2011, I became a Trial Attorney with the Criminal Division, Office of Enforcement Operations (OEO) FOIA/PA Unit.

2. In such capacity, my present duties include reviewing complaints of lawsuits filed under both the Freedom of Information Act (FOIA), 5 U.S.C. § 552 *et seq.*, and the Privacy Act ("Privacy Act" or "PA"), 5 U.S.C. § 552a *et seq.*, and to provide litigation support and assistance to DOJ Assistant United States Attorneys and to Department of Justice, Civil Division, Federal

1

Programs Trial Attorneys litigating these cases in district courts. In conjunction with these duties, I review CRM's processed FOIA request files compiled by the paralegal processors (FOIA Specialists), reviewed by supervisory paralegals (Supervisory FOIA Specialists), and/or by the CRM FOIA/PA Unit Chief and/or Deputy Chief in response to FOIA/PA requests received by the FOIA/PA Unit. I also consult with officials and employees in CRM Sections where responsive records are located, and with officials and employees in other DOJ Components and/or Federal agencies that have equities in responsive records. I also consult with the Unit Chief and the Deputy Chief, who supervise the processing of FOIA/PA requests, and with the supervisory paralegals (Supervisory FOIA Specialists) to confirm that determinations to withhold or to release CRM records have been made in accordance with both the FOIA and the PA, and with DOJ regulations at 28 C.F.R. §§ 16.1 *et seq.* and §§ 16.40 *et seq.*

3. Due to the nature of my official duties, I am familiar with the processing of Plaintiff's request. The statements that follow are made on the basis of my review of CRM's official files and records, my own personal knowledge, and information I acquired in performing my official duties.

### RESPONSE TO PLAINTIFF'S CLAIMS THAT CRM HAS IMPROPERLY WITHHELD DOCUMENTS AS NON-RESPONSIVE

4. I have reviewed and have become familiar with Plaintiff's Cross Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Cross Motion and Opposition") filed on March 29, 2012. *See* Docket ("Dkt.") No. 43. This declaration addresses certain issues raised therein and provides the Court and Plaintiff with further elaboration regarding CRM's withholding of certain documents. In Plaintiff's Cross Motion and Opposition, Plaintiff represents that, "[t]he DEA and Criminal Division also appear to be withholding responsive material as 'not responsive,'" though their redactions are more

cryptic.'" *See* Plaintiff's Cross Motion and Opposition, Dkt No. 43, at pages 18-19. Specifically, Plaintiff complains that "the agency withheld as "not responsive" two paragraphs of handwritten notes from a March 18, 2010 meeting with "Main Justice" on "Going Dark" [*CRM-000011*]. Upon having reviewed *CRM-000011*, it appears that the portions of this document marked "non-responsive" should have been withheld pursuant to Exemption 7(E) and Exemption 5, the deliberative process privilege. In the Second Declaration of Kristin L. Ellis,[1] filed on March 1, 2012, Ms. Ellis states in relevant part that,

> . . . the responsive information CRM located is replete with Exemption 7(E) material that implicitly or explicitly reveals the parameters of the Department's surveillance techniques and guidelines; details the difficulties, vulnerabilities, and/or technical limitations of conducting such surveillance on specific carriers/service providers or on specific devices; and describes the exploitation of such vulnerabilities or limitations by child predators, drug cartels and traffickers, and other criminal elements. *See CRM-000001 to CRM-000040* [Emphasis added]. . . Consequently, release of this information would provide a detailed road map that would permit criminals to evade lawful electronic surveillance by law enforcement and thwart investigative efforts, thus, posing a real and significant threat of circumvention of the law. CRM consequently concluded that this information, which details particulars about the use and limitations of electronic surveillance, implicates law enforcement techniques and guidelines that are not well-known to the public and that, if disclosed, would risk circumvention of the law.

*See* Second Declaration of Kristin L. Ellis, Dkt No. 39-1, at p. 13. Moreover, in her Second Declaration, Ms. Ellis states that, "[i]n applying Exemption 5 to the *Vaughn* Index, CRM first concluded that the documents were created in the Criminal Division and were not exchanged outside the Executive Branch. Specifically, CRM applied the exemption to . . . handwritten notes taken by CRM employees during meetings discussing strategies for addressing the "going dark" problem *(CRM-000010 to CRM-000011)*[.] [Emphasis added]. *See* Second Declaration of Kristin L. Ellis, Dkt No. 39-1, at p. 16. Consistent with the Second Declaration of Ms. Ellis, CRM now seeks to clarify its intention to rely on both

---
[1]Ms. Ellis is currently employed by another Federal agency.

