Jennifer Lynch (SBN 240701)
*jlynch@eff.org*
Mark Rumold (SBN 279060)
*mark@eff.org*
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:   (415) 436-9333
Facsimile:   (415) 436-9993

David L. Sobel *(pro hac vice)*
*sobel@eff.org*
ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W., Suite 410
Washington, DC  20036
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

Attorneys for Plaintiff
Electronic Frontier Foundation

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF JUSTICE <br><br> Defendant. | Case No. 3:10-cv-04892-RS <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> Date:   May 31, 2012 <br> Time:   1:30 p.m. <br> Place:   Ctrm. 3, 17th Floor <br> Judge:   Hon. Richard Seeborg |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................... 1

I.   ARGUMENT ...................................................................................................................... 2

    A.   DEFENDANT IS IMPROPERLY NARROWING THE SCOPE OF PLAINTIFF'S REQUEST TO
        CIRCUMVENT ITS FOIA OBLIGATIONS ........................................................................ 2

    B.   FBI'S *VAUGHN* SUBMISSION FAILS TO PROVIDE THE REQUISITE SPECIFICITY ..................... 4

    C.   DEFENDANT FAILS TO MEET ITS BURDEN UNDER EXEMPTION 3 ......................................... 5

    D.   DEFENDANT STILL FAILS TO MEET ITS BURDEN UNDER EXEMPTION 4 .............................. 5

    E.   DEFENDANT STILL FAILS TO MEET ITS BURDEN UNDER EXEMPTION 5 ............................. 8

        1.   Defendant Concedes that Factual and Non-Deliberative Material Has Been
            Withheld Under the Deliberative Process Privilege ..................................................... 8

        2.   The "Consultant Corollary" Does Not Protect Records Shared with
            Communications Providers and Non-DOJ Law Enforcement .................................... 9

        3.   The FBI Continues to Improperly Withhold Documents Labeled as 'Drafts'
            Under the Deliberative Process Privilege ................................................................ 13

        4.   Both FBI and DEA Continue to Improperly Withhold Records Reflecting Final
            Agency Positions or Opinions .................................................................................. 14

        5.   CRIM Continues to Improperly Withhold Material Under the Work Product
            Privilege .................................................................................................................. 15

    F.   FBI'S STILL FAILS TO SUPPORT ITS EXEMPTION 7(A) CLAIMS ......................................... 15

    G.   FBI STILL FAILS TO SUPPORT ITS CLAIMS OF IMPLIED CONFIDENTIALITY UNDER
        EXEMPTION 7(D) AND *DOJ V. LANDANO* ................................................................... 15

    H.   DEFENDANT STILL FAILS TO SHOW MATERIAL WITHHELD UNDER EXEMPTION 7(E)
        IS NOT WIDELY KNOWN OR THAT ITS DISCLOSURE WOULD RISK CIRCUMVENTION OF
        THE LAW ..................................................................................................................... 17

    I.   DEFENDANTS HAVE FAILED TO RELEASE ALL REASONABLY SEGREGABLE MATERIAL ...... 20

    J.   THIS COURT'S *IN CAMERA* REVIEW MAY BE NECESSARY TO ENSURE DEFENDANTS
        HAVE RELEASED ALL NON-EXEMPT, SEGREGABLE INFORMATION .................................. 21

II.  CONCLUSION ................................................................................................................. 22

1

# TABLE OF AUTHORITIES

2

## FEDERAL CASES

3

4   *ACLU of Wash. v. DOJ,*
    No. 09-0642, 2011 U.S. Dist. LEXIS 26047 (W.D. Wash. Mar. 10, 2011) ........................21

5   *ACLU v. ODNI,*
6   No. 10-4419, 2011 U.S. Dist. LEXIS 132503 (S.D.N.Y. Nov. 15, 2011) ...........................21

7   *Am. Council on Education v. FCC,*
    451 F.3d 226 (D.C. Cir. March 20, 2006)...........................................................................10

8   *Arthur Andersen & Co. v. IRS,*
9   679 F.2d 254 (D.C. Cir. 1982) ...........................................................................................13

10  *Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State,*
11  818 F. Supp. 1291 (N.D. Cal. 1992) ...................................................................................21

12  *Church of Scientology Int'l v. DOJ,*
    30 F.3d 224 (1st Cir. 1994) .................................................................................................15

13  *Coastal States Gas Corp. v. Dep't of Energy,*
14  617 F.2d 854 (D.C. Cir. 1980) .........................................................................................8, 14

15  *Ctr. for Biological Diversity v. Office of the U.S. Trade Rep.,*
    450 Fed. Appx. 605 (9th Cir. 2011) ......................................................................................9
16

17  *Dept. of Interior v. Klamath Water Users Protective Ass'n,*
    532 U.S. 1 (2001) ..............................................................................................................9, 13

18  *Detroit Free Press v. Ashcroft,*
19  303 F.3d 681 (6th Cir. 2002)...............................................................................................19

20  *DOJ v. Landano,*
    508 U.S. 165 (1993) ............................................................................................................15
21

22  *Dow Jones & Co., Inc. v. DOJ,*
    286 U.S. App. D.C. 349, 917 F.2d 571 (D.C. Cir. 1990)......................................................9

23  *Dunaway v. Webster,*
24  519 F. Supp. 1059 (N.D. Cal. 1981) ...............................................................................3, 18

25  *EFF v. Office of the Dir. of Nat'l Intelligence,*
    2009 U.S. Dist. LEXIS 88116 (N.D. Cal. Sept. 24, 2009)....................................................9
26

27  *Elec. Privacy Info. Ctr. v. DOJ,*
    511 F. Supp. 2d 56 (D.D.C. 2007) ......................................................................................14

28

*Feshbach v. SEC,*
    5 F. Supp. 2d 774 (N.D. Cal. 1997) ............................................................5, 7, 17

*Flathead Joint Bd. of Control v. United States DOI,*
    309 F. Supp. 2d 1217 (D. Mont. 2004) .................................................................9

*GC Micro Corp v. Def. Logistics Agency,*
    33 F.3d 1109 (9th Cir. 1994).................................................................................5

*Gerstein v. DOJ,*
    No. 03-04893, 2005 U.S. Dist. LEXIS 41276 (N.D. Cal. Sept. 30, 2005).....................17, 19

*Gordon v. FBI,*
    388 F. Supp. 2d 1028 (N.D. Cal. 2005).................................................................17

*Grand Central Partnership, Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999)...................................................................................6

*Halpern v. FBI,*
    181 F.3d 279 (2nd Cir. 1999)...............................................................................15

*Islamic Shura Council of S. Cal. v. FBI,*
    779 F. Supp. 2d 1114 (C.D. Cal. 2011)..................................................................3

*King v. U.S. Dep't of Justice,*
    830 F.2d 210 (D.C. Cir. 1987) ...............................................................................4

*L.A. Times Commns. LLC v. Dep't of Labor,*
    483 F. Supp. 2d 975 (C.D. Cal. 2007)..................................................................21

*L.A. Times v. Dep't of the Army,*
    442 F. Supp. 2d 880 (C.D. Cal. 2006)....................................................................7

*LaCedra v. Executive Office for U.S. Attorneys,*
    317 F.3d 345 (D.C. Cir. 2003) ...............................................................................2

*Lion Raisins v. Dep't of Agriculture,*
    354 F.3d 1072 (9th Cir. 2004)................................................................................6

*Londrigan v. FBI,*
    670 F.2d 1164 (D.C. Cir. 1981) .............................................................................6

*Maricopa Audubon Soc'y v. U.S. Forest Serv.,*
    108 F.3d 1089 (9th Cir. 1997)..............................................................................13

