IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION,<br><br>            Plaintiff,<br>    v.<br><br>DEPARTMENT OF JUSTICE,<br><br>            Defendant.<br>_____/ | No. C 10-4892 RS<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

In this action brought under the Freedom of Information Act ("FOIA"), the parties have brought cross-motions seeking a determination as to the adequacy of the Government's response to two FOIA requests submitted by plaintiff Electronic Frontier Foundation ("EFF") in 2009 and 2010. Because further responses to the FOIA requests are warranted, both motions will be denied without prejudice.

## II. BACKGROUND

<u>The requests</u>

Two separate FOIA requests are at issue in this action, both of which relate generally to the Communications Assistance for Law Enforcement Act (CALEA), 47 U.S.C. §§1001, et seq., a 1994 law designed to aid law enforcement efforts to conduct surveillance of digital telephone networks.

Although CALEA was expanded in 2005 to apply to broadband and certain Voice over IP (VoIP) providers, it expressly excludes the regulation of "information services" providers, and does not require any carrier to decrypt encrypted communications.  According to EFF, in recent years law enforcement interests have advocated expanding CALEA to require all services that enable communications—including encrypted e-mail transmitters, social networking websites, and "peer to peer" messaging services—to be technically capable of complying with wiretap orders, including being able to intercept and unscramble encrypted messages.

The FBI has addressed this subject through a program known as "Going Dark."  While the parties have not explained the exact nature or parameters of that program, there is no dispute that EFF's FOIA requests referring to it by name were adequate to permit the Government to respond.

EFF's first FOIA request (sometimes referred to by the parties as the "Cardozo request") was submitted in May of 2009, solely to the FBI.  It sought (1) "[A]ll records that describe the Going Dark Program"; (2) "[A]ll Privacy Impact Assessments prepared for the Going Dark Program"; and (3) "[A]ll System of Records Notices ('SORNs') that discuss or describe the Going Dark Program."

The second FOIA request ("the Lynch request) was submitted in September of 2010, to (1) the FBI, (2) the DEA, and (3) the Criminal Division of the DOJ.  The Lynch request sought documents "discussing, concerning, or reflecting" six topics:

1. any problems, obstacles or limitations that hamper the DOJ's current ability to conduct surveillance on communications systems or networks including, but not limited to, encrypted services like Blackberry (RIM), social networking sites  like Facebook, peer-to-peer messaging services like Skype, etc.;

2. any communications or discussions with the operators of communications  systems or networks (including, but not limited to, those providing encrypted communications, social networking, and peer-to-peer messaging services), or with equipment manufacturers and vendors, concerning technical difficulties the DOJ has encountered in conducting authorized electronic surveillance;

    3. any communications or discussions concerning technical difficulties the DOJ has encountered in obtaining assistance from non-U.S.-based operators of communications systems or networks, or with equipment manufacturers and vendors in the conduct of authorized electronic surveillance;

    4. any communications or discussions with the operators of communications systems or networks, or with equipment manufacturers and vendors, concerning development and needs related to electronic communications surveillance-enabling technology;

    5. any communications or discussions with foreign government representatives or trade groups about trade restrictions or import or export controls related to electronic communications surveillance-enabling technology;

    6. any briefings, discussions, or other exchanges between DOJ officials and members of the Senate or House of Representatives concerning implementing a requirement for electronic communications surveillance-enabling technology, including, but not limited to, proposed amendments to the Communications Assistance for Law Enforcement Act (CALEA).

### The responses

The Criminal Division of DOJ initially located approximately 8,425 pages of potentially responsive information. It contends that upon further review, very few of the pages turned out to be responsive. It ultimately released one page in full and 6 pages in part, and withheld 51 pages in full. DOJ also referred approximately 500 pages of potentially responsive information to other agencies for processing and possible production to plaintiff.

DEA identified 1036 pages of potentially responsive records, and 570 pages of potentially responsive materials originating from other agencies, which were referred out to those agencies for a direct response to EFF. DEA ultimately released 179 pages in full, 63 pages in part, and withheld 794 pages in full. Finally, the FBI identified a total of 2,662 responsive pages and produced 707 pages in full or part.

