STUART F. DELERY
Principal Deputy Assistant Attorney General
MELINDA HAAG
United States Attorney
ELIZABETH J. SHAPIRO
Deputy Branch Director, Federal Programs Branch
Civil Division
NICHOLAS CARTIER, CA Bar #235858
Trial Attorney, Federal Programs Branch
Civil Division
20 Massachusetts Ave NW, 7224
PO Box 883 (US Mail)
Washington, DC 20530
Tel: 202-616-8351
Fax: 202-616-8470
email: nicholas.cartier@usdoj.gov
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | Case No.  10-CV-4892-RS |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S RENEWED MOTION  FOR SUMMARY JUDGMENT** |
| vs. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | **Judge: Hon. Richard Seeborg**<br>**Date:  April 25, 2013**<br>**Place: Courtroom 3, 17th Floor** |

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

    I.  Defendant Did Not Withhold Responsive, Non-Exempt Information. ............................ 2

        A.    Defendant Complied With This Court's Order To
                Conduct A Secondary Review of Certain Material Previously
                Deemed To Be Unresponsive. ........................................................................... 2

        B.    Defendant's Interpretation of Plaintiff's FOIA
                Requests Were Reasonable ............................................................................... 3

        C.    DEA Did Not Withhold Responsive, Non-Exempt Materials ......................... 6

        D.    CRM Did Not Withhold Responsive, Non-Exempt Materials. ....................... 7

        E.    FBI Did Not Withhold Responsive, Non-Exempt Materials .......................... 8

    II.    Defendant Has Provided All Reasonably Segregable,
        Non-Exempt Information. ...................................................................................... 9

    III.    Defendant Has Properly Withheld Information
        Pursuant to Exemption 4. ..................................................................................... 10

    IV.    Defendant Has Properly Withheld Information Under
        Exemption  5 ......................................................................................................... 15

        A.    Defendant Did Not Invoke The Deliberative Process
                Privilege To Withhold Segregable Non-Exempt Factual Material. ............. 15

        B.    Defendant Did Not Invoke The Deliberative Process Privilege To
                Withhold Final Agency Positions ................................................................. 17

        C.    EFF Is Wrong That DEA And FBI Improperly Applied The
                Deliberative Process Privilege To Withhold Information
                Shared With Personnel Outside The Agency. .............................................. 19

        D.    FBI Did Not Improperly Invoke The Deliberative Process
                Privilege To Withhold Draft Documents. .................................................... 22

E.      The Criminal Division Properly Applied The Attorney Work Product
        Doctrine. ....................................................................................................... 23

V.      Defendant Has Properly Withheld Sensitive Law
        Enforcement Information Pursuant to Exemption 7 ............................................. 24

        A.      Defendant Has Properly Withheld Information Under Exemption 7(A). .... 24

        B.      FBI Properly Withheld Information Under Exemption 7(D). ...................... 26

        C.      Defendant Properly Withheld Information
                Pursuant to Exemption 7(E). ...................................................................... 27

CONCLUSION .................................................................................................................... 30

STUART F. DELERY
Principal Deputy Assistant Attorney General
MELINDA HAAG
United States Attorney
ELIZABETH J. SHAPIRO
Deputy Branch Director, Federal Programs Branch
Civil Division
NICHOLAS CARTIER, CA Bar #235858
Trial Attorney, Federal Programs Branch
Civil Division
20 Massachusetts Ave NW, 7224
PO Box 883 (US Mail)
Washington, DC 20530
Tel: 202-616-8351
Fax: 202-616-8470
email: nicholas.cartier@usdoj.gov
Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| ELECTRONIC FRONTIER FOUNDATION, | Case No.  10-CV-4892-RS |
| Plaintiff, | **DEFENDANT'S OPPOSITION TO PLAINTIFF'S RENEWED CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| DEPARTMENT OF JUSTICE, | |
| Defendant. | |
| | **Judge: Hon. Richard Seeborg**<br>**Date:  April 25, 2013**<br>**Place: Courtroom 3, 17th Floor** |

# **INTRODUCTION**

In its opening brief in support of its renewed motion for summary judgment, Defendant demonstrated that the Criminal Division ("CRM"), Drug Enforcement Administration ("DEA"), and the Federal Bureau of Investigation ("FBI") have produced all reasonably segregable, nonexempt records that were responsive to Plaintiff's FOIA requests.  *See* Def.'s Renewed Motion for Summary Judgment ("Def's Renewed MSJ") (ECF No. 63).  In response, Plaintiff's combined Cross-Motion and Opposition largely repeats the arguments made by EFF in the first round of summary judgment briefing and offers no persuasive reasons for why this Court should not award summary judgment to the Government.  *See* Pl.'s Renewed Cross-Motion for Summary Judgment and Opposition to Defendant's Renewed Motion for Summary Judgment ("Pl.'s Renewed MSJ") (ECF No. 64).

The Government's reply addresses the issues that remain in dispute between the parties.[1] First, whether the components properly determined that certain documents were not responsive to Plaintiff's FOIA requests; second, whether the components have met their responsibilities to provide all non-exempt information that can be reasonably segregated from exempt information; and third, whether the components properly invoked Exemptions 4, 5 and 7(A) and (E), and whether FBI properly invoked 7(D).[2]  As shown below, Defendant is now entitled to summary

---

[1] EFF has now withdrawn its challenge to the adequacy of FBI's *Vaughn* index, the reasonableness of the components' searches and their use of Exemptions 1, 2, 3, 6, 7(C) or 7(F), as well as CRM's and DEA's use of Exemption 7(D), and the FBI's assertion of the attorney-client privilege.  *See* Def's Renewed MSJ at 3; Pl.'s Renewed MSJ at 7 n.15.

[2] In support of this reply, Defendant relies upon the declarations submitted with its Renewed Motion for Summary Judgment.  *See* Fifth Declaration of David M. Hardy of the Federal Bureau of Investigation ("Fifth Hardy Decl.") (ECF 63-1); Fourth Declaration of Katherine L. Myrick of the Drug Enforcement Administration ("Fourth Myrick Decl.") (ECF 63-2); Second Declaration of John E. Cunningham III of the Criminal Division ("Second Cunningham Decl.") (ECF 63-3).  In addition, the Government relies upon the following declarations submitted in

judgment with respect to the materials found to be exempt by the components.[3]

## ARGUMENT

### I.     Defendant Did Not Withhold Responsive, Non-Exempt Information.

EFF argues that the components have improperly withheld information concerning "problems, obstacles and limitations" that have hampered the components' ability to conduct electronic surveillance as "outside the scope" of its requests.  *See, e.g.*, EFF's Renewed MSJ at 9. That is not correct.   Moreover, EFF has ignored the components' explanations for why it treated particular information to be outside the scope of its requests.

#### A.     Defendant Complied With This Court's Order To Conduct A Secondary Review of Certain Material Previously Deemed To Be Unresponsive.

EFF argues that the components did not adequately comply with this Court's order to conduct a secondary review of certain materials that were previously determined by the components to be unresponsive to Plaintiff's FOIA requests.  Pl.'s Renewed MSJ at 7. Specifically, the Court directed the components to "conduct a review of pages that were previously withheld in full or part from otherwise responsive documents based on the components' prior determination that the information in question was outside the scope of Plaintiff's FOIA requests." 11/27/12 Order (ECF No. 62) at 2.  The declarations submitted in support of Defendant's renewed

support of its previous Opposition to Plaintiff's Partial Motion for Summary Judgment seeking expedited processing and the declarations and Vaughn indexes submitted in support of Defendant's first Motion for Summary Judgment.  *See* First Hardy Decl. (ECF No. 19-1); First Ellis Decl. (ECF No. 19-2); First Myrick Decl. (ECF No. 19-3); Second Ellis Decl. (ECF No. 39-1); CRM's Vaughn Index (ECF No. 39-2); Second Myrick Decl. (ECF No. 40); DEA's Vaughn Index (Exhibit J to Second Myrick Decl.); Second Hardy Decl. (ECF No. 41); Third Hardy Decl. (Exhibit K to Second Myrick Decl.); Fourth Hardy Decl. (ECF No. 52); Third Myrick Decl. (ECF No. 53); First Cunningham Decl. (ECF No. 54).

[3] As noted in Defendant's opening brief, the Government's motion does not address certain materials that the components referred to other government entities for processing.   It is the understanding of Government counsel that EFF is evaluating whether to challenge the adequacy of the processing decisions made by other government entities.  *See* Def.'s Renewed MSJ at 5 n.3.

motion for summary judgment expressly confirm that the components completed this review and concluded that their prior scoping determinations were correct. *See* Fifth Hardy Decl. (ECF 63-1) ¶ 7; Fourth Myrick Decl. (ECF 63-2) ¶¶ 5-6; Second Cunningham Decl. (ECF 63-3) ¶ 4. EFF is mistaken that "the government appears to have ignored the Court's direction that 'the presumption should be that information located on the same page, or in close proximity to undisputedly responsive material is likely to qualify as information" that should be produced, absent an applicable exemption. Pl.'s Renewed MSJ at 7 (quoting 10/30/12 Order at 4-5). As the Court made clear, this was only a presumption, not a requirement that such information be treated as responsive. *See* 10/30/12 Order at 5. Here, the components simply confirmed that their original scoping decisions were correct.

Notwithstanding this fact, pursuant to its administrative discretion, DEA released 14 pages that it deemed to be outside the scope of Plaintiff's FOIA request. Fourth Myrick Decl. ¶ 6. FBI processed all previous "outside the scope" redactions made to a page if the page also contained responsive information. Fifth Hardy Decl. ¶ 7. However, it determined that this information was exempt from release. *Id.* While CRM did not release the non-responsive information put at issue by EFF, it has previously provided detailed explanations for why it deemed this information to be outside the scope of Plaintiff's FOIA request. *See* Cunningham Decl. ¶¶ 4-7.

In short, the components complied with this Court's order, but a dispute remains between the parties regarding the proper interpretation of EFF's requests.

### B.   Defendant's Interpretation of Plaintiff's FOIA Requests Were Reasonable.

Unless exempt, an agency must provide records in response to a FOIA request that "reasonably describes such records." 5 U.S.C. § 552(a)(3)(A)(i). Courts thus assess the adequacy of an agency's interpretation of a FOIA request based on a reasonableness standard. *See, e.g.,*

*Judicial Watch, Inc. v. DOD*, No. 05-00390 (HHK), 2006 WL 1793297, at *3 (D.D.C. Jun. 28, 2006) (agency reasonably interpreted request for names of corporations involved in particular activity not to include all documents regarding that activity).   Furthermore, "[a]n agency may decide to limit the scope of an ambiguous request as long as the narrowed scope is a reasonable interpretation of what the request seeks."  *See Wilson v. U.S. Dep't of Transportation*, 730 F. Supp. 2d 140, 154-55 (D.D.C. 2010); *Mogenhan v. Dep't of Homeland Security*, No. 06-2045, 2007 WL 2007502, at *3 (D.D.C. July 10, 2007); *Adamowicz v. IRS*, 552 F. Supp. 2d 355, 362 (S.D.N.Y. 2008).  Moreover, an agency is required to read a FOIA request as drafted, "not as either [an] agency official or [requester] might wish it was drafted."  *See Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984).

Because EFF contends that the components withheld information that was within the scope of its September 28, 2010 request, *see* Pl.'s Renewed MSJ at 8, it is helpful to repeat the language of the request in its entirety.  The September 2010 request sought "all agency records created on or after January 1, 2006 (including, but not limited to, electronic records) discussing, concerning, or reflecting":

1. any problems, obstacles or limitations that hamper the DOJ's current ability to conduct surveillance on communications systems or networks including, but not limited to, encrypted services like Blackberry (RIM), social networking sites like Facebook, peer-to-peer messaging services like Skype, etc.;

2. any communications or discussions with the operators of communications systems or networks (including, but not limited to, those providing encrypted communications, social networking, and peer-to-peer messaging services), or with equipment manufacturers and vendors, concerning technical difficulties the DOJ has encountered in conducting authorized electronic surveillance;

3. any communications or discussions concerning technical difficulties the DOJ has encountered in obtaining assistance from non-U.S.-based operators of communications systems or networks, or with equipment manufacturers and vendors in the conduct of authorized electronic surveillance;

4.      any communications or discussions with the operators of communications systems or networks, or with equipment manufacturers and vendors, concerning development and needs related to electronic communications surveillance-enabling technology;

5.      any communications or discussions with foreign government representatives or trade groups about trade restrictions or import or export controls related to electronic communications surveillance-enabling technology;

6.      any briefings, discussions, or other exchanges between DOJ officials and members of the Senate or House of Representatives concerning implementing a requirement for electronic communications surveillance-enabling technology, including, but not limited to, proposed amendments to the Communications Assistance for Law Enforcement Act (CALEA).

September 28, 2010 Request, Ex. 1 to Declaration of Kristin L. Ellis ("First Ellis Decl.") at 2 (ECF No. 19-2).

Defendant treated information that "discuss[ed], concern[ed], or reflect[ed] specific or technical problems that hamper[ed] the [component's] current ability to conduct surveillance on communication systems or networks" as within the scope of EFF's request. *See* Third Myrick Decl. ¶ 7 (ECF No. 53); Cunningham Decl. ¶ 5; Fourth Hardy Decl. ¶ 7. At the same time, information that "consisted solely of internal proposals to amend current surveillance law," which did not also address problems conducting electronic surveillance, was deemed to be non-responsive. *See* Third Myrick Decl. ¶ 7 (ECF No. 53); Fourth Hardy Decl. ¶ 7. As seen below, this interpretation is the basis for most of the scoping determinations that remain in dispute between the parties. It was reasonable to treat such internal DOJ discussions as falling outside the scope of Plaintiff's request for information regarding problems conducting electronic surveillance. In paragraph 1, Plaintiff did not ask for internal DOJ discussions about proposed responses and legislative solutions untethered to discussions of "problems, obstacles or limitations that hamper the DOJ's current ability to conduct electronic surveillance." *See* September 2010 Request ¶ 1,

Ex. 1 to Declaration of Kristin L. Ellis ("First Ellis Decl.") at 2 (ECF No. 19-2).  It was only in paragraph 6 of the request that EFF sought "briefings, discussions, or other exchanges between DOJ officials and members of the Senate or House of Representatives" regarding legislative solutions, including "proposed amendments to the Communications Assistance for Law Enforcement Act ('CALEA')."  *Id.* ¶ 6. Ex. 1.  While EFF could have requested all internal DOJ deliberations concerning discussions about proposed solutions or legislative responses to the Going Dark issue, it chose not to do so.  September 2010 Request ¶ 6.  It is possible that EFF did so because it realized that purely internal pre-decisional deliberations within DOJ on this topic would be protected by the deliberative process privilege.  Whatever the reason, however, Defendant's interpretation of the plain language of the request was reasonable.  *Miller*, 730 F.2d at 777 (agency required to read request as drafted, "not as either [an] agency official or [requester] might wish it was drafted"); *Wilson*, 730 F. Supp. 2d at 154-55 (where multiple interpretations are possible because request is ambiguous, agency is only required to provide reasonable interpretation of request).

Below, Defendant addresses EFF's specific challenges to the components' scoping decisions.

**C.     DEA Did Not Withhold Responsive, Non-Exempt Materials.**

EFF challenges DEA's decision to withhold 20 pages from several slide presentations as outside the scope of its September 2010 request.[4]  EFF's Renewed MSJ at 8-9.  EFF appears to argue that because the slides were contained in presentations that also contained responsive

---

[4] These slides were withheld from presentations identified in Category 5C of DEA's Vaughn Index.  Third Myrick Decl. ¶ 3.  Originally, DEA withheld 29 pages of slides as being unresponsive to Plaintiff's FOIA request.  However, after conducting the secondary review ordered by this Court of the materials, DEA released 9 pages of the slides pursuant to its administrative discretion.  *See* EFF's Renewed MSJ at 9.

information, the withheld slides must also be responsive. *Id*.  That is not the case.  As DEA has

explained, each slide was "self-contained, which allowed DEA to review and scope the content of

the slide against Plaintiff's six-item FOIA request."  Third Myrick Decl. ¶ 7.  The particular slides

from these presentations that were found to be non-responsive fell into two categories:  "(1) slides

containing internal legislative or policy discussions and proposed strategies regarding electronic

surveillance that do not pertain to specific or technical problems that hamper the DEA's current

ability to conduct electronic surveillance on communications systems or networks; and (2) slides

containing names, titles, and phone numbers of points of contacts."  *Id*. (discussing Bates

numbered slides 26-27, 44, 48, 55, 58, 61-62, 71-77, 81, 84-85, 90-95, 126, 148-149, 191, and

203).   For the reasons explained above, this information is not responsive to Plaintiff's September

28, 2010 request.[5]

### D.   <u>CRM Did Not Withhold Responsive, Non-Exempt Materials</u>.

EFF challenges certain documents withheld by CRM as falling outside the scope of

Plaintiff's request.  It contends that CRM improperly withheld several paragraphs and one full page

from a five-page email chain entitled "24/7 Trace of Threat Email" as outside the scope of

Plaintiff's request.  Pl.'s Renewed MSJ at 9 (citing CRM-000055-59).  CRM has explained that

"the portions of CRM-000055-59 marked as non-responsive . . . consist solely of server log lists."

Cunningham Decl. ¶ 5 (ECF No. 54).  "The server logs are outside the scope of the Plaintiff's

request because they do not discuss, concern, or reflect specific or technical problems that hamper

CRM's current ability to conduct surveillance on communications systems or networks."  *Id*.

EFF also complains that CRM deemed as unresponsive "two paragraphs of handwritten

---

[5] EFF states that is unclear from DEA's Vaughn index why the 20 pages were withheld. However, as explained by DEA, non-responsive pages were not identified in DEA's Vaughn index. Instead, the Bates numbers of the unresponsive slides were identified in the Third Myrick Decl. ¶ 6.

notes from a March 18, 2010 meeting with 'Main Justice' on 'Going Dark.'" Pl.'s Cross MSJ at 9. However, as the Criminal Division explained in a declaration filed back on April 27, 2012, CRM decided to treat this information as responsive but clarified its intention to withhold the information pursuant to Exemption 5 and 7(E). Cunningham Decl. ¶ 4. As explained by CRM, "the handwritten notes contain a discussion concerning a particular surveillance problem and offer a proposed solution — they are clearly both predecisional and deliberative." *Id*. Thus, the information was properly protected under both Exemption 5 and 7(E).[6]

CRM's April 27, 2012 declaration contains a detailed response to the materials EFF contended were improperly withheld as outside the scope of its requests. *See* Cunningham Decl. ¶¶ 4-7. The Court is respectfully referred to the declaration, which shows that EFF is mistaken when it claims that CRM has failed to respond to the issues it raised in its original Cross-Motion. EFF's Renewed MSJ at 10.

**E.    FBI Did Not Withhold Responsive, Non-Exempt Materials.**

As it did in its original motion for summary judgment, EFF argues that FBI improperly withheld over 100 pages of records as outside the scope of its requests. EFF's Renewed MSJ at 8. FBI has already explained the basis for its scoping decisions with respect to the information put at issue by EFF. As FBI's April 27, 2012 declaration explained, the information in question was not

---

[6] EFF states that CRM "may also be withholding other information as not responsive." EFF's Cross MSJ at 9. According to EFF, "[f]or several documents the agency appears to be claiming an exemption for only a portion of the document, even though it withheld the entire document in full." *Id*. The only example given is CRM's decision to withhold 12 lines of text from a two-page document (CRM 000013-14) that addressed particular limitations on the Government's ability to lawfully intercept certain communications. *Id*. EFF's complaint is that it is not clear from CRM's Vaughn index "whether the two pages only contain 12 lines of text or whether they contain more text but the agency only chose to claim exemptions for those 12 lines (without noting specifically) [that] the other text [is] not responsive." *Id*. However, CRM has already clarified that the entire two-page document was treated as responsive but was withheld in full pursuant to Exemption 5 and 7(E). Cunningham Decl. ¶¶ 6, 8.

responsive to either of Plaintiff's FOIA requests.  Fourth Hardy Decl. ¶¶ 7-8; *see also* Fifth Hardy

Decl. ¶ 7.  First, the materials were not responsive to Plaintiff's initial May 21, 2009 request, which

was directed only to FBI and sought Bureau records related to the "Going Dark" program.[7]

Consistent with standard FOIA practice, *see* 28 C.F.R. 16.4(a), FBI determined that the materials

were not responsive to this request because they were generated after FBI began its search for

responsive records in 2009.  Fourth Hardy Decl. ¶¶ 7-8.  The redacted information was also not

responsive to Plaintiff's September 28, 2010 request because it "consisted solely of internal

proposals to amend current surveillance law."  *Id*.  For the reasons discussed above, these scoping

decisions were based on a reasonable interpretation of Plaintiff's requests.

## II.     Defendant Has Provided All Reasonably Segregable, Non-Exempt Information.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt under this

subsection."  5 U.S.C. § 552(b).  This provision, however, does not require the disclosure of non-

exempt information that would be meaningless.  *See, e.g.*, *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402

F. Supp. 2d 211, 220-21 (D.D.C. 2005).  In addition, "[a]gencies are entitled to a presumption that

they complied with their obligation to disclose 'any reasonably segregable portion of a record.'"

*Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 382 (D.D.C. 2007) (quoting 5 U.S.C.

§ 552(b)).

The components have each represented in their declarations that they engaged in a line-by-

line review of all responsive records and that they provided Plaintiff with all reasonably

---

[7] The "Going Dark" request sought documents from 2007 to the present concerning: (1)
"[A]ll records that describe the Going Dark Program"; (2) "[A]ll Privacy Impact Assessments
prepared for the Going Dark Program"; and (3) "[A]ll System of Records Notices ('SORNs') that
discuss or describe the Going Dark Program."  *Id.* at 2-3.  *See* Exhibit A to Declaration of David
M. Hardy ("First Hardy Decl.") (ECF No. 19-1).

segregable, non-exempt information.[8]  Despite these representations, EFF contends that "it is a near certainty that Defendant has withheld more information than is otherwise justifiable."  EFF's Renewed MSJ at 30.  But EFF offers no persuasive reason to think so.  As the produced pages to EFF show, the components have carefully applied redactions in order to ensure the release of all reasonably segregable, non-exempt information to Plaintiff.  *See, e.g.*, ECF No. 41-4 (EFF/Cardozo 67-69).  It is also no surprise that much of the information sought by EFF has been withheld given that Plaintiff's request sought information about problems hampering DOJ's current ability to conduct electronic surveillance, which effectively ensured that much of what Plaintiff sought would be exempt under, *inter alia*, Exemption 7(E), since disclosure of this factual information risks circumvention of the law.  *See infra*, Section V.

As the components' declarations, Vaughn indices and annotated productions demonstrate, the components have complied with their obligations to provide all reasonably segregable, non-exempt information.  Defendant will address EFF's additional exemption-specific segregability arguments below.

## III.    Defendant Has Properly Withheld Information Pursuant to Exemption 4.

Exemption 4 authorizes withholding "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  To withhold information under Exemption 4, the government agency must demonstrate that the materials in question contain "(1) commercial and financial information, (2) obtained from a person or by the

---

[8] *See* Second Ellis Decl. ¶ 30 ("CRM conducted an exacting, line-by-line review of the records located during our wide-ranging search to identify any non-exempt information that could reasonably be segregated and released without adversely affecting the Government's legitimate law enforcement interests."); Second Myrick Decl. ¶ 9j (stating that "[a]ll responsive pages were examined to determine whether any reasonably segregable information could be released"); Second Hardy Decl. ¶ 22 (stating that "FBI has taken all reasonable efforts to ensure that no segregable, nonexempt portions were withheld from plaintiff").

government, (3) that is privileged or confidential." *GC Micro Corp. v. Def. Logistics Agency*, 33

F.3d 1109, 1112 (9th Cir.1994); *see also Critical Mass Energy Project v. Nuclear Regulatory*

*Comm'n*, 975 F.2d 871, 879 (D.C.Cir.1992) (en banc) ("financial or commercial information

provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if

it is of a kind that would customarily not be released to the public by the person from whom it was

obtained.").

   Commercial or financial matters are "confidential" for purposes of this exemption if

disclosure of the information is likely to have either of the following effects: it will (1) "impair the

Government's ability to obtain necessary information in the future; or (2) [ ] cause substantial harm

to the competitive position of the person from whom the information was obtained."[9]   *GC Micro*

*Corp.*, 33 F.3d at 1112.  Here, both prongs provide separate and independent grounds to support

the FBI's and DEA's use of Exemption 4.  This is because the information withheld under

Exemption 4 was provided by the companies voluntarily to DEA and FBI, and the companies have

represented to the Government that disclosure of their information would both inhibit the

government's ability to receive similar information in the future and would result in substantial

competitive injury to the companies.

   As an initial matter, EFF argues that the declarations offered by the components in support

of the use of Exemption 4 are inadmissible because they contain hearsay, since the government

declarants repeat information that was provided to them by the companies involved.  EFF's

Renewed MSJ at 13.  The Ninth Circuit has previously rejected this argument and stated that, for

---

[9]   The government need not show that releasing the documents would cause "actual
competitive harm."  *Lion Raisins Inc. v. United States Dep't of Agriculture*, 354 F.3d 1072, 1079
(9th Cir. 2004).  "Rather, the government need only show that there is (1) actual competition in the
relevant market, and (2) a likelihood of substantial competitive injury if the information were
released."  *Id*.

purposes of Exemption 4,  "[c]ourts can rely solely on government affidavits so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim."  *Lion Raisins*, 354 F.3d at 1079; *see also Gerstein v. DOJ*, No. 03-4893, 2005 U.S. Dist. Lexis 41276, at *13-14 (N.D. Cal. Sept. 30, 2005) (rejecting argument that declaration was inadmissible because it contained hearsay; rather, the government's declaration "permissibly includes facts relayed from individuals who had first-hand knowledge"); *Barnard v. DHS*, 598 F. Supp. 2d 1, 19 (D.D.C. 2009) (rejecting argument that declarations contained inadmissible hearsay because "FOIA declarants may include statements in their affidavits based on information that they have obtained in the course of their official duties").

EFF is also wrong that the declarations offer only "conclusory restatements of speculative expected harm."  EFF's Renewed MSJ at 11.  As shown below, the declarants based their statements on information provided by the relevant companies.  This information is specific and detailed and makes clear that the information in question is "confidential" for purposes of Exemption 4.  *See Bowen v. U.S. Food & Drug Admin*., 925 F.2d 1225, 1227 (9th Cir. 1991) (holding that affidavits that described documents withheld, the statutory exemptions claimed, and the specific reasons for the agency's withholding provided adequate factual basis for application of "trade secrets" exemption).

**DEA Materials.**  DEA invoked Exemption 4 to protect information voluntarily provided by five companies to DEA regarding their internal operations, technical and product capabilities, and compliance plans that was used to help DEA solve particular intercept issues encountered during

electronic surveillance operations.[10] Third Myrick Decl. ¶ 8.

The companies at issue explained that the information provided to DEA is not customarily released to the public and that release of the information "would adversely impact DEA's ability to obtain any such information in the future." Third Myrick Decl. ¶¶ 8-9. According to DEA, the companies' statements that disclosure would inhibit cooperation in the future is "particularly problematic" because "[w]ithout the cooperation of the companies, DEA would have been unable to legally compel the companies to provide this type of proprietary information for the purpose of solving particular intercept issues." Third Myrick Decl. ¶¶ 8-9. These representations satisfy the requirements for treating material as "confidential" within the meaning of Exemption 4. *See GC Micro Corp.*, 33 F.3d at 1112 (material is "confidential" under Exemption 4 if it is likely to "impair the Government's ability to obtain necessary information in the future"); *see also Critical Mass Energy Project*, 975 F.2d at 879 ("financial or commercial information provided to the Government on a voluntary basis is 'confidential' for the purpose of Exemption 4 if it is of a kind that would customarily not be released to the public by the person from whom it was obtained.").

Furthermore, DEA explains that the objections raised by the companies, all of which operate in the communications market, demonstrate that disclosure of their proprietary information would damage their competitive positions. Third Myrick Decl. ¶ 10. This provides a separate reason for treating the information as "confidential." One company stated that, given the highly competitive nature of the communications market, which is characterized by a small number of competitors, the disclosure of the proprietary information provided to DEA "could readily enable a competitor to differentiate its product, services, technology, or market position, and seek a higher percentage of the relevant market." *Id.* ¶ 10. Therefore, because the release of this information is

---

[10] Four of these pages are also exempt under Exemption 7D as they contain information supplied to DEA under an express, confidentiality agreement. Second Myrick Decl. ¶ 21b(2).

likely to cause substantial competitive injury, it was properly withheld under Exemption 4.  *GC Micro Corp.*, 33 F.3d at 1112; *Lion Raisins*, 354 F. 3d at 1079.

**FBI Materials**.  FBI invoked Exemption 4 to protect proprietary information submitted by the RAND Corporation describing a proposed contract relating to the "FBI's Going Dark Initiative Surveillance Analyst Project."  Fourth Hardy Decl. ¶ 10.  FBI has supported its Exemption 4 withholding of RAND Corporation documents based on representations made by the company that the cost projections and other information it provided in its proposed contract to FBI were confidential, proprietary information.  Fourth Hardy Decl. ¶ 11 (noting that "draft proposal specifically states that RAND expects its information to remain confidential under the restrictions provided in the proposed contract").  In addition, as FBI explains, "[d]isclosure of specific details of RAND's project proposal and cost analysis would give competitors an unfair advantage over RAND in developing requirements, counter proposals and lower cost analyses that would undermine RAND's ability to compete for contracts."  *Id*.  Consequently, disclosure of the information would likely discourage companies from making similar contract proposals to FBI "out of concern that their proprietary information would become publicly available to competitors."  *Id*.  Because disclosure would likely result in competitive injury to RAND and prevent FBI from obtaining similar information in the future, the material was properly treated as "confidential" under Exemption 4.  The Ninth Circuit has previously extended the protections of Exemption 4 to this kind of commercial, proprietary information, which could be used by competitors to undercut a rival's prices.  *See Lion Raisins*, 354 F.3d at 1081 (upholding use of Exemption 4 for information that raisin company could use to cut its prices in order to underbid other companies); *see also Gulf & W. Indus. v. United States*, 615 F.2d 527, 530 (D.C. 1979) (holding that information that would permit competitors to estimate and undercut bids causes

"substantial competitive harm").

As seen above, FBI and DEA properly withheld information under Exemption 4 because release of the information will likely inhibit the components' ability to obtain such information in the future and creates a likelihood of substantial competitive harm.

## IV.     Defendant Has Properly Withheld Information Under Exemption 5.

The deliberative process privilege applies to "decisionmaking of executive officials generally," and protects documents containing deliberations that are part of the process by which governmental decisions are formulated. *In re Sealed Case*, 121 F.3d 729, 737, 745 (D.C. Cir. 1997). A document may be withheld on the basis of the deliberative process privilege if it is both pre-decisional and deliberative. *Nat'l Wildlife Federation v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988). A document is "predecisional" if it is "generated before the adoption of an agency policy" and "deliberative" if it "reflects the give-and-take of the consultative process." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). The privilege "thus covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.*

Below, Defendant responds to EFF's arguments that it has improperly invoked the deliberative process privilege to withhold purely factual material, final agency positions, and documents shared with non-Executive personnel. Defendant also responds to EFF's argument that FBI has improperly invoked the deliberative process privilege to withhold drafts, and that the Criminal Division improperly invoked the attorney work product privilege.

### A.     Defendant Did Not Invoke The Deliberative Process Privilege To Withhold Segregable Non-Exempt Factual Material.

EFF states that given the number of pages to which the components have applied the

deliberative process privilege, "it is a near-certainty" that the components have improperly withheld segregable, non-exempt factual material.  EFF's Renewed  MSJ at 19.  As noted above, a component's segregability determinations are entitled to a presumption of regularity, *see Boyd*, 475 F.3d at 382, and here the components have provided sworn declarations stating that all reasonably segregable factual information was provided to EFF.  Second Ellis Decl. ¶ 30; Second Myrick Decl. ¶ 9j; Second Hardy Decl. ¶ 22.  In addition, most the records withheld under the deliberative process privilege were also withheld under other exemptions, including Exemption 7(E), which expressly protects factual information whose disclosure could risk circumvention of law.  *See, e.g.,* Second Hardy Decl. ¶ 84; Second Myrick Decl. ¶ 9(g).  Given the overlap between Exemptions 5 and 7, it is unsurprising that substantial amounts of factual material regarding the components' problems conducting electronic surveillance were withheld. [11]

EFF's argument is based on mere speculation that the components have improperly applied the deliberative process privilege to withhold non-deliberative and segregable factual material, and the two examples it offers in the text of its brief do not substantiate this claim.  For instance, EFF takes issue with DEA's application of Exemption 5 to a "Case Example Discussion Paper."  Pl.'s Renewed MSJ at 20 (citing DEA 4 48-52).  According to EFF, "[n]othing in DEA's description suggests that these case studies are 'deliberative' in any way; thus, the factual portions of these case summaries cannot be withheld under Exemption 5."  *Id.*  In reality, DEA clearly explained why Exemption 5 was applied to the document.  "Concerning Exemption 5, the discussion paper was prepared by a DEA official, representing the views of DEA, at the request of the Department for the consideration and use of a DOJ policy working group."  Second Myrick Decl. ¶ 18b.

---

[11] Generally, "factual summaries do not qualify as deliberative," but facts may nonetheless be withheld under Exemption 5 if releasing them would reveal the mental processes of agency employees or deter the agency from gathering such information.  *See Wolfe v. U.S. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988).

"Release would be tantamount to divulging DEA's deliberations regarding what specific intercept problems are worthy of consideration at the Department level." *Id.*  Furthermore, DEA's *Vaughn* index explains that this information was also withheld under Exemption 7(D), (E) and (F), which demonstrates that there was no requirement to segregate out factual information from the document.  *See* DEA Vaughn Index at 9.

EFF also complains about DEA's use of Exemption 5 to withhold an "Issue and Proposal Matrix."  Pl.'s Renewed MSJ at 20.  EFF again ignores the explanation for why DEA applied Exemption 5 to the document.  According to DEA, the matrix "was antecedent to the adoption of a formal agency strategy" and "is highly deliberative in content as it provides the opinion and analysis of the program expert about specific technical intercept impediments juxtaposed against existing statutory and regulatory frameworks; and includes proposals for legislative and policy change, none of which were specifically adopted by DEA or DOJ leadership."  Second Myrick Decl. ¶ 11c.  In addition, the entire document was properly withheld under Exemption 7(E) because it addressed "several technical intercept impediments, including comments on the exploitation of such impediments by drug-trafficking organizations to evade detection."  *Id.*  As noted, there is no requirement to segregate out factual information to which Exemption 7(E) is properly applied.

In sum, EFF's argument that Defendant failed to properly segregate out non-exempt factual information to which it applied the deliberative process privilege is unfounded, ignores the specific explanations for withholding these documents provided in the components' declarations and Vaughn indexes, and is at odds with the presumption of regularity afforded to an agency's segregability decisions.

### B.   Defendant Did Not Invoke The Deliberative Process Privilege To Withhold Final Agency Positions.

EFF contends that FBI and DEA improperly invoked the deliberative process privilege to

withhold documents reflecting final agency positions or opinions.  EFF's Renewed MSJ at 17-18.

In support, EFF contends that DEA and FBI "talking points" memos and "Question and Answers

(Q and As)" likely reflect final agency positions.  *Id.* at 17-18.  That is not the case.

The declarations provided by FBI and DEA expressly state that the "talking points" memos,

otherwise known as "discussion papers," "do not reflect final agency action or decision."  Second

Hardy Decl. ¶ 46; Second Myrick Decl. 9c; *see also* Fourth Hardy Decl. ¶ 12 (stating that "FBI has

not applied the deliberative process privilege to withhold documents reflecting final agency

positions").

With respect to DEA's Q&A put at issue by EFF in its brief, Pl.'s Renewed MSJ at 18,

DEA explained that there were several draft versions of the document that contained "editorial

comments and/or textual edits."  Second Myrick Decl. ¶ 23.  DEA also explained that the

document was prepared by a subordinate for Acting Administrator Leonhart to prepare to testify

before Congress, but "the content of these drafts were not disclosed in public testimony."  *Id.*

According to DEA, "[r]elease of this draft, advisory material would diminish efficient preparation

of the DEA Administrator in formulating DEA policy and positions before Congress as well as

generate public confusion as they do not relate to final agency actions."  *Id.*  Thus, contrary to

EFF's claims, the Q&A did not embody a final agency action, and instead was a predecisional and

deliberative document and hence was properly protected under the deliberative process privilege.

*See* Coastal States, 617 F.2d at 866.

EFF also challenges DEA's withholding of a two-page internal bulletin, which, according

to EFF, likely represents the final position of the DEA.  Pl.'s Renewed MSJ at 17 (discussing DEA

7-1-7).  But as DEA explains, the draft bulletin, which addressed a particular intercept issue,

reflected the thoughts and opinions of a subordinate that were not ultimately adopted by DEA.

Third Myrick Decl. ¶11. "Thus, information contained in the bulletin did not represent the final agency position of DEA.  Accordingly, DEA properly withheld the bulletin under Exemption 5 because it was an internal agency document containing deliberative information."  *Id.*

With respect to FBI, EFF contends that the Bureau has improperly applied the deliberative process privilege to EFF/Lynch 329-331.  Pl.s' Renewed MSJ at 17.  The FBI's original description of the document as containing "definitions" may have implied that these "definitions" were adopted as agency standards.  Fourth Hardy Decl. ¶ 16.  In reality, however, this was a "discussion paper article" that was part of FBI's ongoing deliberations about how to formulate policy in response to challenges experienced by law enforcement in conducting electronic surveillance.  *Id.*  Importantly, no policy decisions were enacted in response to the article during the date-scoping period.  *Id.*  Thus, because the document is both predecisional and deliberative, and does not reflect a final agency position, it is properly protected under the deliberative process privilege.

As demonstrated above, FBI and DEA have made clear that the documents put at issue by EFF "do not reflect final agency action or decision."  Second Hardy Decl. ¶ 46; Second Myrick Decl. 9c; *see also* Fourth Hardy Decl. ¶ 12.

**C.**     **EFF Is Wrong That DEA And FBI Improperly Applied The Deliberative Process Privilege To Withhold Information Shared With Personnel Outside The Agency.**

Exemption 5 applies to "inter-agency or intra-agency" records.  5 U.S.C. § 552(b)(5).  This means that, "[i]n general, this definition establishes that communications between agencies and outside parties are not protected under Exemption 5."  *Ctr. For Int'l Envtl. Law v. Office of the U.S. Trade Rep*, 237 F. Supp. 2d 17, 25 (D.D.C. 2002).  Here, EFF contends that DEA and FBI have invoked the deliberative process privilege to improperly withhold materials that "were likely

shared outside the executive branch, and, thus, have waived their protection under Exemption 5."

Pl.'s Renewed MSJ at 15.   As set forth below, EFF is mistaken.

*FBI Materials.*   EFF puts at issue two FBI documents as well as pages relating to a meeting

of law enforcement professionals convened by the FBI.   *See* EFF's Renewed MSJ at 16 (citing

EFF/Lynch 347-360; EFF/Lynch 308; and EFF/Lynch 1241-1323).   As the FBI has previously

explained, the first document (EFF/Lynch 347-60) is "an internal draft of proposed testimony

prepared by the [FBI's Office of Congressional Affairs] for the Director for his review and

approval in anticipation of an appearance before a closed session of the Senate Select Intelligence

Committee."   Fourth Hardy Decl. ¶ 13.   Therefore, the document is both predecisional and

deliberative.   In addition, it contains classified information and is partially withheld under

Exemption 1 and withheld in full under Exemption 7(E).   *Id*.

The second document (EFF/Lynch 308) is also an internal document summarizing the

results of a meeting between DOJ personnel and a staff employee of the Senate Judiciary

Committee.   *Id*. at ¶ 14.   "The internal staff briefing summary reflects the views of the [FBI] author

as to what portions of the meeting were relevant and was compiled to assist the FBI in its ongoing

deliberations about how to respond to challenges experienced by law enforcement in conducting

electronic surveillance."   *Id*.

The remaining materials put at issue by EFF are an internal executive summary of meeting

notes and a copy of presentations given at a June 25, 2009 "Law Enforcement Executive Forum

("LEEF").   EFF's Renewed MSJ at 16.   LEEF was established by the FBI "as a way to bring

federal, state, and local law enforcement personnel from around the country to the FBI to act as

consultants on particular topics of interest to the FBI."   Fourth Hardy Decl. ¶ 15.   Although the

presentations were shared with outside law enforcement, the information is still properly protected

under the deliberative process privilege under the "consultant corollary" established by the Supreme Court in *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001).

In *Klamath*, the Supreme Court recognized that the deliberative process privilege may "extend[] to communications between Government agencies and outside consultants hired by them."  532 U.S. 1, 10 (2001).   As the D.C. Circuit has explained, typically this kind of "relationship is evidenced by the fact that the agency seeks out the individual consultants and affirmatively solicits their advice in aid of agency business."  *Nat'l Institute of Military Justice v. DoD*, 512 F.3d 677, 686 (D.C. Cir. 2008).  In addition, the communications must be treated as confidential.  *Id*. at 685.

According to the FBI, the "June 25, 2009 discussion topic [at LEEF] concerned the FBI's development of a unified electronic surveillance strategy which the invited law enforcement community attendees were asked to review and provide input."  Fourth Hardy Decl. ¶ 15.  Because FBI solicited the views of these outsiders to offer input on the development of the Bureau's electronic surveillance policy, *see id*. (noting that only attendees from the law enforcement community and FBI staff were present, and the materials were not made public), the law enforcement personnel were acting as consultants within the meaning of the *Klamath* decision. Consequently, these communications and the feedback provided by these consultants that became part of FBI's ongoing deliberations with respect to its future policy are properly protected by the deliberative process privilege.  *Klamath*, 532 U.S. at 10; *Nat'l Institute of Military Justice*, 512 F.3d at 685-86.

In addition, the FBI has explained that Exemption 7(E) was applied to all of these materials. *See* Fourth Hardy Decl. ¶ 15.

*DEA Materials.*  EFF contends that DEA improperly invoked the deliberative process privilege to withhold 26 pages describing communications between DEA and six "carrier, service provider, and/or consultant/vendor companies regarding specific technical intercept difficulties encountered during intercept operations."  EFF Renewed MSJ at 15 (citing DEA 6-5-31).  DEA has explained that it "initiated contact with these companies seeking their expertise, advice, and voluntary assistance in solving particular intercept issues and to flesh-out DEA needs and requirements."  Second Myrick Decl. ¶ 21b(1)(b).  In short, DEA sought out the expertise of these outside consultants to assist DEA in ongoing deliberations about how to resolve particular intercept issues.  Therefore, the deliberations are properly protected by the deliberative process privilege under the consultant corollary established in *Klamath*.

EFF also puts at issue 8 pages of internal reports documenting "meetings between designated DEA personnel and representative personnel of communication carriers, service providers, or communications industry consultants."  EFF's Renewed MSJ at 15-16 (describing DEA 6-32-40).  These meetings were initiated by DEA "to seek the understanding, advice, and cooperation of industry operators and experts, so that DEA could obtain a more in-depth understanding of particular emerging technology intercept challenges."  Second Myrick Decl. ¶ 21b(1)(c).  The internal reports are properly protected by the deliberative process privilege because they contain DEA's analysis of the meetings and internal recommendations regarding solutions to intercept problems.  *Id*.  In addition, the representatives of these companies were acting as *Klamath* consultants because they were providing expert input at the request of DEA to assist it in formulating decisions and policy relating to electronic surveillance.  *Id*.

### D.    FBI Did Not Improperly Invoke The Deliberative Process Privilege To Withhold Draft Documents.

EFF mistakenly suggests that FBI withheld draft documents under the deliberative process

privilege solely because the documents were drafts.  Pl.s' Renewed MSJ at 19.  As FBI has long

made clear, it applied the deliberative process privilege exclusively to predecisional, deliberative

material.  Fourth Hardy Decl. ¶ 12 (confirming that FBI "has not applied the deliberative process

privilege to any drafts merely because the documents were drafts but instead because the substance

of the drafts were found to be both predecisional and deliberative"); *see also* Second Hardy Decl.

¶¶ 42-48; *id.* ¶ 45 (noting that draft material in this case "is replete with edits, strike-through and

other formatting changes, marginal suggestions and comments, and/or embedded questions

regarding content"). [12]  EFF offers no basis to dispute FBI's representations.

### E.  The Criminal Division Properly Applied The Attorney Work Product Doctrine.

EFF challenges the Criminal Division's application of the attorney work product doctrine.

Pl.'s Renewed MSJ at 21-22.   The attorney work product doctrine protects materials prepared by

an attorney in anticipation of litigation, including the materials of government attorneys generated

in litigation and pre-litigation counseling.  *See* Fed. R. Civ. P. 26(b)(3); *In re Grand Jury Subpoena*

*(Mark Torf/Torf Environmental Management)*, 357 F.3d 900, 907 (9th Cir. 2004).  EFF argues that

the Criminal Division has failed to demonstrate that the materials it treated as protected by the

attorney work product doctrine were created in response to actual or anticipated litigation, as

opposed to being created merely in the "agency's ordinary course of business."  Pl.'s Renewed

MSJ at 21 (quoting *Public Citizen, Inc. v. Dep't of State*, 100 F. Supp. 2d 10, 30 (D.D.C. 2000)).

The Criminal Division's declarations and *Vaughn* index demonstrate that the four

---

[12] "[D]raft documents by their very nature, are typically predecisional and deliberative, because they reflect only the tentative view of their authors; views that might be altered or rejected upon further deliberation either by their authors or by superiors."  *In re Apollo Group, Inc. Securities Litigation*, 251 F.R.D. 12, 31 (D.D.C. 2008) (non-FOIA case) (quotations omitted); *see also Pub. Employees for Envt'l Responsibility v. Bloch*, 532 F. Supp. 2d 19, 22 (D.D.C. 2008) ("FOIA provides public access to the [decision documents] that were finally created, not the draft text considered along the way.")

documents it withheld under the attorney work product privilege were all generated in direct response to ongoing or anticipation litigation.  *See* Second Ellis Decl. ¶ 43 (listing attorney work product materials as CRM-000003; CRM-000042-43; CRM-000052; and CRM-000053-54); see also CRM's Vaughn Index at 3 (explain CRIM-000003 contained two emails between CRM employee and AUSA regarding intercept issues related to particular criminal investigation); *id*. at 6 (explaining that CRM-000042 to CRM-000043 contained information regarding sex offenders' use of a certain technology gathered as part of criminal prosecution); *id*. at 7 (explaining that CRM-0000053-54 contained an email from AUSA to a CRM employee regarding law enforcement's ability to intercept certain types of communications, which the AUSA was seeking in furtherance of a particular case he was working on); *see* Cunningham Decl. ¶ 9 (explaining that CRM-0000052 contained discussion among Department attorneys in relation to ongoing case under investigation). As a result, the materials were properly withheld under the attorney work product doctrine.  *In re Grand Jury Subpoena*, 357 F.3d at 907.

## V.    Defendant Has Properly Withheld Sensitive Law Enforcement Information Pursuant to Exemption 7.

### A.    Defendant Has Properly Withheld Information Under Exemption 7(A).

All three components have withheld information from criminal cases under Exemption 7(A), which authorizes the withholding of information "compiled for law enforcement purposes," where release "could reasonably be expected to interfere with enforcement proceedings."  5 U.S.C. § 552(b)(7)(A).  Defendant has demonstrated that the information it withheld under Exemption 7(A) was compiled for law enforcement purposes and relates to ongoing criminal investigations. Def.s' Renewed MSJ at 20-23.  Furthermore, the components have clearly articulated why the release of this information would interfere with enforcement proceedings.  *Id.* Therefore, all of the

legal requirements for withholding under Exemption 7(A) have been met.  5 U.S.C. §

552(b)(7)(A).

In response to this showing, EFF offers the purely speculative charge that the components

could likely release Exemption 7(A) protected information without interfering with enforcement

proceedings if the components redacted out identifying information in the documents.  EFF's

Renewed MSJ at 23.  However, Exemption 7A extends to *all* information gathered from ongoing

criminal cases that could interfere with enforcement proceedings.   5 U.S.C. § 552(b)(7)(A).   In

this case, for example, the Criminal Division invoked Exemption 7(A) to withhold several pages

containing "operational details of an ongoing transnational criminal investigation conducted by

both foreign law enforcement entities and U.S. law enforcement agencies."  Cunningham Decl. ¶ 8

(discussing CRM 15-19).  As a consequence, "even if CRM redacted the names of individuals from

the document, the release of the remaining non-redacted information would still interfere with an

ongoing enforcement proceeding because the information would highlight those countries [that] are

actively engaged in cooperation with U.S. law enforcement agencies and possibly allow those

persons being targeted to learn of the investigation and to possibly elude detection."  *Id.*

Moreover, EFF's argument also overlooks that, in addition to Exemption 7(A), the

components have applied other exemptions to these documents, including Exemption 7(E).  All

three components have made clear that they have provided all reasonably segregable non-exempt

information.  Second Ellis Decl. ¶ 30 ("CRM conducted an exacting, line-by-line review of the

records located during our wide-ranging search to identify any non-exempt information that could

reasonably be segregated and released without adversely affecting the Government's legitimate law

enforcement interests."); Second Myrick Decl. ¶ 9j (stating that "[a]ll responsive pages were

examined to determine whether any reasonably segregable information could be released"); Second

Hardy Decl. ¶ 22 (stating that "FBI has taken all reasonable efforts to ensure that no segregable, nonexempt portions were withheld from plaintiff").   These determinations are accorded a presumption of good faith and EFF offers no basis to undermine this presumption here.  *Boyd*, 475 F.3d at 382.

### B.    FBI Properly Withheld Information Under Exemption 7(D).

FBI properly applied Exemption 7(D), at times in conjunction with Exemption 1, to withhold information provided to the FBI by certain companies during the course of FBI's intelligence investigations.  *See* Second Hardy Decl. ¶¶ 76-78.

Exemption 7(D) authorizes the withholding of information in law enforcement records that "could reasonably be expected to disclose the identity of a confidential source," as well as information "furnished by a confidential source" if it was "compiled by [a] criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security investigation[.]"  5 U.S.C. § 552(b)(7)(D).  Exemption 7(D) applies if the agency establishes that a source has provided the information under either an express or implied promise of confidentiality.  *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 12 (1993).  For assertions of implied promises of confidentiality, the agency must "describe circumstances that can provide a basis for inferring confidentiality."  *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1063 (3d Cir. 1995).  As Defendant explained in its opening brief, the circumstances here show that the companies provided this information under an implied assurance of confidentiality that their identities would not be revealed.  Def's Renewed MSJ at 23-24.

EFF contends that these communications were not made under an implied assurance of confidentiality.  EFF's Renewed MSJ at 23.  Plaintiff asserts that the sources did not provide information to the FBI "related to a violent crime" and did not have "a relationship to the possible

criminal activity that could place them in harm's way." *Id*. at 24.  Although such factors have been found by courts to support a conclusion that a source spoke under an implied assurance of confidentiality, *see id.* at 24 (discussing decisions), they are not exhaustive.  Rather, the key question is whether it is reasonable to conclude given the particular circumstances of the case that the source spoke to law enforcement under an implied promise of confidentiality.  *See Landano*, 508 U.S. at 179.

Here, as Mr. Hardy explains in his declaration, although the companies were under a legal obligation to provide the information to the FBI in connection with an ongoing investigation, "an implied assurance of confidentiality was nevertheless critical to ensuring that these companies did not unnecessarily resist that obligation, thereby increasing the FBI's burden of obtaining important lawfully-available investigative material."  Second Hardy Decl. ¶ 78.  According to Mr. Hardy, the companies "would pay a high price if it were known that they were providing information about their customers to the FBI."  *Id.*  Upon learning of such information, the companies' customers might choose to take their business elsewhere.  Under these circumstances, where the companies faced a clear economic cost to providing the information in question, there is every reason to believe they provided the information expecting that their identities would remain confidential.  As a consequence, the information was properly withheld under Exemption 7(D).

C.  **Defendant Properly Withheld Information Pursuant to Exemption 7(E).**

The components properly invoked Exemption 7(E) to withhold detailed information regarding problems and difficulties that are hampering the components' current ability to conduct lawful electronic surveillance.  See Def's Renewed MSJ at 24-27.  As Defendant's opening brief demonstrated, and as set forth in detail in the declarations and *Vaughn* indexes of the components, all of the legal requirements for withholding information under Exemption 7(E) are met here.

First, it is undisputed that all of the materials withheld pursuant to Exemption 7(E) were compiled for law enforcement purposes. *Id.* at 20. Second, the components have provided detailed explanations for why the release of information regarding problems experienced by DOJ while conducting lawful electronic surveillance, efforts by criminal entities to exploit these vulnerabilities, and counter-measures taken by DOJ in response would provide a detailed road map for criminal entities to evade lawful electronic surveillance and risk circumvention of the law. *Id.* at 25-26. As a result, the components properly invoked Exemption 7(E) to withhold this information. 5 U.S.C. § 552(b)(7)(E) (stating that Exemption 7(E) authorizes an agency to withhold "records or information compiled for law enforcement purposes," where release of such information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law").

In response, EFF argues that the withheld information about law enforcement techniques and procedures is well-known to the public, and based on this unsupported claim, contends it may not be withheld under Exemption 7(E). EFF's Renewed MSJ at 26 (citing *Rosenfeld v. DOJ*, 57 F.3d 803, 815 (9th Cir. 1995) (holding that DOJ could not withhold use of so-called pretext phone calls under Exemption 7(E) because this technique "would leap to the mind of the most simpleminded investigator")). EFF is mistaken. The Criminal Division expressly stated in its declaration that the information it withheld under Exemption 7(E) is not publicly known. According to Ms. Ellis of the Criminal Division, "[a]lthough electronic surveillance is a well-known law enforcement technique, the particulars of when and how such surveillance is conducted, and more specifically, of difficulties in conducting electronic surveillance, are not well-known to the public." Second Ellis Decl. ¶ 37. Specifically, CRM withheld information pursuant to

Exemption 7(E) that "implicitly or explicitly reveals the parameters of the Department's surveillance techniques and guidelines; details the difficulties, vulnerabilities, and/or technical limitations of conducting such surveillance on specific carriers/service providers or on specific devices; and describes the exploitation of such vulnerabilities or limitations by child predators, drug cartels and traffickers, and other criminal elements." *Id.* ¶ 39. "Plaintiff's request, by its very terms, seeks information that would detail how to evade lawful electronic surveillance by law enforcement. This information necessarily implicates surveillance techniques and guidelines that are not well-known to the public." *Id.* ¶ 38. EFF offers no reason to cast doubt on the Criminal Division's conclusion that this information is not well known and that its release would risk circumvention of the law.

With respect to DEA and FBI, these components have also stated that the information they withheld under Exemption 7(E) is not widely known. According to DEA, the Exemption 7(E) material "consists of detailed information regarding the problems, obstacles, or limitations that hamper DEA's current ability to conduct surveillance on communications systems or networks, as well as DEA's countermeasures to these limitations and obstacles. This information is not publicly known." Third Myrick Decl. ¶ 12. FBI explains that, "[w]hile there have been public reports indicating the government has had trouble conducting electronic surveillance, it is the FBI's understanding that the specific and detailed information withheld under Exemption 7(E) by the FBI in this case is not widely known to the public." Fourth Hardy Decl. ¶ 17

EFF appears to mistakenly assume that because the components have released some information about techniques and technologies that are known to the public, this somehow indicates that the government is improperly withholding similar information under Exemption 7(E). *See* EFF's Renewed MSJ at 28 (noting that government has released information about

techniques and technologies known to the public, such as references to "email, VoIP (Voice over

IP), Peer-to-Peer networks, Skype and Blackberry services, and HTTPS").  What this

demonstrates, however, is a careful effort to segregate and provide well-known information about

law enforcement techniques and procedures, while protecting information that is not widely known

and whose release risks circumvention of the law.  *See, e.g.*, Third Myrick Decl. ¶ 12 (stating that

"[c]ontrary to Plaintiff's contentions, DEA has segregated and released information pertaining to

techniques and technologies that are widely known," including producing the "names of a wide

variety of communications providers and the methods employed by those providers in today's

market," while withholding information that is not well known to the public and whose disclosure

risks circumvention of the law).

## <u>CONCLUSION</u>

For the reasons stated above as well as those set forth in Defendant's Renewed Motion for

Summary Judgment, Defendant respectfully requests that the Court grant its Motion for Summary

Judgment with respect to the materials found to be exempt by the Defendant.

Dated: March 21, 2013                              Respectfully Submitted,

STUART F. DELERY
Principal Deputy Assistant Attorney General

MELINDA HAAG
United States Attorney

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

/s/ Nicholas Cartier
NICHOLAS CARTIER, CA Bar #235858
Trial Attorney, Federal Programs Branch
Civil Division
20 Massachusetts Ave NW, 7224
Washington, DC 20044
Tel: 202-616-8351

Fax: 202-616-8470
email: nicholas.cartier@usdoj.gov
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2013, I caused a copy of the foregoing to be served on counsel for Plaintiff via the Court's ECF system.

*/s/ Nicholas Cartier*
NICHOLAS CARTIER