**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7                          IN THE UNITED STATES DISTRICT COURT

8                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                                SAN FRANCISCO DIVISION

10

11  ELECTRONIC FRONTIER                          No. C 10-4892 RS
    FOUNDATION,

12              Plaintiff,                        **ORDER RE RENEWED CROSS-
                                                  MOTIONS FOR SUMMARY**
13         v.                                     **JUDGMENT**

14  DEPARTMENT OF JUSTICE,

15              Defendant.

16  _____/

17

18                                   I.  INTRODUCTION

19         Plaintiff Electronic Frontier Foundation ("EFF") brings this action under the Freedom of

20  Information Act ("FOIA") to compel further responses to two FOIA requests it submitted in 2009

21  and 2010.  The parties' prior cross-motions for summary judgment were denied, without prejudice,

22  as further efforts by the Government were necessary to ensure its production was complete and that

23  its *Vaughn* indexes were adequate.  After the Government provided revised *Vaughn* indexes, the

24  parties succeeded in narrowing their remaining disputes, and renewed their respective motions for

25  summary judgment.  At the hearing, the Government was directed to make a submission *in camera*,

26  to permit a more fulsome evaluation of its exemption claims.  The *in camera* review having now

27  been completed, each motion will be granted in part, and denied in part, as set forth below.

28

## II.  DISCUSSION[1]

EFF sought records from the Department of Justice (DOJ) and its components the Criminal Division (CRIM), the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA).  Each of the component units has responded separately.  At this juncture, EFF no longer challenges the adequacy of the *Vaughn* indexes, the invocation of Exemptions 1, 2, 3, 6, 7(C) and 7(F) by all units, the invocation of Exemption 7(D) by CRIM and the DEA, or the FBI's assertion of attorney-client privilege.  Nor does EFF challenge the adequacy of the searches.  The remaining disputes fall into six main categories.  Additionally, EFF contends there is no assurance the units have released all non-exempt segregable information.

1.  Scope of the requests

The prior order addressed EFF's complaint that the CRIM, the DEA, and the FBI have all withheld portions of documents—by either omitting pages entirely or, in some cases, by making redactions on pages—as being non-responsive or "outside the scope" of the requests.  The order observed that under FOIA, agencies are required "to construe a FOIA request liberally." *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 1995).  They are "obliged to release any information, subject to the specified exemptions, which relates to the subject of the request or which in any sense sheds light on, amplifies, or enlarges upon that material which is found in the same documents." *Dunaway v. Webster*, 519 F. Supp. 1059, 1083. (N.D. Cal. 1981).

The order observed that while the standards should not be applied in a manner that might discourage broad searches to identify potentially responsive documents in the first instance, neither should agencies be permitted to withhold materials not subject to any exemption merely because they would prefer not to disclose the information and can construct a technical argument that the information is outside the scope of the request.  Additionally the standards should not be interpreted in a way that could promote a practice of over-production, whereby requesting parties would be buried with voluminous materials of little or no relevance.

---

[1]  The factual background of this action has been described in prior orders and will not be recounted here.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1     Accordingly, balancing these considerations, the prior order directed the Government to

2  conduct a further review of the materials previously withheld as non-responsive. The Government

3  was specifically instructed that in conducting such review, "the presumption should be that

4  information located on the same page, or in close proximity to undisputedly responsive material is

5  likely to qualify as information that in 'any sense sheds light on, amplifies, or enlarges upon' the

6  plainly responsive material, and that it should therefore be produced, absent an applicable

7  exemption."  The order acknowledged, however, that there was no presumption that all materials

8  initially identified as "potentially responsive" necessarily must be produced.

9     After conducting the further review, DEA released fourteen additional pages.  It asserts it did

10  so, however, as an exercise of "administrative discretion," rather than conceding such production

11  was mandated under FOIA and the prior order.  CRIM released no additional documents, instead

12  standing on its prior "detailed explanations" as to why it contends the material was non-responsive.

13  While the FBI apparently concluded some additional material fell within the broader definition of

14  responsive, it claimed exemptions for that material and made no further production.

15     In arguing that it need do no more, the Government notes the prior order only set out a

16  presumption, not a rule, that material on the same page or in the same documents as responsive

17  information likely "sheds light on, amplifies, or enlarges upon" the former and should also be

18  produced, absent an applicable exemption.  The Government, however, has offered nothing to rebut

19  that presumption.  Instead, it argues that its narrow parsing of the language of the requests was

20  "reasonable."

21     The Government's reading may indeed be reasonable insofar as it describes what the

22  requests expressly call for—i.e. the "subject" of the requests.   The agencies' obligation to produce,

23  however, extends to material that *relates* to that subject, or, again, "which in any sense sheds light

24  on, amplifies, or enlarges upon that material which is found in the same documents." *Dunaway,* 519

25  F. Supp. at 1083.

26     Accordingly, having failed to rebut the presumption, the agencies shall produce all material

27  previously withheld as non-responsive or outside the scope of the requests where no other

28  exemption claim has previously been asserted as to such material, and it (1) appears on the same

1  page as other responsive material being produced, or (2) appears as in the same document or

2  PowerPoint slide presentation as other material being produced.

3

4      2.  <u>Exemption 4</u>

5      Exemption 4 of the FOIA protects "trade secrets and commercial or financial information

6  obtained from a person and privileged or confidential."  5 U.S.C. § 552(b)(4).  The FBI has withheld

7  39 pages under this exemption, consisting of a draft proposal submitted by the RAND Corporation

8  describing the scope of work the company would perform on behalf of the "FBI Going Dark

9  Initiative Electronic Surveillance Analyst Project." Excerpts of this proposal were submitted for *in*

10  *camera* review. The FBI has adequately demonstrated these pages are exempt from production.

11  While the fact that these materials were provided to the FBI by RAND under an express claim of

12  confidentiality is not dispositive, the very nature of the document supports a conclusion that it

13  contains cost projections and other details of the proposal that constitute confidential commercial

14  information of RAND within the meaning of the exemption.  Disclosure of such information could

15  damage RAND's competitive position and impair the government's ability to solicit such proposals

16  in the future from RAND and others.

17      DEA withheld seventeen pages pursuant to Exemption 4.  The Government has not shown

18  the exemption claim to be well-founded.  At the outset, the declarations provided initially by a

19  government witness are too conclusory and lacking in foundation to establish that the material

20  withheld contained confidential commercial or financial information of third parties.  The

21  Government now seeks leave to file under seal declarations of representatives from three companies

22  claiming that information submitted by those entities is confidential.  The sealing order the

23  Government requests would not merely limit public viewing of the declarations, but also preclude

24  EFF and its counsel from reviewing them.

25      The three company representatives have publicly filed declarations in which they are named

26  as "Does" and the identities of their employers are not disclosed.  Review of those declarations

27  reveals that while there may be material in the underlying declarations proposed for sealing and in

28  the documents in dispute which the companies consider confidential, the primary information they

wish to protect from public disclosure is the fact that those companies have even had discussions with DEA regarding these subject matters, as opposed to any information provided during those discussions.

Exemption 4 protects "trade secrets and commercial or financial information" not the identities of companies who have communicated or cooperated with the DEA.  The Government has shown no grounds upon which it would be appropriate to consider the proffered declarations on an *ex parte* basis.  The application for a sealing order is therefore denied, and the declarations will not be part of the record.

Furthermore, *in camera* review of the documents has shown that any claim of confidentiality does not rise to a level warranting application of Exemption 4.  Document 5 C-238 (Tab 12 of DEA's *in camera* submission) is entitled "Basic Architecture of Blackberry."  The sentence redacted under a claim of Exemption 4 states a general fact about RIM that is publicly known.  While Documents 6-012 through 6-014 reflect email exchanges between DEA and a communications company, no detailed confidential information appears in those pages.[2]  Document 6-016 refers to a conversation between DEA and a communications company, but contains no indication that information was provided with any expectation of confidentiality, or that it was at all sensitive or not publicly known.

Document 6-019 redacted one sentence regarding an alleged business plan of a company, which likely now is long since either publicly-known, moot, or both.  While documents 6-026 through 6-031 reference or contain further communications with that company, again there is no disclosure of confidential or commercial financial information. [3]

Document 6-032 through 6-034 reports on communications between DEA and another communications company.  The general description of that company's services does not appear to

---

[2]   The emails refer to attachments that more likely could have contained confidential commercial or financial information.  The status of those attachments is unclear, as they do not appear to be among the 17 pages being withheld.  As the issue has not been presented, nothing in this order decides whether any such attachments would be subject to production.

[3]   One email refers to RIM's concern that its business plans had been leaked in the past.  DEA's discussion of the need to maintain confidentiality, however, is not itself confidential.

United States District Court

For the Northern District of California

go beyond publicly-available information.  Finally, Documents 6-037 through 6-038 reports on discussions between DEA and yet another telecommunications company, but discloses only the positions that entity took, not its confidential or commercial financial information.  Accordingly, while the FBI's invocation of Exemption 4 is warranted, the DEA's is not.  To the extent DEA has withheld any documents or portions thereof under that exemption and no other exemption applies, that material must be produced.

   3.  <u>Exemption 5</u>

   Exemption 5 of the FOIA exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Generally, this is understood to reach such material as those protected by the deliberative process privilege, attorney client privilege, and attorney work product doctrine. *See*, *e.g*., *NLRB v. Sears, Roebuck & Co*., 421 U.S. 132, 149 (1975); *Maricopa Audubon Soc'y v. U.S. Forest Serv.,* 108 F.3d 1089, 1092 (9th Cir. 1997).

   EFF contends the Government has effectively conceded it is withholding some purely factual information under a claim of deliberative process privilege of this exemption, because the Government argues the same material is protected under Exemption 7(E) in any event.  Thus, EFF contends, if the 7(E) claim fails, the Government should produce the purely factual material.

   The Government's alternative argument for the applicability of 7(E) does not rise to the level of a concession that Exemption 5 is not available.  Indeed, while there may be factual information intertwined in the materials withheld under the deliberative process privilege, the Government has adequately shown that the privilege claim is valid, and that there is not a meaningful way to segregate anything more as "purely factual." [4]

---

[4]  Because an agency engaging in deliberation must consider and weigh facts, it would be a rare document withheld under Exemption 5 that did not include factual material.  Even the selection of facts in a document, however, may be germane to the process and within the privilege.  Thus, while the privilege must not be so broadly invoked as to shield truly segregable factual information and data from disclosure, there is no indication that has occurred here.

United States District Court
For the Northern District of California

The parties also dispute whether the exemption is available for documents that were shared by DEA with third parties such as telecommunication providers and by the FBI with non-federal law enforcement, in the "Law Enforcement Executive Forum."  The Government contends the privilege is not destroyed because those persons and entities were acting as "consultants."  On this point, EFF has the better argument.  *See Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 10-12 (2001)(explaining that to qualify as a "consultant," the third party must essentially "not represent an interest of its own, or the interest of any other client.").  Accordingly, to the extent materials shared with such third parties are not otherwise exempt, they must be produced.

The remaining challenges EFF raises as to the Government's invocation of Exemption 5 are unpersuasive.  The FBI has adequately shown that it withheld documents not based on their mere labels as "drafts," but only when they represented pre-decisional deliberative materials.  Similarly, FBI and DEA have sufficiently established that materials such as "talking points" memos and "discussion papers,"  did not reflect final agency actions or decisions, and were properly withheld.  Finally, CRIM has adequately supported its invocation of attorney work product doctrine with respect to four documents, by showing they were all generated in direct response to ongoing or anticipated litigation.

### 4.  Exemption 7(A)  (FBI and DEA)

Exemption 7(A) authorizes the withholding of information "compiled for law enforcement purposes," where release "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A).  EFF has abandoned its challenge to the CRIM's assertion of Exemption 7(A) but contends the FBI and DEA are still improperly withholding over 300 pages on grounds they could adversely affect ongoing open and active investigations.  EFF essentially is arguing that the agencies could and should segregate and release additional material, by redacting identifying information.  The agencies have sufficiently shown, however, that mere redactions of names or

7

other such information would be insufficient to protect the integrity of the investigations. Accordingly, the invocation of exemption 7(A) is proper.[5]

### 5. Exemption 7(D)  (FBI)

Exemption 7(D) authorizes the withholding of information in law enforcement records that "could reasonably be expected to disclose the identity of a confidential source," as well as information "furnished by a confidential source" if it was "compiled by [a] criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security investigation[.]"  5 U.S.C. § 552(b)(7)(D).  Exemption 7(D) applies if the agency establishes that a source has provided the information under either an express or implied promise of confidentiality. *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 12 (1993).  For assertions of implied promises of confidentiality, the agency must "describe circumstances that can provide a basis for inferring confidentiality."  *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1063 (3d Cir. 1995).

EFF argues that the FBI has not made the requisite showing to support a conclusion that the information withheld was provided under an implied promise of confidentiality.  The FBI's declarations, however, adequately explain why the companies providing it information regarding those companies' own customers reasonably would have inferred a promise of confidentiality, given the potential consequences of it becoming public that they were voluntarily releasing such information.  Accordingly, the invocation of Exemption 7(D) was justified.

### 6. Exemption 7(E)

Finally the agencies have asserted Exemption 7(E) with respect to nearly two-thirds of the records in this case, whether withheld in full or in part.  The exemption protects from disclosure "records or information compiled for law enforcement purposes" where release of such information

---

[5]   The Government has continued to withdraw specific 7(A) exemption claims as investigations have closed, and will be expected to produce any documents that have become disclosable as a result.

United States District Court
For the Northern District of California

8

United States District Court

For the Northern District of California

"would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

The very nature of EFF's FOIA requests creates a tension point with this exemption.  The Lynch request in particular specifically seeks information on matters such as "problems, obstacles or limitations that hamper the DOJ's current ability to conduct surveillance," "technical difficulties the DOJ has encountered in conducting authorized electronic surveillance," and "communications or discussions with the operators of communications  systems  or networks, or with equipment manufacturers and vendors, concerning  development and needs related to electronic communications surveillance-enabling technology."  It is hardly surprising that documents responsive to these requests could include virtual recipe books for persons with an interest in circumventing the law as to where law enforcement's vulnerabilities lie.  EFF has asked, in effect, the very questions those seeking to avoid electronic surveillance would want to put to the authorities if they could: "what are your weaknesses, and what, if anything, are you doing to address them?"

EFF does not suggest valid Exemption 7(E) claims cannot be made here.  It speculates, however, that the agencies may have overused the section, by seeking to shield documents that disclose only routine and widely known law enforcement techniques and procedures.   The declarations provided regarding withholding under Exemption 7 by the DEA and the FBI, as confirmed by *in camera* review of the exemplar documents provided, are adequate to show that those agencies have applied the exemption where warranted.

The document submitted for *in camera* review by CRIM, however, is troubling.  Relying on Exemption 7(E), CRIM redacted the majority of an email.  The unredacted portion discloses that the subject of the email was a threat that had been sent through "anonymizing technologies."  The redacted portion is a report by an investigator that explains how the "anonymizing email service" used by the threat maker, and other such services, work.  The services described are publicly available on the internet.  The investigator cites Wikipedia for part of the description of how the software operates.  It is difficult to imagine what law enforcement techniques, procedures, or guidelines CRIM sought to protect from disclosure by this redaction.  Clearly the underlying

information about anonymizing technologies is publicly available.  That an investigator might consult public sources of information (including Wikipedia) to learn about publicly available software and internet services, is not information likely to be useful to someone intent on circumventing the law.  Accordingly, the document should be produced without the redaction based on Exemption 7(E).[6]  Additionally, to the extent CRIM withheld other documents under Exemption 7(E) that it did not present for *in camera* review, it shall reconsider any such claims in light of this order, and make such additional production as may be warranted.

7. Segregability

Although presented as a separate issue, EFF's complaint that the Government has not shown it produced all reasonably segregable material is largely derivative of its other contentions.  As indicated above, the Government has adequately shown that its efforts to produce any segregable non-exempt material were sufficient.

IV.  CONCLUSION

The Government shall produce such further materials as directed above, and to that extent EFF's motion is granted, and the Government's motion is denied.  Conversely, the Government's motion and EFF's is denied with respect to the exemption claims confirmed as valid above.  Absent other agreements made between the parties, the Government shall produce all further responsive documents within 20 days of the date of this order.  Within 10 days thereafter, the parties shall jointly submit a proposed judgment to terminate this action.

IT IS SO ORDERED.

Dated:  11/1/13

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE

_____

[6]  The redactions of certain names under other exemptions appear appropriate.