3


Exemption 7(E) and Exemption 5, the deliberative process privilege to withhold these same portions of *CRM-000011,* consisting of handwritten notes taken by a CRM employee who attending meetings held as part of the Department's development of proposed legislation to address the "going dark" problem. Exemption 5 permits agencies to withhold inter- and intra-agency documents that would not be available in litigation (*i.e.*, attorney-client communications, attorney work products, and/or deliberative materials). 5 U.S.C. § 552(b)(5). The information in *CRM-000011* withheld by CRM is deliberative material subject to the deliberative process privilege, which protects advisory opinions, recommendations, and discussions comprising part of the process by which governmental decisions are made. Such material is properly withheld if it is both predecisional – *i.e.*, temporally proceeds the decision to which it relates – and deliberative – *i.e.*, is part of the process by which the agency makes decisions about matters facing it. *CRM-000011* contains dialog in the form of handwritten notes about a particular type of surveillance problem and possible solutions from law enforcement to find a solution to the problem. Because the handwritten notes contain a discussion concerning a particular surveillance problem and offer a proposed solution – they are clearly both predecisional and deliberative in nature.

5. Next, Plaintiff asserts that "CRM withheld as "not responsive" several paragraphs and one full page from a five-page email chain entitled "24/7 Trace of Threat Email" that describes "e-mail anonymizing services" [*CRM-000055-59*]. *See* Cross Motion and Opposition, Dkt No. 43, at p. 19. With regard to the portions of *CRM-000055-59* marked as non-responsive either in their entirety or in part, the pages in question consist solely of server logs lists. The sever logs are outside the scope of the Plaintiff's request because they do not discuss, concern, or reflect specific or technical problems that hamper CRM's current ability to conduct surveillance

on communications systems or networks. Furthermore, the lists of server logs were not responsive to any of the other five items listed in the Plaintiff's request.

6. Next, Plaintiff asserts that "CRIM may also be withholding other information as not responsive" [*CRM-000013-14*]. Specifically, Plaintiff avers that "[f]or several documents the agency appears to be claiming an exemption for only a portion of the document, even though it withheld the entire document in full. For example, the *Vaughn* entry for pages CRM-000013-14 notes the CRIM withheld under Exemptions 5 and 7(E) 'approximately 12 lines of text from two pages' that discussed a proposal 'to address particular limitations on the Government's ability to conduct lawfully intercept certain communications [sic]." *See* Plaintiff's Cross Motion and Opposition, Dkt No. 43, at p. 19. To clarify, CRM has treated the document as responsive but CRM is withholding in full *CRM-000013-14*, based upon Exemption 5, deliberative process privilege and Exemption 7(E). Exemption 5 permits agencies to withhold inter- and intra-agency documents that would not be available in litigation (*i.e.*, attorney-client communications, attorney work products, and/or deliberative materials). 5 U.S.C. § 552(b)(5). The information in *CRM-000013-14* which is being withheld in full by CRM is deliberative material subject to the deliberative process privilege, which protects advisory opinions, recommendations, and discussions comprising part of the process by which governmental decisions are made. Such material is properly withheld if it is both predecisional – *i.e.*, temporally proceeds the decision to which it relates – and deliberative – *i.e.*, is part of the process by which the agency makes decisions about matters facing it. *CRM-000013-14* is entitled "DRAFT Proposed Section-by-Section language."

7. Plaintiff further challenges CRM's withholding as "non-responsive" *CRM-000030* (withholding "1/2 page of information" from a 1-page draft document withheld in full);

*CRM-000032-33, 36, 37-38, 39, 40, 41, 42-43* (same or similar)." See Plaintiff's Cross Motion and Opposition, Dkt No. 43, at p. 20, fn. 14. With respect to *CRM-000030*, issues other than the "going dark" problem were discussed in the Digital Due Process proposed initiative. The information withheld in *CRM-000030* dealt with other issues, and not with "going dark," and therefore are outside the scope of the Plaintiff's request. *CRM-000032-33* contain discussions regarding Government resources necessary to address the "going dark" problem, and do not contain discussions of the "going dark" problem itself. Such information is both non-responsive and outside the scope of the Plaintiff's request. *CRM-000036, 37-38, 39, 40* reference "Draft report of Going Dark legislative meetings" and "Draft report of legislative meetings 20100512 1912 (swh).doc." and pertain to internal discussions about prospective legislative proposals and solutions. *CRM-000037* and *CRM-000039-40* also contain e-mail links to unrelated online news stories. Again, such information is non-responsive and outside the scope of the Plaintiff's request. *CRM-000041* is a briefing type document prepared by a CCIPS Deputy Chief for the CCIPS Unit Chief and contains references to various subject matters with which CRM was engaged, however, none of the issues identified as non-responsive involved the "going dark" problem. Such information is both non-responsive and outside the scope of Plaintiff's request. *CRM-000042-43* is an email chain consisting of two emails, the second of which contains information for a CEOS Briefing. A total of 11 lines of *CRM-000042-43* relate to the "going dark" problem, and this information was withheld under Exemption 5 and Exemption 7(E). The remainder of the document addresses the need for increased resources to accomplish the sections mission and is therefore not responsive. *CRM-000042* also contains approximately 3 lines of an email exchange between two CRM employees which were withheld under Exemption 5, attorney work product privilege and Exemption 7(E). In the exchange, one CRM employee describes

multiple cases where sex offenders' use of a certain technology was impeding the Government's ability to gather evidence and identify child predators. The information relayed in the exchange was based on information gathered in underlying criminal investigations and therefore the information was generated because of litigation. The information contained in the three lines of e-mail text was also withheld in its entirety under Exemption 7(E), because it detailed problems conducting electronic surveillance and disclosure would risk circumvention of the law.

### RESPONSE TO PLAINTIFF'S CLAIMS THAT CRM HAS IMPROPERLY WITHHELD PURELY FACTUAL INFORMATION

8. Next, Plaintiff asserts that CRM has improperly withheld purely factual information contained in *CRM-000003* (concerning [the] government's ability to intercept particular types of electronic communications on a particular carrier's system), *CRM-000013-14* (describing problems the government had conducting wiretaps), *CRM 000015-19, CRM-000060-61* (compilation of various investigations) and *CRM-000050-52* (e-mails exchanged between a CRM-CCIPS attorney, an AUSA and ATF employee, discussing techniques and procedures for addressing the encryption issue encountered on a seized portable USB flash drive). *See* Plaintiff's Cross Motion and Opposition, Dkt No. 43, at p. 35, fn. 33. With regard to *CRM-000003*, CRM's Vaughn Index contained a typographical error and instead of being withheld under Exemption 5, the deliberative process privilege, it should have read as being withheld under Exemption 5, as privileged attorney work product, as well as under Exemption 7(E), as indicated in the Second Declaration of Kristin L. Ellis, Dkt No. 39-1, ¶ 43. Because *CRM-000003* is being withheld under Exemption 5, as privileged attorney work product, the issue of whether it is factual information is irrelevant, because both factual and analytical information are protected by the attorney work product privilege. *CRM-000013-14* is a draft document created by a DOJ attorney which proposed a response to language in proposed legislation being crafted

within the Department to address particular limitations on the Government's ability to lawfully conduct the interception of certain communications. For this reason, *CRM-000013-14* is also privileged attorney work product. Again, because *CRM-000013-14* is being withheld under Exemption 5, as privileged attorney work product, the issue of whether it is factual information is irrelevant, because both factual and analytical information are protected by the attorney work product privilege. CRM applied Exemption 7(A) to withhold information contained in *CRM-000015-19* for the reasons set forth in the Second Declaration of Kristin L. Ellis, Dkt No. 39-1 and CRM's *Vaughn* Index. In response to Plaintiff's argument, CRM also notes that the information withheld under Exemption 7(A) was not limited to only the names of informants, witnesses and other individuals as Plaintiff suggests, but also extended to information involving operational details of an ongoing transnational criminal investigation conducted by both foreign law enforcement entities and U.S. law enforcement agencies. As a result, even if CRM redacted the names of individuals from the document, the release of the remaining non-redacted information would still interfere with an ongoing enforcement proceeding because the information would highlight those countries who are actively engaged in cooperating with U.S. law enforcement agencies and possibly allow those persons being targeted to learn of the investigation and to possibly elude detection. Furthermore, CRM applied multiple exemptions to this document, including Exemptions 5, 6, 7(A), 7(C), 7(D), and 7(E). Indeed, the entire document is protected under Exemption 7(E) because disclosure of such investigative techniques and procedures would heighten the risk of circumvention of the law by those engaged in illegal activity. CRM applied Exemption 5, deliberative process privilege and Exemption 7(E) to withhold information contained in *CRM-000060-61* for the reasons set forth in the Second Declaration of Kristin L. Ellis, Dkt No. 39-1 and CRM's *Vaughn* Index. CRM relied on the

deliberative process privilege to withhold these e-mails because they contain operational examples of "going dark" problems experienced by law enforcement in their battle against organized narcotics cartels. The e-mails are predecisional, in that they are soliciting advice on behalf of others in CRM on how to address issues raised by the "going dark" problem. The e-mails are further protected by 7(E) because their disclosure would publicize certain successes by organized narcotics cartels in their efforts to thwart law enforcement surveillance techniques. CRM applied Exemption 5, privileged attorney work product and Exemption 7(E) to withhold information contained in *CRM-000050-52* for the reasons set forth in the Second Declaration of Kristin L. Ellis, Dkt No. 39-1 and CRM's *Vaughn* Index. As noted by Ms. Ellis in her Second Declaration, these e-mails all concerned discussions among Department attorneys in relation to ongoing cases that are either still under investigation or have proceeded to prosecution. CRM thus concluded that these messages were sent in anticipation and/or in furtherance of litigation, and is relying on the attorney work product privilege as a basis to withhold these attorney work products. The e-mail exchange in question discusses an encryption problem encountered by law enforcement and proposes a technical solution to the same problem. The e-mails are further protected under Exemption 7(E), because disclosure of the problem information and the proposed technical solution could enable those persons who might seek to engage in illegal criminal activity to frustrate the efforts of law enforcement and circumvent the law.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27TH day of April, 2012.

John E. Cunningham III