*Mays v. DEA,*
    234 F.3d 1324 (D.C. Cir. 2000) ...........................................................................16

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,*
    566 F.2d 242 (D.C. Cir. 1977) .............................................................................20

*Nation Magazine v. U.S. Customs Serv.*,
   71 F.3d 885 (D.C. Cir. 1995) ...................................................................................2

*NRDC v. DOD*,
   388 F. Supp. 2d 1086 (C.D. Cal. 2005)..............................................................20, 21

*Raher v. Federal Bureau of Prisons*,
   749 F. Supp. 2d. 1148 (D. Ore. 2010)....................................................................6

*Ray v. Turner*,
   587 F.2d 1187 (D.C. Cir. 1978) *(per curiam)*...................................................22

*Rosenfeld v. DOJ*,
   57 F. 3d 803 (9th Cir. 1995)...............................................................4, 15, 16, 21

*Spirko v. U.S. Postal Serv.*,
   147 F.3d 992 (D.C. Cir. 1998) ...............................................................................22

*Vaughn v. Rosen*,
   484 F.2d 820 (D.C. Cir. 1973) ......................................................................*passim*

*Wash. Post Co. v. Dep't of Justice*,
   863 F.2d 96 (D.C. Cir. 1988) ...................................................................................7

*Watkins v. CBP*,
   643 F.3d 1189 (9th Cir. 2011).................................................................................6

*Wiener v. FBI*,
   943 F.2d 972 (9th Cir. 1991)...................................................................................4

*Wilderness Soc. v. U.S. Dep't of Interior*,
   344 F. Supp. 2d 1 (D.D.C. 2004) ............................................................................2

*Williams v. FBI*,
   69 F.3d 1155 (D.C. Cir. 1995) ...............................................................................16

## FEDERAL STATUTES

5 U.S.C. §552....................................................................................................*passim*

18 U.S.C. § 2511 ....................................................................................................16

18 U.S.C. § 2516 ....................................................................................................16

18 U.S.C. § 2517 ....................................................................................................16

18 U.S.C. § 2518 ....................................................................................................16

47 U.S.C. §§1001, *et seq.*...........................................................................1, 10, 11

# FEDERAL RULES

Fed. R. Civ. Pro. 56 ........................................................................................................6, 7

Fed. R. Evid. 801 ................................................................................................................7

Fed. R. Evid. 802 ................................................................................................................7

# OTHER AUTHORITIES

"Sheriff Mark Curran: Why He Changed His Mind About Secure Communities," *PBS Frontline*
(Oct. 18, 2011) ........................................................................................................12

*CTIA - The Wireless Association's Opposition to U.S. DOJ Petition for Expedited Rulemaking*
(RM-I1376) (July 25, 2007) ....................................................................................10

Declan McCullagh, "FBI: We need Wiretap-Ready Web Sites – Now," *CNet* (May 4, 2012)....1, 11

DOJ, *FY 2011 Budget Request*: *Assist State, Local And Tribal Law Enforcement* (2011)...............12

DOJ OIG, *Implementation of the Communications Assistance for Law Enforcement Act by the
Federal Bureau of Investigation*, (March 1998) ..................................................10

DOJ OIG, *The Implementation of the Communications Assistance for Law Enforcement Act*,
(March 2006) ....................................................................................................10, 12

Mark Eddy, "Medical Marijuana: Review and Analysis of Federal and State Policies,"
*Congressional Research Service* (April 2, 2010) ..................................................12

Michael Hennessey, "Secure Communities Destroys Public Trust," *SF Chronicle* (May 1, 2011) .12

*Oversight of the FBI: Full Hearing of the Senate Judiciary Comm.* 112th Cong. (May 16, 2012) ...1

**INTRODUCTION**

Through this Freedom of Information Act (FOIA) suit, EFF seeks records related to the government's attempts to expand the Communications Assistance for Law Enforcement Act (CALEA) to require all communications providers—including Skype, Facebook, BlackBerry, and Google—to build backdoors into their systems. Whether the government should be allowed to mandate technological designs to enable wiretapping, what the government's proposed legislative responses are, and how the government is going about lobbying Congress and the Federal Communications Commission (FCC) to change the law are all matters of current public concern. *See Oversight of the FBI: Full Hearing of the Senate Judiciary Comm.* 112th Cong. (May 16, 2012);[1] *see also* Declan McCullagh, "FBI: We need Wiretap-Ready Web Sites – Now," *CNet* (May 4, 2012).[2] However, despite these facts and despite a year and a half of litigation and several years since EFF filed its first FOIA request, the government still refuses to provide basic information to the public on these issues. The records EFF seeks will help to fill in the gaps in the public's knowledge and will enable Americans to engage in informed debate with their government over the propriety of any CALEA expansion.

Defendant's 31-page Reply and three supplemental declarations fail to offer anything new to support its withholdings—including its specious "outside the scope" claims—or the FBI's insufficient *Vaughn* submission. Even though EFF highlighted in its Cross-Motion specific

---

[1] Overview and webcast available at http://www.judiciary.senate.gov/hearings/hearing.cfm?id= 62f3eacc18559ec4005439e447e474cb (FBI Director Mueller testified at this recent hearing before the full Senate Judiciary Committee. Senators Leahy and Grassley both pressed the Director on the FBI's proposal to expand CALEA.).

[2] Http://news.cnet.com/8301-1009_3-57428067-83/fbi-we-need-wiretap-ready-web-sites-now/. Other media outlets also covered this issue recently. *See, e.g.*, Glenn Greenwald, "Surveillance State Democracy," *Salon.com* (May 6, 2012) http://www.salon.com/2012/05/06/surveillance_state _democracy/singleton/; Josh Peterson, "Cyber-intelligence bill sponsor silent on FBI push to wiretap social networks," *The Daily Caller*, (May 13, 2012) http://dailycaller.com/2012/05/13/ cyber-intelligence-bill-sponsor-silent-on-fbi-push-to-wiretap-social-networks/; Ryan Gallagher, "The Problem With the FBI's Plan To "Wiretap" Online Communications," *Slate* (May 8, 2012) http://www.slate.com/blogs/future_tense/2012/05/08/communications_assistance_law_enforcemen t_act_fbi_hopes_to_wiretap_online_communications_.html; Sara Yin, "Report: FBI Wants to Wiretap Facebook, Twitter, Google," *PC Magazine* (May 5, 2012) http://securitywatch.pcmag.com/none/297521-report-fbi-wants-to-wiretap-facebook-twitter-google.

---

problematic *Vaughn* entries and improperly withheld records, Defendant's Reply fails to address these records. Defendant also fails to account for approximately 650 pages of missing and arguably responsive records.[3] Finally, Defendant's declarations are replete with conclusions of law, hearsay and other evidentiary issues, while its Reply fails to cite to any case law for most of Defendant's arguments.

Because Defendant has failed to meet its burden, the Court should deny its Motion for Summary Judgment and grant EFF's Cross-Motion. If the Court has any question about the propriety of Defendant's withholdings, EFF respectfully requests that the Court review all disputed material *in camera* and order Defendant to immediately disclose all improperly withheld records.

## I.   ARGUMENT[4]

### A.   Defendant is Improperly Narrowing the Scope of Plaintiff's Request to Circumvent its FOIA Obligations

Defendant goes to great lengths in its Opposition and supplemental declarations to parse Plaintiff's FOIA request as narrowly as possible to avoid releasing information clearly responsive to Plaintiff's request. This is contrary to the broad mandate in the FOIA, which states, "each agency, upon any request for records which reasonably describes such records . . . shall make the records promptly available to any person." 5 U.S.C. §552(a)(3)(A). It is also contrary to case law consistently stating that agencies are required "to construe a FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995); *LaCedra v. Executive Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003); *Wilderness Soc. v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 20 (D.D.C. 2004). As noted in Plaintiff's Cross-Motion, this means agencies are "obliged to release any information, subject to the specified exemptions, which relates to the subject of the request or which *in any sense sheds light on, amplifies, or enlarges upon* that

---

[3] Plaintiff learned for the first time in a letter from DOJ Office of Information Policy (OIP) — received after Defendant filed its Reply—that 278 pages of records referred from DEA were also never processed or released to Plaintiff. *See* Third Lynch Decl., Ex. A (April 26, 2012 Letter from Valeree Villanueva, FOIA Specialist). The letter states OIP will not complete consultations on the material (much less release these records to Plaintiff) until two days before the hearing on the parties Cross-Motions for Summary Judgment.

[4] In the interest of further narrowing the issues, Plaintiff is no longer challenging Defendant's Exemption 1 claims.

material which is found in the same documents." *Dunaway v. Webster*, 519 F. Supp. 1059, 1083

(N.D. Cal. 1981) (emphasis added).

The *Dunaway* case is instructive here. In *Dunaway*, the plaintiff challenged a number of

records the FBI withheld as outside the scope. After *in camera* review, the court determined the

Bureau withheld responsive material and ordered release where there was "any possibility that the

material might bear some relationship to the subject of the request, or if the information was

necessary to understand the context in which the reference to the subject of the request arises in the

document." *Id.* at 1083-84.  The court held "[t]he agency may withhold material found in

documents which are in any way responsive to the request *only if that material is clearly and

without any doubt unrelated to the subject of the request*." *Id.* at 1083 (emphasis added).

The material withheld by Defendant as outside the scope or not responsive does not meet

this test. The very titles, descriptions and subject matter of the material withheld—as described in

detail in Plaintiff's Cross-Motion and accompanying exhibits (Cross-Mot. at 6-9)—show that these

records, at the very least "shed[] light on, amplif[y], or enlarge[] upon that material which is found

in the same documents." *Dunaway*, 519 F. Supp. at 1083. Plaintiff's FOIA request was not limited,

as Defendant now asserts in its Reply, to information on "specific or technical problems" that

hamper the components' abilities to conduct surveillance but broadly included communications

and discussions within and outside the components on these problems and their potential solutions.

Responsive material should include discussions on how best to address these problems—whether

by technical means, legislative proposals, or internal policy changes. The material withheld as

outside the scope or not responsive should be released.

If the government continues to claim the material is not responsive, EFF respectfully points

the Court to *Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114 (C.D. Cal. 2011), in

which the court severely chastised the FBI for its specious "outside the scope" claims and later

found the Bureau liable for sanctions for misleading the court and the plaintiffs about the

responsiveness of the records. *Id.*, 2011 U.S. Dist. LEXIS 134123 (C.D. Cal., Nov. 17, 2011).

**B.      FBI's *Vaughn* Submission Fails to Provide the Requisite Specificity**

Defendant's Reply brief and supplemental filings fail to offer anything new to buttress its claims that FBI's *Vaughn* submission is sufficient. Ultimately, the threshold issue on a motion for summary judgment is whether an agency's explanations are "'full and specific enough to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding.'" *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 218 (D.C. Cir. 1987)). Despite Defendants' claims to the contrary, and for all the reasons raised in Plaintiff's Cross-Motion, (Cross-Mot. at 9-11), FBI's *Vaughn* submission lacks specificity and thus fails to meet Defendant's burden.

The *King* case is instructive here. In that case, the FBI provided the court with a categorical *Vaughn* declaration that failed to describe withheld material in detail. *Id*. at 220-221 and n. 82. The Court held the FBI's *Vaughn* Index was "wholly lacking in that specificity of description we have repeatedly warned is necessary to ensure meaningful review of an agency's claim to withhold information subject to a FOIA request." *Id.* at 223, 225; *see also*, *Rosenfeld v. DOJ*, 57 F. 3d 803, 807-08 (9th Cir. 1995) (holding "the government failed to make an initial showing which would justify deference by the district court").

Like the *Vaughn* submissions in *King* and *Rosenfeld*, FBI's *Vaughn* submissions in the instant case lack the requisite specificity to allow Plaintiff and the Court to evaluate its withholdings. FBI's claims to the contrary, (*see* Def. Reply at 5-9), are belied by the conclusory assertions in its *Vaughn*. As Plaintiff described in its Cross-Motion, the text FBI uses in its *Vaughn* submission is almost word-for-word the same across multiple entries and even across multiple cases. (Cross-Mot. at 12-14, 20-21, 27-28, 31-32 (citing specific repetitive sections from the Hardy Declaration and recent cases addressing similar boilerplate FBI declarations)). Further, the categories in which FBI chose to divide up the records in its *Vaughn* Index—grouping records based on the FBI divisions that released them rather than the type of record—fail to adequately describe the Bureau's reasoning supporting its exemption claims. This is in stark contrast to the DEA's categorical *Vaughn* Index, which uses meaningful function- and topic-based categories that

provide Plaintiff and the Court with the information necessary to determine the propriety of DEA's exemptions.

The fact that the Second Hardy Declaration is 170 pages and that the FBI "spent months preparing its *Vaughn* indices and narrative declaration," (Def. Reply at 8), does not disprove this point; the internal repetition within the Declaration makes it unnecessarily long without shedding light on the FBI's specific exemption claims. Other courts, when presented with similarly boilerplate declarations, refused to accept them; the Court should do no less in this case.

### C.    Defendant Fails to Meet its Burden under Exemption 3

Defendant's Reply and the Fourth Hardy Declaration provide no new information to buttress the FBI's Exemption 3 withholdings. As noted in Plaintiff's Cross-Motion, Exemption 3 and the underlying pen/trap and wiretap statutes do not allow the FBI to withhold information that is merely tangentially related to a pen register or wiretap. (Cross-Mot. at 15.) Given the lack of specificity in FBI's *Vaughn* submission, it is impossible for Plaintiff or the Court to determine if FBI applied Exemption 3 narrowly, as it is required to do under FOIA. The FBI's response to Plaintiff's Cross- Motion appears to amount to "trust us." This is insufficient under FOIA. If FBI refuses to provide additional detailed and specific information to support its Exemption 3 claims, then Plaintiff respectfully requests the Court order the documents released.

### D.    Defendant Still Fails to Meet Its Burden Under Exemption 4

As noted in EFF's Cross-Motion, Defendant is not entitled to withhold records under Exemption 4 because its declarations were not based on personal knowledge and included "non-specific, conclusory, and speculative justifications for withholding under Exemption 4." (Cross-Mot. at 16-17); *Feshbach v. SEC*, 5 F. Supp. 2d 774, 780 (N.D. Cal. 1997) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."). Instead of curing these defects, Defendant's supplemental declarations not only lack a basis in personal knowledge but now include inadmissible hearsay. Defendant has fallen short of satisfying its burden under Exemption 4, and the records must be released.

To withhold information under Exemption 4, courts consistently hold that an agency must either submit declarations from the companies whose information it seeks to protect or show that the agency declarant has expertise in the commercial area. *See, e.g.*, *GC Micro Corp v. Def. Logistics Agency*, 33 F.3d 1109, 1113 (9th Cir. 1994) (government's Exemption 4 withholdings supported by "declarations by officers of each of the three corporations involved"); *Raher v. Fed. Bureau of Prisons*, 749 F. Supp. 2d. 1148, 1156 (D. Ore. 2010) (letter from corporation opposing disclosure attached as exhibit to declaration); *Watkins v. CBP*, 643 F.3d 1189, 1196 (9th Cir. 2011) (declarations submitted from "major trade organizations"); *Lion Raisins v. Dep't of Agriculture*, 354 F.3d 1072, 1080 (9th Cir. 2004) (agency declarant provided adequate factual basis where declarant was in "almost daily contact" with companies in the relevant commercial market) (internal quotation marks omitted).  Here, Defendant has neither submitted declarations from the companies nor demonstrated the declarants' familiarity with the relevant market. While the declarants—Mr. Hardy and Ms. Myrick—are undoubtedly knowledgeable in matters concerning FOIA and their respective agencies, Defendant has not shown that either declarant has personal knowledge of competition in particular markets or knowledge of the market harm posed by disclosure of the responsive records. As such, those sections of Defendant's declarations supporting its Exemption 4 withholdings should be disregarded. Fed. R. Civ. Pro. 56(c)((4) (declarations used to support a motion "must be made on personal knowledge"); *Londrigan v. FBI*, 670 F.2d 1164, 1174-75 (D.C. Cir. 1981) (affidavit not based on personal knowledge should have been disregarded); *Grand Central Partnership, Inc. v. Cuomo*, 166 F.3d 473, 480 (2d Cir. 1999) (same).

The supplemental declarations also include inadmissible hearsay—recounting information that the companies allegedly provided to the declarants. (*See, e.g.* Third Myrick Decl. ¶ 9 ("*[T]he companies articulated* the competitive harm that would result from the release of its proprietary information[.]"), ¶10 ("*As one company explained*, because there are a small number of competitors in these markets, the disclosure of proprietary information" would harm the company's competitive position); Fourth Hardy Decl. ¶ 11 ("*RAND states*, 'This material is considered proprietary to Rand. This data shall not be disclosed outside the Government and shall not be

duplicated used or disclosed[.]"(emphasis added in each)).[5] Because these statements would not be admissible in evidence, all declarants' statements concerning information conveyed by the companies to the agency or restating the beliefs and opinions of company employees and the sections of Defendant's Reply relying on these statements, (Def. Reply at 26-28), should be disregarded. Fed. R. Civ. Pro. 56(C)(4); Fed. R. Evid. 801, 802; *Feshbach*, 5 F. Supp. 2d at 780 ("Hearsay statements found in affidavits are inadmissible."); *L.A. Times v. Dep't of the Army*, 442 F. Supp. 2d 880, 887 (C.D. Cal. 2006) (court sustained objection to declaration in FOIA case where declarant's statement concerning "what someone else told him" was "clearly hearsay").

Finally, even if the Court were to overlook the evidentiary issues in the declarations, the declarations fail to support Defendant's Exemption 4 claims because they provide only conclusory statements of expected harm and are internally inconsistent. For example, Ms. Myrick states that "disclosure of [the companies'] proprietary information would damage their competitive positions because of the competitiveness of the industry." (Third Myrick Decl. ¶ 9.) Mr. Hardy asserts that disclosure would result in competitors providing "lower cost analyses that would undermine RAND ability to compete for contracts;" but then later asserts, despite this alleged competitive pricing threat, that disclosure of the requested records would simultaneously "lead to higher program and project costs" for the FBI. (Fourth Hardy Decl. ¶ 11.) The conclusory and contradictory nature of Defendant's declarations fails "to show how release of the *particular material* would have the adverse consequence that [Exemption 4] seeks to guard against." *Wash. Post Co. v. Dep't of Justice*, 863 F.2d 96, 101 (D.C. Cir. 1988) (emphasis added).

In the absence of declarations supported by personal knowledge, statements admissible in evidence, and specific, non-conclusory descriptions of the competitive harm posed by disclosure of the responsive records, Defendant has not carried its burden under Exemption 4.

---

[5] Even assuming this statement were admissible, the existence of a non-disclosure agreement with a company is not determinative for Exemption 4 purposes. *GC Micro Corp.,* 33 F.3d at 1113 ("[W]hether the government has promised to keep the information confidential, is not dispositive under Exemption 4."); *see also Petkas v. Staats,* 501 F.2d 887, 889 (D.C.Cir.1974) ("Nor can a promise of confidentiality in and of itself defeat the right of disclosure.").

**E.   Defendant Still Fails to Meet Its Burden Under Exemption 5**

**1.   Defendant Concedes that Factual and Non-Deliberative Material Has Been Withheld Under the Deliberative Process Privilege**

EFF demonstrated in its Cross-Motion that Defendant improperly withheld factual material under the deliberative process privilege of Exemption 5. (Cross-Mot. at 24-25.) In reply, Defendant concedes this point, arguing it is justified in withholding factual material under Exemption 5 because it often claimed this Exemption coextensively with Exemption 7(E). (Def. Reply at 19.) Defendant cannot use its reliance on 7(E) to bootstrap its claims under Exemption 5; it must prove the material is properly withheld under *each* exemption. It has failed to do so here. Thus, to the extent that this Court determines Defendant's withholdings under Exemption 7E to be misplaced, (*see infra* at 18-20), the deliberative process privilege is similarly unavailable to withhold the "factual information" otherwise withheld under Exemption 7E.

Even in the absence of Exemption 7E claims, Defendant appears to have withheld purely factual material. In particular, the FBI's withholding in full of an "internal staff summary" note, (*see* Fourth Hardy Decl. ¶ 14), and the DEA's withholding of a "two-page bulletin," (*see* Third Myrick Decl. ¶ 11), were improper. Both contain factual information concerning, respectively, a meeting between "OCA, OTD, a DOJ staff attorney, and a staff employee of the Senate Judiciary Committee," and a "particular intercept issue." (Fourth Hardy Decl. ¶ 14; Third Myrick Decl. ¶ 11.) Similarly, FBI Document EFF/Lynch 329-331 contains "discussion paper articles"[6] on topics such as "Going Dark" and the "Degradation of Domestic Electronic Surveillance Capability." (Cross-Mot. at 22.) To the extent that these "discussion paper articles" still contain "definitions," that is precisely the type of non-deliberative, factual material that may not be withheld under the deliberative process privilege. *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Further, while the "thoughts and opinions" of the authors may be withheld, any factual descriptions may not be withheld under the deliberative process privilege. *See id.* (deliberative process privilege applies "only to the 'opinion' or 'recommendatory' portion of [a document], not to factual information which is contained in the document").

---

[6] FBI now claims that it "mislabeled" these pages as "definitions on topics" in its original *Vaughn* submission. (Fourth Hardy Decl. ¶16)

### 2. The "Consultant Corollary" Does Not Protect Records Shared with Communications Providers and Non-DOJ Law Enforcement

Defendant argues for the first time in its Reply that materials shared with non-agency third parties are still "inter or intra agency communications" because the entities with which these records were shared were acting as consultants. (Def. Reply at 21-22 (citing *Dept. of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001)).) This argument fails to hold water.

In *Klamath*, the Department of the Interior attempted to withhold records shared between the Bureau of Indian Affairs and an Indian tribe, arguing these communications were analogous to agency communications with a hired consultant. *Id.* at 11-12. However, the Court held that because the tribes "necessarily communicate[d] with the Bureau with their own, albeit entirely legitimate, interests in mind" and were "self-advocates at the expense of others seeking benefits inadequate to satisfy everyone," their communications with the government did not meet the consultant corollary test and could not be withheld under Exemption 5. *Id.* at 12. Cases following *Klamath* have noted that there is a presumption that documents shared between a federal agency and an outside party are not protected under Exemption 5, unless the agency hires the outside party as a consultant. *See, e.g., Ctr. for Biological Diversity v. Office of the U.S. Trade Rep.,* 450 Fed. Appx. 605, 608 (9th Cir. 2011) ("This fact alone suggests they do not meet Exemption 5's threshold requirement."); *Flathead Joint Bd. of Control v. United States DOI*, 309 F. Supp. 2d 1217, 1224 (D. Mont. 2004) (same) (citing *Dow Jones & Co., Inc. v. DOJ*, 286 U.S. App. D.C. 349, 917 F.2d 571, 574 (D.C. Cir. 1990)). According to the Ninth Circuit, "The relevant factual inquiry as to that question is the nature of the relationships between the government agency and the third party or parties." *Ctr. for Biological Diversity,* 450 Fed. Appx. at 609 (citing *Klamath*, 532 U.S. at 14).

The Northern District has already addressed the question of whether records shared between federal agencies and communications providers are protected by the consultant corollary and has held that they are not. *See EFF v. Office of the Dir. of Nat'l Intelligence*, 2009 U.S. Dist. LEXIS 88116 (N.D. Cal. Sept. 24, 2009).[7] In *EFF v. ODNI*, the court held that documents shared

---

[7] As noted by the Ninth Circuit on appeal, "the Solicitor General chose not to appeal the Exemption 5 ruling as it pertained to . . . those documents in which the telecommunications firms were involved in the exchange." *EFF v. ODNI*, 595 F.3d 949, 962 (9th Cir. 2010).

with telecommunications providers "are not protected from disclosure because the companies communicated with the government agencies 'with their own … interests in mind,' rather than the agency's interests." *Id.* *16. The same is true in this case.

The history of the enactment and expansion of CALEA is replete with evidence that communications providers are often at odds with the federal government on the specific issue of CALEA compliance. For example, in a March 1998 Department of Justice Inspector General report on the implementation of CALEA, the OIG reported that providers disagreed with law enforcement "over what capabilities must be provided to meet CALEA requirements and over reimbursement eligibility" and refused to modify their systems to be CALEA compliant. *See*, DOJ OIG, *Implementation of the Communications Assistance for Law Enforcement Act by the FBI*, Audit Report 98-13, (March 1998).[8] A similar 2006 report noted continuing disagreements between law enforcement agencies and carriers over costs and problems associated with implementing CALEA wiretaps. DOJ OIG, *The Implementation of the Communications Assistance for Law Enforcement Act*, Audit Report 06-13, 28-38, 66, 56-60, (March 2006) (describing costs the telecommunications companies charge for wiretaps).[9]

Communications companies and their trade associations have also regularly opposed DOJ efforts to expand CALEA in court cases and in proceedings before the Federal Communications Commission (FCC). *See, e.g., CTIA - The Wireless Association's Opposition to U.S. DOJ Petition for Expedited Rulemaking* (RM-I1376) (July 25, 2007) (opposing DOJ request to FCC to require carriers to provide detailed information about packets flowing through a carrier's packet communications network);[10] *see also Am. Council on Education v. FCC*, 451 F.3d 226, 2005 (D.C. Cir. March 20, 2006) (Pet. Initial Br. filed by Center for Democracy & Technology, EFF, and several communications providers, trade associations, and technology companies opposing

---

[8] *Available at* http://www.justice.gov/oig/reports/FBI/a9813.htm.

[9] *Available at* http://www.justice.gov/oig/reports/FBI/a0613/final.pdf.

[10] *Available at* http://fjallfoss.fcc.gov/prod/ecfs/retrieve.cgi?native_or_pdf=pdf&id_document=6519560535.

Case No. 10-cv-04892 RS    REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

proposed expansion of CALEA). And DOJ has opposed petitions filed by providers to minimize their obligations under CALEA.[11]

This conflict of interests continues today. As *CNet* reported in a recent article on the FBI's continued efforts to expand CALEA, the trade association TechAmerica, which represents communications, internet and cloud services providers and "includes representatives from HP, eBay, IBM, Qualcomm, and other tech companies on its board of directors, has been lobbying against a CALEA expansion." Declan McCullagh, "FBI: We Need Wiretap-Ready Web Sites—Now," *CNet* (May 4, 2012).[12] Given the breadth of evidence to show that communications providers communicate with the federal government with their own interests in mind and the fact that the Northern District has already addressed this exact question in an earlier case, these records are not protected by the consultant corollary to Exemption 5 and must be released.

This is no less true for records shared with non-federal law enforcement agencies. Defendant argues that records provided to third party state and local law enforcement agencies at a meeting of the Law Enforcement Executive Forum (LEEF) are nevertheless agency records because the "FBI solicited the views of these outsiders to offer input on the development of the Bureau's electronic surveillance policy" and that "the robust exchange of information and ideas within the law enforcement community is essential to developing strong, effective programs." (Def. Reply at 22; Fourth Hardy Decl. ¶15.) However, fact that the FBI believes these meetings promote a robust exchange of information does not make the third parties with whom the information has been exchanged consultants of the Bureau. If so, any time an agency had a fruitful meeting with any group for any reason it could claim the communications were protected by the consultant corollary to Exemption 5. Further, the FBI's description of LEEF and of the relationship between the Bureau and non-federal law enforcement contrasts with the DOJ Inspector General's

---

[11] *See In re. CALEA and Broadband Access and Services*, FCC ET Docket No. 04-295 (Jan. 19, 2006) (Opp'n of DOJ to Pet. for Reconsideration Filed By U.S. Telecom Ass'n) *available at* http://www.askcalea.net/lef/docs/060119_petitionrecon.pdf. (In this document, the FBI filed an opposition to the U.S. Telecom Association's petition to the FCC to push out the date of mandated CALEA compliance.)

[12] http://news.cnet.com/8301-1009_3-57428067-83/fbi-we-need-wiretap-ready-web-sites-now/. *See also* TechAmerica, "Industries," http://www.techamerica.org/industries.

analysis of the same program. In the DOJ OIG's 2006 report on CALEA implementation, the OIG noted that "State and local law enforcement officials stated that they feel unsupported by the FBI on electronic surveillance issues." *See* DOJ, OIG, *The Implementation of the Communications Assistance for Law Enforcement Act*, Audit Report 06-13, xv, 67 (March 2006). According to the report, third party law enforcement told OIG "that forums have become one-sided with the FBI simply presenting information, instead of an exchange of ideas between the FBI and law enforcement officials." *Id.*

State and local law enforcement are often at odds with the federal government on legal and policy matters as well. For example, in the last year there has been extensive disagreement between local police departments and the federal government over enforcement of the federal Secure Communities program, which requires state and local law enforcement to use their criminal systems to enforce federal immigration laws. *See*, *e.g.,* Michael Hennessey, "Secure Communities Destroys Public Trust," *SF Chronicle* (May 1, 2011) (Hennessey was San Francisco's Sheriff for 30 years);[13] "Sheriff Mark Curran: Why He Changed His Mind About Secure Communities," *PBS Frontline* (Oct. 18, 2011) (Curran is the Republican sheriff of Lake County, IL).[14] Similarly, state, local and federal law enforcement agencies are often not aligned on the legality and prosecution of marijuana possession and sales. *See*, *e.g.*, Mark Eddy, "Medical Marijuana: Review and Analysis of Federal and State Policies," 18 *Congressional Research Service* (April 2, 2010) (noting that as of 2010, 14 states "had removed state-level criminal penalties for the cultivation, possession, and use of medical marijuana," despite the fact that medical marijuana patients, their caregivers, and other marijuana providers could still be arrested by federal law enforcement agents and could be prosecuted under federal law.[15]

State and local law enforcement agencies also compete with each other for limited DOJ funds to support community policing and other efforts. *See, e.g.*, DOJ, Bureau of Justice Assistance

---

[13] *Available at* http://www.sfgate.com/cgi-bin/article.cgi?f=/c/a/2011/05/01/INB81J8OCL.DTL.

[14] *Available at* http://www.pbs.org/wgbh/pages/frontline/race-multicultural/lost-in-detention/sheriff-mark-curran-why-he-changed-his-mind-about-secure-communities/.

[15] *Available at* https://www.fas.org/sgp/crs/misc/RL33211.pdf.

funding program;[16] DOJ Community Oriented Policing Services (COPS);[17] DOJ, *FY 2011 Budget Request*: *Assist State, Local And Tribal Law Enforcement* (2011)[18] This shows the outside law enforcement agencies are "self-advocates at the expense of others seeking benefits inadequate to satisfy everyone." *Klamath*, 532 U.S. at 12.

Each of these examples shows that these records do not fall under the consultant corollary to Exemption 5 and must be released.

### 3. The FBI Continues to Improperly Withhold Documents Labeled as 'Drafts' Under the Deliberative Process Privilege

Plaintiff's Cross-Motion noted various instances in which the FBI withheld documents under the deliberative process privilege without providing any more description of the document, other than to label it a "draft." (Cross-Mot. at 20-21, 23-24.) EFF would readily withdraw challenges to "draft" documents where FBI can identify a final document to which the draft contributed, (*see* Cross-Mot. at 21 n. 28 (withdrawing challenges to DEA "draft" documents)); however, because of FBI's vague and conclusory *Vaughn* submissions and because of the sheer quantity of records withheld as "drafts," (Second Hardy Decl. ¶ 45 (noting over 1,800 pages of "drafts" had been withheld)), EFF is unable to meaningfully distinguish between documents that were legitimately predecisional and deliberative "drafts" and those for which the "draft" label was simply conveniently attached. *See Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 257 (D.C. Cir. 1982) ("The designation of the documents here as 'drafts' does not end the inquiry."). Because FBI has failed to satisfy its burden to withhold this information, and absent more specific descriptions of the withheld material and the deliberative process to which the material contributed, the documents must be released. *See Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997) (holding the agency must "identify a specific decision to which the document is predecisional" to be properly withheld under the deliberative process privilege).

---

[16] https://www.bja.gov/funding.aspx.

[17] http://www.cops.usdoj.gov/Default.asp?Item=46.

[18] *Available at* www.justice.gov/jmd/2011factsheets/pdf/law-enforcement.pdf.

### 4.      Both FBI and DEA Continue to Improperly Withhold Records Reflecting Final Agency Positions or Opinions

EFF's Cross-Motion demonstrated that both the FBI and DEA withheld records that reflect the final positions or opinions of the agency. (*Id.* 21-24.) In particular,[19] EFF noted that FBI and DEA had withheld in their entirety materials used to prepare senior agency officials for testimony before Congress. (*Id.* at 22-23.) In reply, Defendant asserts that the deliberative process privilege has not been asserted to withhold "final agency action or decision." (Def. Rep. at 23.)

Nevertheless, Exemption 5 is unavailable to withhold materials used to prepare and brief senior policy officials for testimony before Congress because the materials were likely "relied upon or adopted as official positions after their preparation." *Elec. Privacy Info. Ctr. v. DOJ*, 511 F. Supp. 2d 56, 71 (D.D.C. 2007). DEA replies that the content of these talking points was "not revealed in public testimony." (Second Myrick Decl. ¶ 23.) However, this is not the relevant inquiry; instead, it is whether the documents are "candid or personal in nature," "recommendatory," or weigh the "pros and cons of agency adoption" that determines whether the documents are deliberative. *Coastal States*, 617 F.2d at 866. DEA's withheld materials satisfy none of these criteria; instead, the materials were used "as preparatory tools" for policy-level officials to represent the agency's viewpoint. Thus, regardless of whether a specific bit of information was revealed at the hearing, because the briefing materials reflect the positions the agency was *prepared* to take, the information constitutes a final agency position and should be released.

The FBI's withholding of briefing materials is similarly unwarranted. The Bureau withheld testimony "used to prepare the Director for his appearance at a closed session" of the Senate Select Committee on Intelligence. (Fourth Hardy Decl. ¶ 8.) FBI states that disclosure of the testimony would "reveal the privileged, internal deliberative process that the FBI was having concerning the proposed enhancement of intelligence gathering capabilities, techniques, and procedures." (*Id.*) Yet disclosure of that "deliberative process" already occurred through the Director's testimony to the Intelligence Committee. Here, Defendant's concern is not with protection of the FBI's deliberative process, but with disclosure of the information it seeks to withhold. This, however, is not sufficient

---

[19] The documents selected for discussion by EFF are by no means the only examples of withheld "talking points" and "briefing materials," however. *See, e.g.*, Cross Mot. at 22-23 nn. 29-31.

to carry its burden at summary judgment, and the withholding of the testimony is plainly inappropriate under Exemption 5.

### 5.   CRIM Continues to Improperly Withhold Material Under the Work Product Privilege

EFF's Cross-Motion showed Defendant failed to provide the requisite information to withhold records under the work product privilege. (Cross-Mot. 25-26.) In response, Defendant simply repeats the same generic, insufficient assertions of privilege made in CRIM's declarations. (*See* Def. Reply at 25-26.) Notably, to withhold information under the work product privilege, "at a minimum, an agency seeking to withhold a document . . . must identify the litigation for which the document was created (either by name or through factual description)[.] *Church of Scientology Int'l v. DOJ*, 30 F.3d 224, 237 (1st Cir. 1994); (*but see* Def. Reply at 25-26 (noting only that documents withheld under the work product privilege relate to a "particular criminal investigation," a "particular criminal prosecution," and a "particular case [an AUSA] was working on")). Defendant has not provided the bare minimum of information to withhold records under the work product privilege. Therefore, the materials must be released.

### F.   FBI's Still Fails to Support its Exemption 7(A) Claims[20]

FBI has failed to provide any additional information or legal support for its Exemption 7(A) claims, choosing to rest on its insufficiently detailed *Vaughn* submission. For all the reasons stated in Plaintiff's Cross-Motion (Cross-Mot. at 27-28), FBI has failed to meet its burden to sustain its withholdings under Exemption 7(A).

### G.   FBI Still Fails to Support Its Claims of Implied Confidentiality Under Exemption 7(D) and *DOJ v. Landano*

Defendant presents no new arguments or evidence in its Reply to sustain FBI's implied confidentiality claims. As noted in EFF's Cross-Motion, the requirement under Exemption 7(D) "is not whether the requested *document* is of the type that the agency usually treats as confidential, but whether the particular *source* spoke with an understanding that the communication would remain

---

[20] Based on the supplemental information provided by DOJ Criminal Division in the new Cunningham Declaration, EFF no longer challenges CRIM's 7(A) withholdings.

confidential." (*See* Cross-Mot. at 28-30 (citing cases)). The Court in *DOJ v. Landano* "rejected the view . . . that a presumption of confidentiality attaches from the mere fact of an FBI investigation," *see Rosenfeld*, 57 F.3d at 814 (citing *id.*, 508 U.S. 165 (1993)), and since then courts have found an implied grant of confidentiality only in cases where fears of retaliation are warranted by the nature of the crime (not merely by the FBI's unsupported assertions). *See, e.g., id.* (finding implied confidentiality for witness to a gang murder); *Halpern v. FBI*, 181 F.3d 279, 299-300 (2nd Cir. 1999) (noting conditions in meatpacking industry warranted fears of retaliation); *Mays v. DEA*, 234 F.3d 1324, 1329 (D.C. Cir. 2000) (noting violence and retaliation involved in conspiracy to distribute crack and powder cocaine); *Williams v. FBI*, 69 F.3d 1155, 1159-60 (D.C. Cir. 1995) (inference of confidentiality warranted in crimes of "rebellion or insurrection, seditious conspiracy, and advocating overthrow of the government"); *c.f. Rosenfeld*, 57 F.3d at 814-15 (denying certain documents exempt status under Exemption 7(D) based on lack of evidence of implied confidentiality).

FBI has not shown any similar facts that would warrant an inference of confidentiality here. The Bureau is merely attempting to withhold names of communications service providers who are required by law to disclose information about their subscribers to the FBI when presented with a lawful request. Mr. Hardy asserts, with no factual support or basis for personal knowledge, that the companies "would pay a high price if it were known that they were providing information about their customers." (Hardy Decl. ¶ 78.) Defendant's Opposition concludes that these companies "would have been extremely unlikely to voluntarily provide the information given that its disclosure so clearly threatens their economic interests." (Def. Reply at 18.) Yet these unsupported assertions fail to recognize that the law requires these companies to disclose information in certain contexts (*see, e.g.,* 18 U.S.C. §§ 2516-18) and just as clearly prohibits them from disclosing information in other contexts (*see, e.g.,* 18 U.S.C. § 2511). Companies should not be "voluntarily" providing information on their customers to the FBI without appropriate legal process, and the FBI should not be allowed to prevent the public from learning about this through an unsupported claim of economic harm to the companies.

Further, the public already knows that specific companies provide information to law enforcement, and the FBI has provided no evidence to show that customers have switched providers based on this information. For example, Google's Transparency Report provides detailed information by month and by country on the requests the company receives for customer data and how it responds to them.[21] Similarly, information on how and when providers disclose information on their customers to law enforcement is readily available. *See, e.g.*, Jennifer Lynch, "Social Media and Law Enforcement: Who Gets What Data and When?" *EFF* (Jan. 20, 2011) (discussing and publishing law enforcement guides produced by social media companies that were disclosed in response to one of EFF's FOIA requests);[22] "Cell Phone Location Tracking Public Records Request," ACLU (April 6, 2012) (publishing similar law enforcement guides produced by cell service providers).[23]

Because FBI still fails to provide sufficient evidence to support a claim that any "sources" provided information under an implied grant of confidentiality, this information must be released.

**H.      Defendant Still Fails to Show Material Withheld Under Exemption 7(E) is not Widely Known or that Its Disclosure Would Risk Circumvention of the Law**

Despite filing supplemental declarations and dedicating several additional pages in its Reply to its Exemption 7(E) claims, Defendant still fails to show that its extensive Exemption 7(E) redactions apply solely to information not widely known to the public and are necessary to prevent a risk of circumvention of law. As such, these records must be released.

Cases in this district hold that Defendants must provide "substantial evidence" that a reasonable risk of circumvention exists. *See, e.g.*, *Feshbach*, 5 F. Supp. 2d at 787 (agencies claiming 7(E) exemptions must present "substantial evidence" to survive summary judgment challenges); *Gerstein v. DOJ*, No. 03-04893, 2005 U.S. Dist. LEXIS 41276, *41 (N.D. Cal. Sept. 30, 2005)

---

[21] *See* https://www.google.com/transparencyreport/governmentrequests/ (noting in its "User Data Requests" section at https://www.google.com/transparencyreport/ governmentrequests/US/?p=2011-06 that Google complied in full or in part with 93% of U.S. government requests for customer data between January and June 2011).

[22] https://www.eff.org/deeplinks/2011/01/social-media-and-law-enforcement-who-gets-what.

[23] http://www.aclu.org/protecting-civil-liberties-digital-age/cell-phone-location-tracking-public-records-request.

(Court examined totality of the government's evidence, including lack of documentary evidence or credible testimony); *Gordon v. FBI*, 388 F. Supp. 2d 1028 (N.D. Cal. 2005) (Exemption 7(E) allows the government to withhold documents only if it demonstrates a reasonable risk that criminals will use them to circumvent detection, apprehension or prosecution). Merely positing the possibility of a hypothetical risk of circumvention cannot be sufficient, or else the government could always succeed in justifying any 7(E) withholding, even one where the risk was extremely low.

The government has failed to rebut EFF's arguments that many of the withheld documents are likely to contain techniques that are routine, or that "leap to the mind of the most simpleminded investigator" (*See* Cross-Mot. at 32-34 (citing cases and examples); Def. Reply at 10-13.) Courts regularly reject broad 7(E) claims where "conclusory affidavits submitted by the defendants fail[] to present sufficient facts to carry their burden of showing that the deletions fell within this exemption." *Dunaway v. Webster*, 519 F. Supp. at 1082-1083 (finding, after *in camera* review of the records at issue, that "the techniques sought to be protected . . . are in this court's judgment precisely the type of commonly known investigative techniques which this exemption was not meant to reach." *Id.* at 1083). The Court should do no less here.

FBI's *Vaughn* submission makes it particularly difficult to assess the propriety of its Exemption 7(E) claims, as the FBI regularly claims 7(E) with little or no justification or explanation. For example, FBI withheld large blocks of text and several pages from presentations titled "Preservation of Lawful Intercepts: Challenges and Potential Solutions" and "FBI Efforts to Preserve Electronic Surveillance (ELSUR) Capabilities" (*See*, *e.g.*, Dkt. 41-5 at Bates pp. EFF/Lynch 76-77, 84, 94-95, 101, 107, 108, 114, 120-125, 129, 131-137, 138-141, 749-54). Some of this material has been shared with outside entities, likely in a public forum, such as the April 2010 presentation to the National District Attorneys Association (*id.* at 85-89), and to the 6th National Community Prosecution Conference (*id.* at 131-137). The FBI has withheld other material under Exemption 7E with little or no justification, including an "undated talking points survey titled 'Lawful Enforcement Gaps Survey'" (*id.* at 146-148). This survey was also shared with "other law enforcement agencies." *Id.* Other material was redacted in large blocks or in full under 7(E) from other talking points papers, briefing memos, intelligence notes, and intelligence

assessments (*see, e.g., id.* at 129-30, 142-45, 150-54, 156-61, 163-65, 175 ("talking points summary of what a social networking company is, and what can or can not be obtained with a NSL/Subpoena"), 176-79, 213-16); emails (*see, e.g., id.* at 171, 180, 190-91, 196, 197, 203-04, 212); and "user guides" (*see, e.g., id.* at 173-74). These pages are merely representative of the FBI's over-reliance on Exemption 7(E), and by no means present the entire universe of material inappropriately withheld. Much of this material is or appears to be general rather than specific information on technologies and technical issues and thus either involves techniques that are widely known[24] or would not risk circumvention of the law if the material were released.

DEA and CRIM's productions fare no better. CRIM and DEA argue "release of this information would provide a detailed road map that would permit criminals to evade lawful electronic surveillance . . . ," (Ellis Decl. ¶ 39; Myrick Decl. ¶ 9g), implying that a criminal would be able to piece together bits of information from the responses to these FOIA requests to figure out how to evade government surveillance. However, the court in *Gerstein v. DOJ* rejected a very similar argument presented by the DOJ in its attempts to withhold statistical information on which of its offices used delayed-notice warrants under Patriot Act Section 213. 2005 U.S. Dist. LEXIS 41276. The court found "the notion that criminals will plan illegal activity based on whether a particular USAO has invoked Section 213 to be dubious," and held the DOJ's "conclusory" assertions failed to support its "parade of horribles." *Id.* at  *41; *see also Detroit Free Press v. Ashcroft,* 303 F.3d 681, 709-10 (6th Cir. 2002) (rejecting government's "mosaic intelligence" argument and holding such an argument, taken to its logical conclusion, would allow the government to "operate in virtual secrecy in all matters dealing, even remotely, with 'national security'"). Once can see, even from the two documents that Plaintiff included as exhibits to the Second Lynch Declaration (Exs. 1, 2), that DEA and CRIM are likely applying Exemption 7E to withhold more information than they are entitled to. The components' *Vaughn* submissions describing records withheld in full under Exemption 7E and the additional records Plaintiff has included with this Reply, further prove this point. (*See* Third Lynch Decl., Ex. B.)

---

[24] *See* Pl. Cross-Mot. at 33-34 (citing well-known techniques).

Defendant's assertions that the techniques and technologies discussed in these records are not widely known do not belie the fact that each component has withheld large blocks of text and whole records under Exemption 7(E) that likely contain material of a general nature. By virtue of the FOIA process, Plaintiff cannot access these records to prove this fact beyond doubt, however, this is why the burden falls on government agency defendants in a FOIA lawsuit to show that all material has been properly withheld. Given the broad brush with which Defendant has painted block 7(E) redactions throughout its production and the likelihood that some if not much of the material includes known techniques and technologies, the Court should find the government has failed to show that release of this information would risk circumvention of the law and order the material withheld under 7(E) released.

## I.    Defendants have Failed to Release All Reasonably Segregable Material

Defendant argues that because Plaintiff requested information on problems hampering the government's ability to conduct surveillance, Plaintiff should not be surprised that Defendant has withheld over 3,000 pages of records at issue in this case in part or in full. (Def. Reply at 9-10.) Yet this is not the test for appropriate segregation under the FOIA. To satisfy an agency's burden, it must "describe what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 261 (D.C. Cir. 1977); *see also Nat'l Resources Def. Counsel v. Dep't of Def.*, 388 F. Supp. 2d 1086, 1105 (C.D. Cal. 2005). The components' assertion that they have "provided all 'reasonably segregable' responsive information" (Def. Reply at 9, n.5) fails to line up with the government's improper redactions discussed in Plaintiff's Cross-Motion and above. The government attempts to shift accountability for a failure to comply with FOIA to Plaintiff, which is indicative of the manner in which the government has approached these FOIA requests and this case. The government has drawn out production as long as possible, despite the fact that the number of records actually produced is significantly less than Defendant claimed it had identified

last year;[25] referred records to various components within the DOJ and failed to process or produce those records in time for the parties to address them in this summary judgment proceeding (*see* Def. Reply at 1 n.1; Ex. A (OIP Letter)); withheld material that is clearly not exempt; and finally improperly narrowed the scope of Plaintiff's request. EFF cannot be blamed for asserting its statutory rights to access these records, or for its assertions, in light of Defendant's over-redactions and blasé approach to this case, that Defendant has failed to comply with FOIA's obligation to provide "[a]ny reasonably segregable potion" of the records at issue in this case. *See* 5 U.S.C. § 552(b).

To warrant summary judgment, the government must demonstrate to the Court's satisfaction that every withheld document has had all non-exempt material segregated and released. *See NRDC v. DOD*, 388 F. Supp. 2d at 1096, "Agencies may meet this burden by describing through affidavit, *in a non-conclusory manner*, why such information is not reasonably segregable." *L.A. Times Communs. LLC v. Dep't of Labor*, 483 F. Supp. 2d 975, 986 (C.D. Cal. 2007) (emphasis added); *see also Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State*, 818 F. Supp. 1291, 1300 (N.D. Cal. 1992) (finding boilerplate, conclusory assertions inadequate to permit the Court to make finding on segregability). Because Defendant has not satisfied that burden, it is not entitled to summary judgment.

### J.   This Court's *In Camera* Review May Be Necessary To Ensure Defendant Has Released All Non-Exempt, Segregable Information

Given that EFF filed its first FOIA request three years ago and that all the requests have been in litigation for over a year and a half, the components have had more than enough time to develop specific and detailed *Vaughn* submissions to support their withholdings. The Court should not excuse the deficiencies in Defendant's *Vaughn* submissions, but should follow *Rosenfeld* and other cases and order the material released. *See Rosenfeld*, 57 F. 3d at 807-08; *ACLU of Wash. v. DOJ*, No. 09-0642, 2011 U.S. Dist. LEXIS 26047, at *34 (W.D. Wash. Mar. 10, 2011).

---

[25] *See* Dkt No. 26 at 5-6 (March 3, 2011 Joint CMC Statement (noting FBI identified 1,174 pages of potentially responsive material, while DEA identified 6,000 pages and CRIM identified 10,000 pages).

However, should the Court require additional evidence before ordering the release of the records at issue, EFF asks the Court to conduct an *in camera* review of the records. *See, e.g., ACLU v. ODNI*, No. 10-4419, 2011 U.S. Dist. LEXIS 132503, *39 (S.D.N.Y. Nov. 15, 2011) (finding "limited *in camera* review is both necessary and appropriate in order to satisfy the Court's 'independent responsibility' to conduct *de novo* review"); *ACLU of Wash. v. DOJ*, 2011 U.S. Dist. LEXIS 26047 at *33-34 (requiring a supplemental *Vaughn* index and *in camera* production of many of the documents).

A trial court has broad discretion to review records *in camera* to test the government's exemption claims, 5 U.S.C. § 552 (a)(4)(B), and *in camera* inspection is particularly appropriate where, as here, "the agency affidavits are insufficiently detailed to permit meaningful review of exemption claims . . . and when the dispute turns on the contents of the withheld documents, and not the parties' interpretations of those documents." *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 996 (D.C. Cir. 1998) (internal citations omitted); *see also Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (*per curiam*) ("*in camera* inspection does not depend on a finding or even tentative finding of bad faith").

*In camera* review could be especially appropriate here, where the components have often withheld multi-page documents with only a single sentence supporting the withholding and where Defendant's "outside-the-scope" and "non-responsive" redactions show a tendency to over-redact and withhold responsive, non-exempt records. Therefore, while EFF submits that Defendants have failed to meet their burdens and the records should be disclosed, should this Court have any doubt, EFF suggests that *in camera* inspection of some or all of the records at issue would be appropriate.

## II.     CONCLUSION

For the foregoing reasons, the government's Motion for Summary Judgment should be denied, and EFF's Cross-Motion for Summary Judgment should be granted.

DATED:  May 17, 2012                    Respectfully submitted,


  */s/ Jennifer Lynch*
  Jennifer Lynch
  Mark Rumold
  ELECTRONIC FRONTIER FOUNDATION

454 Shotwell Street
San Francisco, CA  94110
Telephone:  (415) 436-9333
Facsimile:  (415) 436-9993

David L. Sobel *(pro hac vice)*
ELECTRONIC FRONTIER FOUNDATION
1818 N Street, N.W., Suite 410
Washington, DC  20036
Telephone: (202) 797-9009 x104
Facsimile: (202) 707-9066

 Attorneys for Plaintiff
ELECTRONIC FRONTIER FOUNDATION

Case No. 10-cv-04892 RS    REPLY IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2012, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will send notification of such filing to the counsel of record in this matter who are registered on the CM/ECF system.

Executed on May 17, 2012, in San Francisco, California.

*/s/ Jennifer Lynch*
Jennifer Lynch