## III. DISCUSSION

A. *Withholding of "non-responsive" material*

Plaintiff complains that the DEA, DOJ, and FBI have all withheld portions of documents—by either omitting pages entirely or in some cases, by making redactions on pages—as being non-responsive or "outside the scope" of the requests. The Government defends the omissions, contending that particular material was either created outside the applicable date ranges specified by EFF, or otherwise is not precisely responsive to the requests.

Under FOIA, agencies are required "to construe a FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995). They are "obliged to release any information, subject to the specified exemptions, which relates to the subject of the request or which in *any sense sheds light on, amplifies, or enlarges upon that material* which is found in the same documents." *Dunaway v. Webster*, 519 F. Supp. 1059, 1083. (N.D. Cal. 1981) (emphasis added). In evaluating the propriety of the withholding of materials as non-responsive, the competing policy interests include: (1) the Government should not be discouraged from conducting broad searches to identify *potentially* responsive documents in the first instance, by then being automatically required to produce all such documents, (2) the Government should not be permitted to withhold materials not subject to any exemption merely because it would *prefer* not to disclose the information and can construct a technical argument that it is outside the scope of the request, and (3) the rules should not be set up in a way that would promote a practice of *over*-production, whereby requesting parties would be buried with voluminous materials of little or no relevance.

Additionally, the practice of removing individual pages, or redacting parts of pages, likely serves no purposes of efficiency other than to permit the Government to defer determining whether a specific exemption might apply. At least in theory, a requester could simply submit a new request for production of any material withheld as non-responsive, at which point the Government would be required to make that determination in any event.

Accordingly, balancing these considerations, the Government is directed to conduct a further review of the materials previously withheld as non-responsive. In conducting such review, the presumption should be that information located on the same page, or in close proximity to

undisputedly responsive material is likely to qualify as information that in "any sense sheds light on, amplifies, or enlarges upon" the plainly responsive material, and that it should therefore be produced, absent an applicable exemption. That said, there is no presumption that *all* materials initially identified as "potentially responsive" necessarily must be produced.

2. *Adequacy of Vaughn index*

For documents withheld under a claim of exemption, an agency responding to a FOIA request must provide a "*Vaughn* index." *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), Such an index must: "(1) identify each document withheld; (2) state the statutory exemption claimed; and (3) explain how disclosure would damage the interests protected by the claimed exemption." *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1326 n.1 (9th Cir. 1995). This detailed affidavit "'permit[s] the court system effectively and efficiently to evaluate the factual nature of disputed information.'" *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 149 n. 2 (1989) (quoting *Vaughn,* 484 F.2d at 826).

Here, EFF does not challenge the adequacy of the *Vaughn* indices submitted by the Criminal Division or the DEA. The FBI has provided a very lengthy declaration to support its *Vaughn* index, which at first blush, appears reasonably detailed. As plaintiff points out, however, the large number of different types of documents included in each summary entry in the index, and the fact that multiple exemptions are claimed, makes analysis difficult, despite the veneer of detail. The supporting declaration covers 171 pages (with a great deal of repetition) purportedly explaining the justification for all of the exemptions claims, but does not identify documents by bates numbers or otherwise, further exacerbating the problem.

The DEA index, in contrast, while involving a somewhat smaller number of documents, is organized by what EFF contends are "meaningful function- and topic-based categories." EFF offers the DEA index as an example of one containing the appropriate level of detail, sufficient to "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." *Wiener v. FBI*, 943 F.2d 972, 977 (9th Cir. 1991).

The law does not require that *Vaughn* indices to conform to any specific format or organizational requirements, and the fact that the DEA may have chosen an approach that EFF prefers does not impose any obligation on the FBI to utilize an identical template.  The FBI remains free to structure its *Vaughn* index and supporting declaration in some other manner.  Nevertheless, the existing index is insufficient to provide an adequate foundation for review of the soundness of the exemption claims.   Accordingly, the FBI is directed to provide a revised index as promptly as practical, making a good faith effort to address the issues raised by EFF.   Within 15 days of the date of this order, the parties shall meet and confer to negotiate a time table for the FBI to complete its revised index and for any subsequent motion practice that may remain necessary.  After completing such meet and confer discussions, the parties shall submit a joint status report and/or scheduling stipulation.

## IV.  CONCLUSION

In light of the further production and revised *Vaughn* index ordered herein, the parties cross-motions are denied without prejudice.

Dated: 10/30/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE